IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

---------------------------------------------------------------------- x
                                                                       :
In re:                                                                 :      Chapter 9
                                                                       :
**PAULS VALLEY HOSPITAL AUTHORITY,**                                   :      Case No. 13-10791
                                                                       :
            Debtor.                                                    :      Judge Hall
                                                                       :
----------------------------------------------------------------------x

### MEMORANDUM OF LAW ADDRESSING COURT'S AUTHORITY TO COMPEL ACTION OF DEBTOR REGARDING PAYMENT OF COMMITTEE FEES AND DISCLOSURE OF FINANCIAL INFORMATION

Pauls Valley Hospital Authority d/b/a Pauls Valley General Hospital ("Debtor") hereby submits this memorandum of law pursuant to the Corrected Order Directing Filing of Memoranda ("Order") entered by the Court on June 6, 2013 [Docket No. 105]. The Order directed that both Debtor and the Official Committee of Unsecured Creditors ("Committee") submit memoranda addressing this Court's authority to compel Debtor to pay the fees and expenses and disclose financial information to the Committee in fulfilling the Committee's obligations under the Bankruptcy Code. Debtor will address each of these issues in this memorandum of law.

### General Principles

Debtor is a political subdivision of the State of Oklahoma created for the local exercise of Oklahoma's sovereign powers. Debtor's affairs are those of the State of Oklahoma and not subject to control or interference by the federal government or this Court. *See Ashton v. Cameron County Water Improvement Dist. No. 1*, 298 U.S. 513, 528 (1936). The basis of this limitation is found in the Tenth Amendment to the United States Constitution, which provides that "[t]he

powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const., Amend. X.

The Tenth Amendment reflects the unique structure of the United States with sovereignty split between the States and the federal government. It was the genius of the founders that there would be two political instrumentalities, "one State and one federal, each protected by the incursion by the other." *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 838 (1994) (Kennedy, J., concurring); *see also Gregory v. Ashcroft*, 501 U.S. 452, 457 (1991). In splitting the atom of sovereignty, the founders explicitly chose a Constitution that confers upon the federal government "the power to regulate individuals, not States." *New York v. United States*, 505 U.S. 144, 166 (1992). The Supreme Court has consistently held "that State legislatures are not subject to federal direction" under the Tenth Amendment and the federal form of government established by the Constitution. *Printz v. United States*, 521 U.S. 898, 912 (1997).

Of relevance here the Supreme Court held in 1936 that the precursor to Chapter 9 of the Bankruptcy Code was unconstitutional because it subjected the fiscal affairs of the State to the control and interference of the bankruptcy judge in violation of the Tenth Amendment. *See Ashton*, *supra*, 298 U.S. 513. Congress subsequently amended the law to address the constitutional infirmity identified in *Ashton* and the law, as amended, was ultimately upheld two years later by the Supreme Court. *See United States v. Bekins*, 304 U.S. 27 (1938). In *Bekins*, the Supreme Court held that the law, as amended, passed constitutional muster because it "was carefully drawn so as to not impinge upon the sovereignty of the State" or interfere with its fiscal affairs. *See United States v. Bekins*, 304 U.S. 27, 51 (1938).

Since that time there have been additional amendments to Chapter 9 of the Bankruptcy Code that have further reduced the latitude within which a bankruptcy judge may act. *See In re*

*City of Stockton, Cal.*, 478 B.R. 8, 17 (Bankr. E.D. Cal. 2012). These additional changes were made by Congress to preserve "the strict limitation on judicial interference with political or government powers, property or revenue, or income-producing property based upon *Ashton* and *Bekins* and their progeny." *Id.* at 18 (citations and quotations omitted).

It is against this constitutional backdrop and history that this Court must determine whether it may compel Debtor to pay the fees and expenses and disclose financial information to the Committee in fulfilling the Committee's obligations under the Bankruptcy Code.

### Payment of the Committee's Fees and Expenses

The question of whether Debtor must pay the Committee's fees and expenses is answered by the statutory provisions of the Bankruptcy Code, generally, and the specific provisions of Chapter 9, which have been influenced by the pervasive concern to preserve the state-federal relationship under the Constitution. *See City of Stockton*, *supra*, 478 B.R. at 20; *see also In re Jefferson County, Ala.*, 484 B.R. 427, 436 (Bankr. N.D. Ala. 2012).

