IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| In re: ) | |
| ) | Chapter 9 |
| PAULS VALLEY HOSPITAL AUTHORITY, ) | |
| ) | Case No. 13-10791 |
| ) | |
| Debtor. ) | Judge Hall |
| ) | |

**BRIEF OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS'
REGARDING THE COURT'S AUTHORITY TO COMPEL THE DEBTOR TO
(1) PAY THE REASONABLE FEES AND EXPENSES OF THE COMMITTEE,
AND (2) DISCLOSE FINANCIAL INFORMATION TO THE COMMITTEE**

Comes now the Official Committee of the Unsecured Creditors (the "Committee") and files this Brief pursuant to the Corrected Order Directing Filing of Memoranda ("Order") entered by the Court on June 6, 2013 (Doc. No. 105) and the Court's Order Granting the Committee's Motion to Extend Time to File Briefs entered on June 18, 2013 (Doc. No. 121). The Order directed that both the Debtor and the Committee file briefs addressing this Court's authority to compel the Debtor to pay the reasonable fees and expenses of the Committee and disclose financial information to the Committee. In support of this Brief, the Committee states as follows:

## BACKGROUND

1. On March 1, 2013, the Debtor filed its voluntary petition under Chapter 9 of the Bankruptcy Code.

2. On March 27, 2013, the Office of the United States Trustee appointed the Committee in this case (Doc. No. 42), which was supplemented with another member on April 1, 2013 (Doc. No. 52).

3.  On May 23, 2013, D. Christopher Whybrew, Chairman of the Committee, sent a letter to the Court requesting, among other things, assistance in obtaining financial information from the Debtor (Doc. No. 101), and in response this Court entered the Order directing the filing of this Brief.

## LEGAL ARGUMENT

I.  **THE COURT CAN COMPEL PAYMENT OF THE COMMITTEE'S FEES BY THE DEBTOR AT CONFIRMATION OF THE DEBTOR'S PLAN OF REORGANIZATION**

  A.  **Section 943 of the Bankruptcy Code Allows Payment of Legal Fees by the Debtor**

4.  Section 901 of the Bankruptcy Code specifically adopts 11 U.S.C. §§ 1102 and 1103, which allow for creation of creditors' committees. 11 U.S.C. § 901. Section 1103(a) specifically references the ability of the committee to hire attorneys, accountants or other agents to represent a committee appointed under section 1102. 11 U.S.C. § 1103. Clearly, Congress intended committees to be appointed in municipal bankruptcies, and that such committees have the same right to representation as a committee would in a Chapter 11 case.

5.  Evidence of such congressional intent is found in § 943(b)(5) of the Bankruptcy Code which provides, in pertinent part, a mechanism by which professionals are to be paid in a Chapter 9 bankruptcy:

> The court shall confirm the plan if . . . [e]xcept to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that on the effective date of the plan each holder of a claim of a kind specified in Section 507(a)(2) of this title will receive on account of such claim cash equal to the allowed amount of such claim.

  11 U.S.C. § 943(b)(5).

6.  Section 507(a)(2) regarding priorities addresses "administrative expenses allowed under Section 503(b)." In turn, Section 503(b) provides that "there shall be allowed administrative

2

expenses . . . <u>including</u>" compensation and reimbursement awarded under § 330(a) of this title <u>and</u>, additionally, the actual, necessary expenses of the committee, which would include attorneys' fees. *See* 11 U.S.C. § 503(b) (emphasis added).

7. A somewhat similar issue to the one addressed hereunder was raised in *In re County of Orange*, 179 B.R. 195, 199-200 (Bankr. C.D. Cal. 1995), in which the court addressed the issue of whether a committee's professionals may receive payment on an interim basis. The court stated that "the payment of Chapter 9 professionals is governed by Code § 943. Section 943 provides that if a plan is to be confirmed, all allowed administrative expenses, <u>including committee/subcommittee professional fees, must</u> be satisfied on the effective date of the plan. Chapter 9 contemplates, therefore, that committee professionals will be paid at the end of the case rather than during its pendency." Id. at 199 (emphasis added).

