IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

```
------------------------------------------------------------------- x
                                                  :
In re:                                            :     Chapter 9
                                                  :
PAULS VALLEY HOSPITAL AUTHORITY,                  :     Case No. 13-10791
                                                  :
         Debtor.                                  :     Judge Hall
                                                  :
------------------------------------------------------------------- x
```

## STATUS REPORT

(For December 2013)

Pauls Valley Hospital Authority d/b/a Pauls Valley General Hospital ("Debtor") hereby submits this status report pursuant to the minute order entered by the Court on October 13, 2013 [Docket No. 200], and advises the Court and parties-in-interest of pertinent developments in this Chapter 9 bankruptcy case.

### Background

1. On March 1, 2013, Debtor commenced a voluntary case under Chapter 9 of title 11 of the United States Code in this Court. Debtor operates a publicly-owned 64-bed hospital and associated clinics and facilities in Pauls Valley, Oklahoma. Debtor employs approximately 165 people and generates monthly revenue of $1.5 million to $1.7 million. Debtor is the only hospital located in Garvin County, Oklahoma. The provision of health care services provided by Debtor is critical to the City of Pauls Valley, Oklahoma, and the surrounding area.

2. Debtor commenced this Chapter 9 bankruptcy case to ensure that such health care services are not interrupted and to obtain a breathing space so that it can negotiate with

creditors, review uneconomical contracts and leases, and ultimately emerge from bankruptcy with a confirmed plan of adjustment.

3. Prior to filing bankruptcy, Debtor engaged in negotiations with SSM Health Care of Oklahoma ("SSM") to purchase the assets of Debtor. In addition, SSM contracted to manage the hospital and oversee all aspects of its day-today operations pursuant to a management agreement entered into on December 22, 2011. Although the negotiations were productive, SSM notified Debtor that it was not interested in acquiring Debtor's assets in mid-February 2013, but it continued to be its manager until November 27, 2013.

4. In April 2013, Debtor entered into an exclusive dealings and confidentiality agreement with one of SSM's competitors (hereinafter, the "Prospect"). Debtor and the Prospect worked closely together with respect to due diligence and explored possible business arrangements, including a sale or lease of the hospital or some form of business partnership. In late-October 2013, the Prospect provided a proposal for consideration by Debtor that did not fit with the vision of Debtor of retaining a fully functioning acute care hospital in the Pauls Valley community.

5. Based upon the proposal submitted by the Prospect, Debtor made the decision to reject the management agreement with SSM pursuant to § 365 of the Bankruptcy Code and hire a new management team to evaluate operations and use best efforts to turn around the hospital as a viable stand-alone facility.

**Recent Events**

6. In November 2013, Debtor rejected the management agreement with SSM and retained NewLight Healthcare ("NewLight"). NewLight is a hospital management and consulting firm based in Austin, Texas focused on serving the unique needs of rural and small

community hospitals. NewLight offers a vast array of services designed to improve the health of rural hospitals, including financial services, online financial benchmarking tools, cultural transformation, improving revenue cycles, and more. NewLight's professional team has extensive experience in the healthcare industry. The personnel of NewLight that are principally responsible for Debtor's hospital are Todd Biederman and Lee Hughes. In addition, NewLight obtained James Clough to serve as interim CEO of the hospital.

7. Debtor also retained EquilizeRCM Services ("Equalize") to assist with the coding, billing, and collection of payments for services rendered by the hospital. Equalize is based in Austin, Texas has access to over 600 associates focused solely on medical coding and billing and works in over 50 specialties, on over 25 billing systems, and across 20 states. Those at Equalize who are principally responsible for providing service to Debtor's hospital are Michael Hill and Darya Khripkova.

8. Since being retained for a little over a month by the hospital both NewLight and Equalize have worked hard in their respective areas and begun the difficult process of attempting to turn the hospital around. For example, NewLight and Mr. Clough, as interim CEO of the hospital, have begun their analysis regarding the revenue centers associated with the hospital and required capital improvements to establish new revenue for the hospital. NewLight and Mr. Clough are also reviewing expenses and other operational issues to determine non-profitable business lines. In addition, Equalize has deployed professionals to the hospital and has implemented new protocols and procedures for coding, billing, and collection of fees for services rendered by the hospital, including the collection of stale accounts receivable.[1]

---

[1] It bears mentioning that the turnaround work of both NewLight and Equalize has been somewhat slowed by addressing issues that were unresolved by prior management, including but not limited to establishing up-to-date policies and procedures and other operational issues.

9. During this time Debtor has also continued to negotiate with creditors, review uneconomical contracts and leases, in order to emerge from bankruptcy with a confirmed plan of adjustment. For example, Debtor (subject to final approval by its governing body) recently resolved the claim of Christopher Whybrew, the former CEO of the hospital, who initiated litigation against the City of Pauls Valley and Debtor prior to the bankruptcy filing seeking unpaid compensation in excess of $250,000. This claim was heavily contested by the parties.

10. From March until August Debtor successfully operated on cash receipts and did not need to draw on a $3 million line of credit obtained by the City of Pauls Valley for use by Debtor (of which only $1.6 million was available for use by Debtor after restructuring existing secured debt). However, from September to November 2013, SSM, as manager of the hospital, began requesting draws on the line of credit that left a balance on the credit lien of approximately $399,000. Prior to NewLight and Equalize's retention, billing for hospital services and collecting accounts receivable for such services were not conducted and performed at an acceptable standard, and NewLight and Equalize are addressing these issues on a priority basis.[2] The City of Pauls Valley is currently in the process of extending the line of credit to cover capital expenses and operating losses while the hospital continues its turnaround efforts. It is expected that such extension will take place in late-December or January.

11. Finally, Debtor is actively working on a potential half-cent sales tax increase dedicated to the operation of the hospital. Any tax increase is subject to taxpayer vote. It is anticipated that such a taxpayer measure would be noticed for consideration in January 2014 and

---

[2] At time these draw requests were made by SSM, there were significant accounts receivables that were generated by the hospital. The amount of the receivables generated and which should have been collected in September, October, and November totaled approximately $1.4 to $1.8 million. If Debtor, through SSM's efforts, could have collected these accounts receivable there would have been less need to draw on the line of credit.

would be subject to vote in March 2014. Preliminary estimates indicate that such a sales tax increase could be bonded upwards of $6 to $8 million.

## Proposal of a Plan

12. The proposal of a plan of adjustment for consideration by creditors and parties-in-interest is contingent upon the completion of NewLight and Mr. Clough's initial review and proposals for restructuring the hospital. In addition, the structure of any proposed plan of adjustment will be strongly influenced by the proposed bond measure. These tasks will not be completed until at least March 2014. As a result, it is not expected that Debtor will submit a plan of adjustment until the second quarter of 2014 at the earliest.

13. Debtor will submit its next report on January 15, 2014, and report on Debtor's efforts concerning these and other important developments.

MCDONALD, MCCANN,
 METCALF & CARWILE, LLP

By: */s/ Chad J. Kutmas*
Chad J. Kutmas, OBA No. 19505
15 E. Fifth Street, Suite 1800
Tulsa, OK 74103
(918) 430-3700
(918) 430-3770 (Fax)
ckutmas@mmmsk.com

*Attorneys for Pauls Valley Hospital Authority*