IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| **PAULS VALLEY HOSPITAL** | : | **Case No. 13-10791** |
| **AUTHORITY d/b/a PAULS VALLEY** | : | **(Chapter 9)** |
| **GENERAL HOSPITAL,** | : | |
| | : | |
| Debtor. | : | |
| _____ | : | |
| | : | |
| **PAULS VALLEY HOSPITAL** | : | |
| **AUTHORITY d/b/a PAULS VALLEY** | : | |
| **GENERAL HOSPITAL,** | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | Adv. No. _____ |
| | : | |
| **STEPHANIE FISHER, as personal** | : | |
| **representative of the Estate of Jamie Lynn** | : | |
| **Fisher Russell,** | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

**ADVERSARY COMPLAINT**

Pauls Valley Hospital Authority d/b/a Pauls Valley General Hospital ("Debtor"), by and through its counsel, hereby brings this adversary proceeding against Stephanie Fisher in her capacity as personal representative of the Estate of Jamie Lynne Fisher Russell ("Fisher") pursuant to 11 U.S.C. §§ 105, 362 and 922, 28 U.S.C. § 2201, and Federal Rules of Bankruptcy Procedure 7001(7) and 7001(9).

**The Parties**

1. Debtor is a Chapter 9 municipal debtor in a case pending before the United States Bankruptcy Court for the Western District of Oklahoma, which was commenced by the filing of a voluntary petition on March 1, 2013.

2. Upon information and belief, Fisher is the personal representative of the Estate of Jamie Lynn Fisher Russell. In her capacity as personal representative, Fisher is seeking to assert a pre-petition unsecured claim against Debtor for alleged negligence of Debtor in treating Jamie Lynn Fisher Russell. Fisher's active participation in Debtor's Chapter 9 case has subjected Fisher to this Court's jurisdiction.

**Jurisdiction and Venue**

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. Reference to this Court of this adversary proceeding is proper pursuant to 28 U.S.C. § 157(a). This is, at minimum, a "related to" adversary proceeding as contemplated by 28 U.S.C. § 157(c)(1). *See*, *e.g.*, *In re Arrow Huss, Inc.*, 51 B.R. 853, 854 n.1 (Bankr. D. Utah 1985). In addition, venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**General Allegations**

4. On March 1, 2013, Debtor commenced a voluntary case under Chapter 9 of the Bankruptcy Code. Debtor operates a publicly-owned 64-bed hospital and associated clinics and facilities in Pauls Valley, Oklahoma. Debtor commenced its Chapter 9 case to ensure that such health care services are not interrupted and to obtain a breathing space so that it can negotiate with creditors, review uneconomical contracts and leases, and ultimately emerge from bankruptcy with a confirmed plan of adjustment and make distributions to pre-petition creditors.

5. On July 7, 2013, Debtor filed a motion seeking to settle and compromise the claim of Cimarron Insurance Exchange ("Cimarron"). Cimarron is a specialized insurance organization formed and owned by the community hospitals it serves. Debtor is an owner and member of Cimarron and until April 28, 2013, maintained liability insurance with Cimarron.

6. Pursuant to the terms of the settlement, Debtor's capital account (known as its Paid-In Surplus) in the amount of $177,441 is to be paid to Debtor in three equal installments over the next three years. These payments, however, are subject to reduction to cover claims made against Debtor and covered by Debtor's liability policy with Cimarron. This Court approved the settlement between Cimarron and Debtor on July 31, 2013.

7. Debtor's capital account held by Cimarron is a significant asset of Debtor and is property of Debtor and will be used to fund operations and/or make distributions to creditors pursuant to a plan of adjustment. Based upon the schedules filed by Debtor in its Chapter 9 case such funds would be sufficient to make a 5% distribution to unsecured creditors.

8. The alleged claim of the Estate of Jamie Lynn Fisher Russell may be covered by the liability insurance Debtor maintained with Cimarron prior to termination of such coverage on April 28, 2013.

9. On March 4, 2013, Fisher, by and through her counsel, sent a notice to Debtor advising Debtor of the alleged claim of the Estate of Jamie Lynn Fisher Russell. This notice was received by Debtor after it commenced its Chapter 9 case.

10. Five months later, on August 23, 2013, Fisher filed a civil action against Debtor in Garvin County District Court in a case styled *Stefanie Fisher, as personal representative of the Estate of Jamie Lynn Fisher Russell and Guardian of J.W.F., a minor v. Pauls Valley General Hospital, et al.*, Case No. CJ-2013-105, asserting a claim for negligence against Debtor.