Section 103 of the Bankruptcy Code provides that "[e]xcept as provided in § 901 of this title, only Chapters 1 and 9 of this title apply in a case under Chapter 9." 11 U.S.C. § 103(f). Section 901 of the Bankruptcy Code, in turn, provides an exclusive list of the other provisions of the Bankruptcy Code that are applicable in a Chapter 9 case. *See id.* at § 901(a). While the sections for the appointment of a creditor committee and retention of professionals by such committee are made applicable to Chapter 9 cases, *see id.* (listing §§ 1102 and 1103), the sections for the payment of professionals retained by a committee are made inapplicable to Chapter 9 cases. *See id.* (omitting §§ 330 and 331).

The decision of Congress to exclude the provisions for the payment of professional fees is consistent with the Supreme Court's ruling in *Ashton* and *Bekins* that neither the bankruptcy

3

laws nor the bankruptcy judge may control or interfere with the fiscal affairs of the State. Moreover, such omission is consistent with § 904 of the Bankruptcy Code, which is a statutory limitation that ensures fidelity to *Ashton* and *Bekins* in Chapter 9 cases. Section 904 provides that "unless the debtor consents or the plan so provides, the court may not, by any stay, order, or decree, in the case or otherwise, interfere with any of the political or governmental powers of the debtor; any of the property or revenues of the debtor; or the debtor's use or enjoyment of any income-producing property." *See* 11 U.S.C. § 904(1) through (3).

As recently noted, § 904 of the Bankruptcy Code "performs the role of the clean-up hitter in baseball" in a Chapter 9 case. *City of Stockton*, *supra*, 478 B.R. at 20. It is so comprehensive that a federal court can use "no tool in its toolkit – no inherent authority power, no implied equitable power, no Bankruptcy Code § 105 power, no writ, no stay, no order – to interfere with a municipality regarding political or governmental powers, property or revenues, or use or enjoyment or income-producing property." *Id.*

There are few judicial opinions that have addressed the specific issue of whether professionals retained by a committee are entitled to compensation from a municipal debtor in a Chapter 9 case. These opinions are clear that interim payments to such professionals are prohibited but they are murky on whether a municipal debtor must pay such compensation as part of the plan confirmation process. *See In re Castle Pines N. Metro. Dist.*, 129 B.R. 233, 234 (Bankr. D. Colo. 1991); *In re Orange County, Cal.*, 178 B.R. 195, 199 (Bankr. C.D. Cal. 1995).[1]

The court in *Orange County* stated in *dicta* and without any analysis that professionals retained by a committee are to be paid at the end of the Chapter 9 case pursuant to § 943 of the

---

[1] There are few additional cases that touch on the subject as well. *See In re Sanitary & Improvement Dist. No. 7 of Lancaster County, Neb.*, 96 B.R. 966 (Bankr. D. Neb. 1989); *In re E. Shoshone Hosp. Dist.*, 226 B.R. 430 (Bankr. D. Idaho 1998).

4

Bankruptcy Code. *See Orange County*, *supra*, 178 B.R. at 199. The court in *Castle Pines* went further and held that § 330 of the Bankruptcy Code is applicable in Chapter 9 cases notwithstanding its omission from § 901(a) because § 943(b)(5) references § 507(a)(2), which in turn references § 503(b), which in turn references § 330. *Castle Pines*, *supra*, 129 B.R. at 234. The holding in *Castle Pines*, however, has been rejected by the leading treatise on bankruptcy in meticulous detail. *See* 6 *Collier on Bankruptcy* § 900[13][c] (Alan N. Resnick & Henry J. Sommer, eds. 16th ed. 2013). It has also been questioned by at least one court as well. *See Shoshone Hosp.*, *supra*, 226 B.R. at 431 n.2.

Indeed, the *Collier* treatise takes the position "[a]bsent a debtor's consent there is nothing in Chapter 9 that automatically requires a debtor to pay the fees and costs of an official committee, professionals employed by the committee, or professionals employed by members of an official committee." *See Collier on Bankruptcy*, *surpa*, at § 900[13][c]. As noted by the *Collier* treatise, the court in *Castle Pines* improperly inferred a right to payment by starting with § 943 and working backwards to § 330 even though § 330 in not applicable in Chapter 9 cases. Section 943 only provides for the payment of certain claims, it is not an independent basis for the claims themselves. *Id.*