8. Following the logic of *In re County of Orange* and the clear language of § 943, in the present case when the Debtor proposes a Plan of Reorganization, the Plan must provide for the payment of administrative expenses, including those for professionals, and including professionals for the Committee. If the Debtor fails to address the Committee's professional fees in its Plan, then the Plan will necessarily fail and cannot be approved. Furthermore, Section 901 adopts and includes Sections 502, 503, and 507(a)(2), clearly showing Congress's intent for administrative expenses to be paid in Chapter 9 cases.

9. The issue of whether committee professionals are entitled to compensation was also addressed in *In re Med General, Inc.*, 17 B.R. 13, 14 (Bankr. D.Minn. 1981), in which "objection [was] made that there is no provision in the Code for the payment of attorneys' fees to attorneys for pre-petition unofficial creditor's committees." The court rejected that argument, citing § 503 of the Bankruptcy Code:

> Given such benefit conferred [i.e., services of committee counsel], Section 503(b)(4) forms a statutory predicate for the reimbursement of reasonable compensation for [the committee's] employed attorney based on the nature, extent, and value of the services, as well as the cost of comparable services as well as reimbursement for necessary expenses incurred. The test accordingly is the same as with respect to any other application of a professional person.

*In re Med General, Inc.*, 17 B.R at 14. The court then approved the fees and expenses sought in the committee's counsel's application. Notably, it appears that the court went so far as to say even pre-petition activity by such professionals would be compensable. In *In re County of Orange*, the court also addressed the link between Section 943, Section 507, and Section 503, holding that compensation for committee professionals was intended by Congress in Chapter 9 cases. *In re County of Orange*, 179 B.R. at 199 n.10.

### B. The Plain Language of Bankruptcy Code Indicates that Section 330 Applies in Chapter 9 Cases

10.    In addition, as stated above, Section 901 of the Bankruptcy Code adopts § 503, which includes a provision for "compensation and reimbursement awarded under Section 330(a) of this Title." 11 U.S.C. § 503(b)(2). While § 330 itself is not included in the litany of sections adopted under § 901, § 503 clearly was. The plain language of § 503 includes § 330 and, necessarily, § 330 would by reference apply in the present case. That reasoning was adopted by the *In re Castle Pines North Metropolitan District* court, 129 B.R. 233, 234-35 (Bankr. D. Colo. 1991). That court held that § 330 applies in Chapter 9 cases because § 901 and § 943 adopt § 507, which references § 503, which, in turn, references § 330. The Castle Pines court observed:

> The symmetry is complete by the specific inclusion of §§ 1102, 1103, and 503 in § 901(a). . . . [B]y reason of § 901(b) the District's argument fails.. . . Congress understood the hierarchy it created. First, it stated in § 103(e) that entire chapters (1 and 9) would be included in a Chapter 9 case. Then in § 901(a) it provided that entire sections, which are part of Chapters 3, 5, and

4

>    11, would apply in Chapter 9 cases. Finally in § 901(b), Congress declared that if a term [is] used in a section applicable in Chapter 9 cases of this title (i.e., the entire Bankruptcy Code) the court should apply the usual meaning of the term. Thus by using a specific reference in § 943(a)(5) to § 507(a)(1), the Court must apply all usual meanings attributable to 507(a)(1). . . . [C]ounsel for the Official Creditors' Committee [may] . . . submit a claim under §§ 330, 503, and 507 for reimbursement, which claims shall be allowed in a reasonable amount.

*In re Castle Pines*, 129 B.R. at 234-35

11.   Congress clearly intended that creditor's committees exist in Chapter 9 cases, clearly intended that committees be allowed to hire professionals, and clearly intended that Chapter 9 debtors pay administrative expenses the same as any other debtor.