11. In addition, Fisher filed a motion with this Court seeking to file a proof of claim out-of-time for the alleged claim of the Estate of Jamie Lynne Fisher Russell. This motion was filed on November 4, 2013. Debtor has filed a response to Fisher's motion and the Court has set an evidentiary hearing on the matter for January 14, 2014.

12. Fisher has made multiple demands that Debtor consent to relief from automatic stay so that she may proceed with the civil action filed against Debtor in Garvin County District Court and pursue the alleged claim of the Estate of Jamie Lynn Fisher Russell up to the policy limits of the insurance policy underwritten by Cimarron.

13. Debtor does not concede the validity of the alleged claim asserted by Fisher and reserves all its rights and defenses related to such claim. Moreover, such claim, even if established by Fisher, is capped at $175,000 pursuant to the Oklahoma Governmental Tort Claims Act, Okla. Stat. tit. 51 § 151 *et seq*.

**First Claim for Relief**
**Violation of the Automatic Stay**

14. Debtor incorporates by reference the general allegations set forth in paragraphs 1 through 13 and further alleges:

15. Pursuant to 28 U.S.C. § 2201 and Federal Rule of Bankruptcy Procedure 7001(9), Debtor requests that this Court determine the rights, status, and other legal relations of Debtor, Cimarron, and Fisher with respect to the alleged claim of the Estate of Jamie Lynn Fisher Russell.

16. Section 362 of the Bankruptcy Code provides in relevant part as follows:

(a) [A] petition filed under section 301, 302, or 303 of this title…operates as a stay, applicable to all entities, of –

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
>
> \*   \*   \*
>
> (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title[.]

11 U.S.C. § 362(a)(1), (2), (3), and (6). Section 362 of the Bankruptcy Code is made applicable to Debtor's Chapter 9 case pursuant to 11 U.S.C. § 901(a) and reference to "property of the estate" in § 362 means property of Debtor pursuant to 11 U.S.C. § 902(1).

17. The notice of claim sent to Debtor on March 4, 2013, as well as the civil action filed by Fisher in Garvin County District Court were acts of Fisher and her counsel seeking to obtain property of Debtor, including but not limited to insurance proceeds from Cimarron, for the alleged pre-petition claim of the Estate of Jamie Lynne Russell Fisher in violation of 11 U.S.C. §§ 362(a)(1), (2), (3), and (6) and 922.

18. Upon information and belief, the actions of Fisher and her counsel in sending the notice to Debtor and filing the civil action against Debtor in Garvin County District Court were undertaken with knowledge of the filing of Debtor's Chapter 9 bankruptcy case.

19. Both the notice and the civil action filed by Fisher and her counsel have resulted in monetary loss to Debtor for unnecessary attorneys' fees and expenses.

20. Debtor seeks a declaration pursuant to 28 U.S.C. § 2201 that Fisher and her counsel violated the automatic stay imposed by § 362 of the Bankruptcy Code and award Debtor damages for such violation, including punitive damages, if this Court determines that the acts of Fisher and her counsel were made with knowledge of Debtor's Chapter 9 case.

**Second Claim for Relief**
**Declaration Continuing Automatic Stay**

21. Debtor incorporates by reference the general allegations set forth in paragraphs 1 through 20 and further alleges:

22. Pursuant to 28 U.S.C. § 2201 and Federal Rule of Bankruptcy Procedure 7001(9), Debtor requests that this Court determine the rights, status, and other legal relations of Debtor, Cimarron, and Fisher with respect to the alleged claim of the Estate of Jamie Lynn Fisher Russell.

23. Fisher has made multiple demands that Debtor consent to relief from the automatic stay imposed by § 362 of the Bankruptcy Code so that Fisher may proceed with the civil action filed against Debtor in Garvin County District Court and pursue such claim up to the policy limits of the insurance policy underwritten by Cimarron.

24. Unlike traditional insurance companies, Cimarron is part-owned by Debtor with Debtor's insurance premiums and capital contributions available to pay meritorious claims covered by insurance policies issued by Cimarron. As such, any claims made against Cimarron is indirectly a claim against Debtor because Debtor's premium payments and capital contributions go towards defending and paying covered meritorious claims.

25. The alleged claim of the Estate of Jamie Lynn Fisher Russell may be covered by the liability insurance Debtor maintained with Cimarron prior to termination of such coverage on April 28, 2013.