As noted by numerous courts, "§ 330 is the sole mechanism by which [professional] fees may be enforced." *In re 5900 Assocs. Inc.*, 486 F.3d 326, 330 (6th Cir. 2006); *see also In re Gantz*, 208 B.R. 999, 1002 (10th Cir. BAP 1997). In order for professionals to be paid they must file fee applications under § 330 of the Bankruptcy Code and then the fees in the application must be allowed by the bankruptcy court. *In re Marin*, 256 B.R. 503, 507 (Bankr. D. Colo. 2000). Because § 330 requires approval by the bankruptcy court to create the obligation to pay professionals seeking compensation, "absent court approval neither the debtor nor the estate is

5

ever liable." *In re Parklex Assocs., Inc.*, 435 B.R. 195, 207 (Bankr. S.D.N.Y. 2010) (citations and quotations omitted).

As noted above, § 330 of the Bankruptcy Code is not applicable in Chapter 9 cases. The failure of Congress to include § 330 in Chapter 9 is no oversight. The requirement that a municipal debtor pay for the professional fees and expenses of a statutorily-created committee under federal law would run headlong into the Tenth Amendment by allowing such statutorily-created committee to control or interfere with the fiscal affairs of Debtor without its consent.

Since § 330 of the Bankruptcy Code is not applicable in Chapter 9 cases there is no statutory basis for the payment of the professional fees and expenses of the Committee in Debtor's Chapter 9 case. Moreover, any equitable avenues that may be available for the payment of such fees are closed off by § 904 of the Bankruptcy Code, which prevents this Court from entering any stay, order, or decree interfering with Debtor's political or governmental powers, property or revenues, or use or enjoyment or income-producing property. As such, it is respectfully submitted that this Court does not have the authority to compel Debtor to pay the professional fees of the Committee appointed in this Chapter 9 case without Debtor's consent.

This is a small Chapter 9 case involving a financially distressed municipal entity providing healthcare services to the residents of the City of Pauls Valley and surrounding area. Debtor operated on a negative basis for a significant period of time prior to the filing of this Chapter 9 case and does not presently have the financial resources to consent to the payment of the professional fees and expenses of the Committee. Since the filing, Debtor has cut costs and avoided excess and non-essential expenses with vigor, including the extraordinary costs and expenses that come with filing bankruptcy. For example, early in the case Debtor filed a motion to substitute newspapers when the proposal for publication in the *Wall Street Journal* came back

at over $12,000. Debtor also sought to be excused from the appointment of a patient healthcare ombudsman based in large part on the additional cost it could potentially add to this Chapter 9 case.

Debtor's failure to consent to the payment of professional fees and expenses of the Committee is not being made in bad faith; rather, Debtor's lack of consent is based on Debtor's limited financial resources and the detrimental effect such professional fees and expenses may have on Debtor's ability to reorganize its business affairs and propose a plan of adjustment for consideration by creditors.

### Disclosure of Financial Information to the Committee

The Committee appointed in Debtor's Chapter 9 case is a creature borne from federal law and all its rights and powers are derived from the same source as well. *See* 11 U.S.C. § 1102 and 1103. Given these facts, the limitations recognized by the Supreme Court in *Ashton* and *Bekins* must necessarily apply to the Committee. The Committee may take no action that interferes with the Debtor regarding its political or governmental powers, property or revenues, or use or enjoyment or income-producing property. Thus, the role of the Committee in Debtor's Chapter 9 case is much reduced from a committee appointed in a Chapter 11 case, where it is expected that such committee will be intricately involved in every aspect of the case.

On more than one occasion, the Committee has made informal requests for documents and depositions of members of Debtor. The documents sought by the Committee include voluminous financial information from Debtor, including financial information going back for the past two years. In addition, some of the documents and information requested are confidential, proprietary, and/or subject to confidentiality agreements with third-parties.

Debtor advised the Committee that it does not intend to produce members of Debtor for deposition or the voluminous documents requested because of the disruption and expense such request would have on Debtor's reorganization efforts. Debtor proposed, however, that it would consider retaining a third-party to undertake the process of collecting non-privileged documents and information responsive to the Committee's request if the Committee agreed to bear the expense. In addition, Debtor proposed that its counsel would meet with the Committee on a monthly basis upon execution of an appropriate confidentiality agreement. The Committee did not respond to these proposals, but instead sent a letter to this Court seeking its assistance.