## II.   THE BANKRUPTCY CODE EXPLICITLY PROVIDES THAT THE COMMITTEE MAY INVESTIGATE THE FINANCIAL CONDITION OF THE DEBTOR

12.   As noted above, the sections governing creditors' committee appointment, formation and duties in Chapter 11 cases (i.e., 11 U.S.C. §§ 1102 and 1103) are among the sections made applicable to Chapter 9 cases under the Bankruptcy Code's statutory scheme. See 11 U.S.C. § 901(a). Once appointed and formed, a Chapter 9 creditors' committee has powers and duties similar to committees formed in Chapter 11 cases. These powers and duties include:

   i. employing one or more attorneys, accountants, or other agents to represent the committee in the course of administration of the Chapter 9 case;
   ii. consulting with the debtor municipality regarding case administration issues;
   iii. investigating the acts, conduct, assets, liabilities, and financial condition of the debtor;
   iv. participating in the plan formation process; and
   v. performing such other services as are in the best interests of the committee's constituents.

*See* generally 11 U.S.C. §§ 901(a) and 1103(c)(1) - (3) and (5) inclusive.

13.   Section 1103(c)(2) specifically authorizes the Committee to investigate the "financial condition" of the Debtor.  It is axiomatic that in order for the Committee to investigate the

5

financial condition of the Debtor, the Committee must be provided with relevant financial information by the Debtor. Clearly, the Congressional intent underlying the enumerated powers and duties of creditors' committees is that the committees be given access to relevant financial information concerning the Debtor in order to best serve and protect the interests of its constituents.

14. As noted by Norton's, one of the seminal treatises on bankruptcy:

> The committees will have access to financial records of the municipality, and thus will be able to form an independent opinion of the municipality's finances. Such an independent opinion might be imperative in those instances where the municipality's accounting practices have not truly reflected its financial condition for many years.

Norton Bankr. L. & Prac. 3d § 90:10

15. The Debtor without legal support couches its resistance to supplying financial information to the Committee on its mistaken belief that providing such information would compromise the Debtor's statutory right to not have interference in its political and fiscal affairs. The right of a municipal debtor to manage its own affairs in a Chapter 9 is not violated by providing statutorily mandated information to a creditors committee.

16. Committee members also owe a fiduciary duty to all of the Debtor's unsecured creditors whose interests the Committee represents, and pursuant to § 1102(b)(3), which was added under BAPCPA, the Committee also has disclosure and solicitation obligations to all unsecured creditors of the Debtor. The Committee cannot discharge its disclosure obligations to the unsecured creditors of this bankruptcy estate when the Committee is not allowed access to relevant financial information of the Debtor.

17. The Debtor also suggests that the Committee must undertake the discovery procedures set forth in the Federal Rule of Bankruptcy Procedure 2004. This assertion is also without legal

support. Creditor committees generally do not have to resort to 2004 examinations of the Debtor in order to comply with their § 1103(c)(2) duty to investigate the financial condition of a debtor. While the relationship between a creditors' committee and a debtor can at times become adversarial, it need not be. The Committee believes that if the Debtor allows the Committee to discharge its duties under § 1103 of the Bankruptcy Code, made applicable to these proceedings by § 901(a), the interests of the Debtor's unsecured creditors and of the bankruptcy estate as a whole will be more adequately protected.

### III. CONCLUSION

As described above, the Committee believes that the interplay of several provisions of the Bankruptcy Code, as described in the *Castle Pines* decision, leads to the conclusion that the fees and expenses of professionals hired by the Committee should, at a minimum, be an administrative expense that must be paid in conjunction with confirmation of the Debtor's Plan. Additionally, § 1103 of the Bankruptcy Code clearly provides the statutory basis for the Committee to receive and review the Debtor's relevant financial information.

Dated: June 28, 2013

                                                        Respectfully submitted,

                                                        /s/ Mark B. Toffoli

                                                        Mark B. Toffoli  OBA # 9045
                                                        ANDREWS DAVIS, P.C.
                                                        100 North Broadway, Suite 3300
                                                        Oklahoma City, Oklahoma  73102
                                                        TELEPHONE:  (405) 272-9241
                                                        TELEFACSIMILE:  (405) 235-8786
                                                        EMAIL:  mtoffoli@andrewsdavis.com

                                                        Proposed Counsel for the
                                                        Official Committee of the Unsecured Creditors