26. Allowing Fisher to pursue the alleged claim of the Estate of Jamie Lynn Fisher Russell and potentially collect insurance proceeds from Cimarron after the settlement between Debtor and Cimarron will reduce Cimarron's payment of Debtor's capital through defense costs and, if Fisher is successful in prosecuting the Estate of Jamie Lynn Fisher Russell's alleged claim, for damages up to the limit imposed by the Oklahoma Governmental Tort Claims Act, Okla. Stat. tit. 51 § 151 *et seq*.

27. In the event Fisher is successful in filing a proof of claim out-of-time and prosecuting such alleged claim after obtaining relief from automatic stay, Fisher would, through indirect means, obtain property of the Debtor and prefer her pre-petition unsecured claim over all other pre-petition unsecured claims asserted against Debtor.

28. Debtor seeks a declaration pursuant to 28 U.S.C. § 2201 that the automatic stay preventing Fisher from continuing in her efforts in the civil action commenced in Garvin County District Court should not be modified or terminated because continuation of such action, even if limited to available insurance proceeds from Cimarron, allows Fisher to indirectly obtain Debtor's property by reducing the amount to be paid on account of the return of Debtor's capital contributions to Cimarron and allow Fisher to obtain more than her *pro rata* share of such property if it were distributed to similarly-situated unsecured creditors.

### Third Claim for Relief
### Extending the Automatic Stay to Cimarron

29. Debtor incorporates by reference the general allegations set forth in paragraphs 1 through 28 and further alleges:

30. Pursuant to 28 U.S.C. § 2201 and Federal Rule of Bankruptcy Procedure 7001(9), Debtor requests that this Court determine the rights, status, and other legal relations of Debtor, Cimarron, and Fisher with respect to the alleged claim of the Estate of Jamie Lynn Fisher Russell.

31. Section 105 of the Bankruptcy Code confers broad equitable powers upon this Court to supervise the bankruptcy process and to effectuate the provisions of the Bankruptcy Code. Pursuant to § 105, this Court may enjoin actions that interfere with or impede a debtor's bankruptcy process.

32. Although the language of § 362 speaks to actions against "debtors," courts have used § 105 to extend the automatic stay to third parties when actions against such third parties will directly affect the debtor and its property.

33. Any direct or indirect actions against Cimarron by Fisher will directly affect Debtor by reducing the capital contributions to be returned by Cimarron to Debtor. Moreover, any direct or indirect actions against Cimarron by Fisher would effectively operate as a bypass around the statutory scheme established for the orderly distribution of Debtor's property. Litigation against Cimarron (either directly or indirectly) jeopardizes the assets of Debtor and creates a risk that similarly-situated creditors will be treated differently.

34. Debtor seeks a declaration pursuant to 28 U.S.C. § 2201 that any direct or indirect actions against Cimarron are effectively actions against Debtor that will deplete a significant asset of Debtor and prefer Fisher to other similarly-situated creditors, and that this Court extend the automatic stay imposed by § 362 to Cimarron and enjoin Fisher and her counsel pursuant to § 105 from taking any direct or indirect actions against Cimarron in relation to the alleged pre-petition claim of the Estate of Jamie Lynn Fisher Russell.

WHEREFORE, Debtor requests that this Court enter a judgment declaring the rights, status, and other legal relations of Debtor, Cimarron, and Fisher pursuant to 28 U.S.C. § 2201 and Federal Rule of Bankruptcy Procedure 7001(9) with respect to the alleged claim of the Estate of Jamie Lynn Fisher Russell and find:

(a) that Fisher and her counsel have violated the automatic stay imposed by § 362 and that Debtor is entitled to actual and punitive damages arising from such breach as this Court deems appropriate;

(b) that the automatic stay enjoining Fisher and her counsel from continuing to prosecute such claim will directly affect Debtor's property and allow Fisher to prefer her alleged claim over other similarly-situated creditors;

(c) that the automatic stay be extended to Cimarron and an injunction be entered preventing Fisher and her counsel from taking any direct or indirect actions against Cimarron; and

(d) any other relief that this Court deems reasonable and appropriate under the facts and circumstances of Debtor's Chapter 9 case.

          MCDONALD, MCCANN,
           METCALF & CARWILE, LLP

*/s/ Chad J. Kutmas*

By: _____
Chad J. Kutmas, OBA No. 19505
15 E. Fifth Street, Suite 1800
Tulsa, OK 74103
(918) 430-3700
(918) 430-3770 (Fax)
ckutmas@mmmsk.com

*Attorneys for Pauls Valley Hospital Authority*