The question of whether a bankruptcy court may compel general discovery from a municipal debtor in a Chapter 9 case at the request of a statutorily-created committee appears to be one of first impression. It seems the answer to the question depends upon the burden imposed on the municipal debtor; at some point a proposed deposition or production of documents and information will interfere with the municipal debtor's political and fiscal affairs. As such, care should be taken by a bankruptcy court presented with such a request and applicable procedural rules strictly followed.

Federal Rule of Bankruptcy Procedure 2004 provides for general discovery in bankruptcy cases upon motion to the court. The requirement that a party-in-interest like the Committee must file a motion seeking general information from a debtor ensures that a debtor is not overburdened with such requests while it focuses on the difficult task of reorganizing its business affairs and that any issues related to the discoverability of documents and other information can be appropriately addressed by the parties and the bankruptcy court. The party seeking such general information by way of Bankruptcy Rule 2004 has the burden of establishing cause for the

information it seeks. *See*, *e.g.*, *In re Express One, Int'l*, 217 B.R. 215, 217 (Bankr. E.D. Tex. 1998).

Although the Committee appointed in Debtor's Chapter 9 case is without counsel it does not excuse the Committee from complying with applicable procedural rules, including Bankruptcy Rule 2004. *See McNeil v. United States*, 508 U.S. 106, 112-13 (1993); *see also Dillard v. Clements*, 2013 U.S. Dist. LEXIS 5176 (D. Colo. January 14, 2013) ("*Pro se* status does not relieve…the duty to comply with various rules and procedures governing litigants and counsel, or the requirements of substantive law."). The requirement that the rules be followed has additional force in this instance to ensure that the requests of the Committee are narrowly drawn, not made for improper purpose, and consistent with the limited role of the Committee in this Chapter 9 case.[2]

In the event that the Committee complies with Bankruptcy Rule 2004 and seeks information consistent with its limited role in this Chapter 9 case, Debtor reserves its right to object to such requests on any basis, including that compliance with such requests would invade the political and fiscal affairs of Debtor in contravention of the Tenth Amendment and the holdings of the Supreme Court in *Ashton* and *Bekins*.

---

[2] It should be noted that the informal requests of the Committee were made by Christopher Whybrew, the former chief executive officer of Debtor, who is currently embroiled in litigation involving Debtor and the City of Pauls Valley concerning his separation from Debtor in 2011 as set forth in more detail in the motion for relief from the automatic stay filed by Debtor on June 6, 2013 [Docket No. 109]. At the same time Mr. Whybrew was making his informal requests to Debtor as a member of the Committee he was also gearing up state court litigation involving Debtor and requesting, through his lawyer of record in that litigation, that the City of Pauls Valley respond to outstanding discovery requests and issued supplemental discovery requests to the City of Pauls Valley. It is thus unclear if the information sought by the Committee acting through Mr. Whybrew was made in a good faith attempt to fulfill his duties as a member of the Committee or if such information was sought by Mr. Whybrew as an end-run around the automatic stay and as leverage for the payment of his unsecured claim.

**Conclusion**

This Court has neither statutory nor equitable authority to compel Debtor to pay the professional fees and expenses of the Committee in this Chapter 9 case. The payment of such fees and expenses would intrude upon the fiscal affairs of Debtor and violate the Tenth Amendment. While there is at least one reported case holding that professional fees and expenses of a committee must be paid by a municipal debtor its rationale is not supported by the statutory interplay of the Bankruptcy Code. Nor is it respectful of the sovereignty of a municipal debtor in a Chapter 9 case.

The Committee has not properly made a motion and met its burden for the delivery of documents and information it seeks from Debtor in compliance with applicable procedural rules, including Bankruptcy Rule 2004. Compliance with such rules is critical to ensure that requests are measured by the need for such information against the burden of compliance with such requests and to avoid intruding on the sovereignty of Debtor. In the event that the Committee makes formal requests for discovery in accordance with Bankruptcy Rule 2004 and consistent with the Committee's limited purpose in this case, this Court, after notice and a hearing, must determine whether such discovery is proper and would intrude upon the political and fiscal affairs of Debtor.

          MCDONALD, MCCANN,
           METCALF & CARWILE, LLP

By:   */s/ Chad J. Kutmas*_____
      Chad J. Kutmas, OBA No. 19505
      15 E. Fifth Street, Suite 1800
      Tulsa, OK 74103
      (918) 430-3700
      (918) 430-3770 (Fax)
      ckutmas@mmmsk.com

      *Attorneys for Pauls Valley Hospital Authority*