## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

```
------------------------------------------------------------------- x
                                              :
In re:                                        :          Chapter 9
                                              :
PAULS VALLEY HOSPITAL AUTHORITY,              :          Case No. 13-10791
                                              :
              Debtor.                         :          Judge Hall
                                              :
------------------------------------------------------------------x
```

## PLAN OF ADJUSTMENT OF THE PAULS VALLEY HOSPITAL AUTHORITY
## d/b/a PAULS VALLEY GENERAL HOSPITAL

## As of _____, 2015

Chad J. Kutmas, Esq.
MCDONALD, MCCANN
 METCALF & CARWILE, LLP
15 E. 15th Street, Suite 1400
Tulsa, Oklahoma 74103
(918) 430-3700
(918) 430-3770 (Fax)
ckutmas@mmmsk.com

*Counsel for the Debtor*

# TABLE OF CONTENTS

ARTICLE 1   DEFINITIONS, CONSTRUCTION, AND INTERPRETATION ......................... 1

    1.1   Construction and Interpretation ............................................................... 1

    1.2   Plan Documents ..................................................................................... 2

    1.3   Definitions.............................................................................................. 2

ARTICLE 2   CLASSIFICATION OF CLAIMS ................................................................ 7

    2.1   Claims Classified .................................................................................... 7

    2.2   Classification of Claims .......................................................................... 7

ARTICLE 3   IDENTIFICATION OF IMPAIRED CLASSES ......................................... 10

    3.1   Impaired Classes of Claims ................................................................... 10

    3.2   Impairment Controversies...................................................................... 10

ARTICLE 4   TREATMENT OF ALLOWED CLAIMS ................................................... 10

    4.1   Class 1: Pauls Valley National Bank Secured Claim ............................. 10

    4.2   Class 2: SSM of Oklahoma, Inc. Secured Claim ................................... 10

    4.3   Class 3: De Lage Landen Financial Services Secured Claim ................ 10

    4.4   Class 4: State Bank of Wynnewood Secured Claim ..............................11

    4.5   Class 5: MB Financial Bank Secured Claim...........................................11

    4.6   Class 6: United States of America Medicare/Medicaid Claim ............... 111

    4.7   Class 7: Priority Unsecured Tax Claims ................................................11

    4.8   Class 8: General Unsecured Claims...................................................... 12

    4.9   Class 9: Unsecured Litigation Claim of Stefanie Fisher........................ 12

    4.10   Class 10: Unsecured Litigation Claim of Christopher Whybrew ........................ 12

    4.11   Class 11: Unsecured Rejection Damages Claims ................................. 13

    4.12   Class 12: Convenience Claims.............................................................. 13

    4.13   Class 13: Subordinated Claims ............................................................ 13

ARTICLE 5    PROVISION FOR TREATMENT OF UNCLASSIFIED CLAIMS .................... 13

    5.1    Treatment of Administrative Expenses .................................................. 13

ARTICLE 6    IMPLEMENTATION OF THE PLAN ....................................................... 14

    6.1    Vesting of Debtor's Property; Effectuation of Plan .............................. 14

    6.2    Retention of Claims ............................................................................. 14

    6.3    Designation of Litigation and Disbursement Agent .............................. 14

ARTICLE 7    PROVISIONS GOVERNING DISTRIBUTIONS ...................................... 15

    7.1    Distributions to Holders of Allowed Claims ......................................... 15

    7.2    Cash Payment ...................................................................................... 15

    7.3    Delivery of Distributions; Undeliverable Distributions ......................... 16

    7.4    Timeliness of Payments ....................................................................... 16

    7.5    No Postpetition Accrual ....................................................................... 16

    7.6    Time Bar to Cash Payments ................................................................. 16

    7.7    No Distributions Pending Allowance .................................................... 16

    7.8    De Minimis Distributions .................................................................... 16

    7.9    Setoff .................................................................................................. 17

    7.10    Treatment of Late-Filed Claims .......................................................... 17

ARTICLE 8    RESOLVING CONTESTED CLAIMS UNDER THE PLAN ........................... 17

    8.1    Objection Deadline .............................................................................. 17

    8.2    Prosecution of Objections to Claims .................................................... 17

    8.3    Voting Rights of Holders of Contested Claims ...................................... 18

ARTICLE 9    PROVISIONS GOVERNING EXECUTORY CONTRACTS ........................... 18

    9.1    Assumption and Rejection of Executory Contracts ............................... 18

    9.2    Assumption of Sovereign Leasing, LLC Executory Contract ............... 18

ARTICLE 10    CONDITIONS PRECEDENT TO EFFECTIVE DATE OF THE PLAN ........... 18

10.1    Conditions Precedent to Effective Date of the Plan ............................................. 18

10.2    Waiver of Conditions ............................................................................................. 19

ARTICLE 11   EFFECT OF CONFIRMATION ON THE PLAN ................................................ 19

11.1    Title to and Vesting of Assets ............................................................................... 19

11.2    Discharge of Claims ............................................................................................... 19

11.3    Discharge of Debtor ............................................................................................... 20

11.4    Preservation and Prosecution of Causes of Action .............................................. 20

11.5    Term of Existing Injunctions or Stays .................................................................. 20

11.6    Injunctions ............................................................................................................. 21

11.7    Exculpation and Release ........................................................................................ 21

11.8    Dismissal of Pending Litigation ........................................................................... 22

ARTICLE 12   RETENTION OF JURISDICTION ................................................................... 22

12.1    Scope of Jurisdiction ............................................................................................. 22

12.2    Failure of Bankruptcy Court to Exercise Jurisdiction .......................................... 23

ARTICLE 13   MISCELLANEOUS PROVISIONS ................................................................... 23

13.1    Insurance and Annuities ........................................................................................ 23

13.2    Binding Effect of Plan ........................................................................................... 24

13.3    Governing Law ...................................................................................................... 24

13.4    Modification of the Plan ........................................................................................ 24

13.5    Defaults of Holders of Claims ............................................................................... 24

13.6    Severability ............................................................................................................ 24

13.7    Closing the Case .................................................................................................... 25

## PLAN OF ADJUSTMENT OF THE PAULS VALLEY HOSPITAL AUTHORITY
## d/b/a PAULS VALLEY GENERAL HOSPITAL

The Pauls Valley Hospital Authority d/b/a Pauls Valley General Hospital ("Debtor") proposes the following Plan of Adjustment of the Pauls Valley Hospital Authority d/b/a Pauls Valley General Hospital (the "Plan") under Chapter 9 of the United States Bankruptcy Code (the "Bankruptcy Code"). Accompanying this Plan is a disclosure statement ("Disclosure Statement") that has been approved by the Bankruptcy Court. The Disclosure Statement provides additional information to be considered in connection with this Plan.

Debtor is a municipal trust that operates a non-profit acute care hospital and ancillary health services, including health clinics and ambulance service in the city of Pauls Valley located in Garvin County, Oklahoma. This Plan provides for the continued operation of the hospital and its ancillary health services upon confirmation of this Plan.

This Plan provides for specific treatment with respect to secured claims, priority tax claims, and general unsecured claims. The total amount of secured claims in this Bankruptcy Case is $533,495.17. The total amount of priority tax claims in this Bankruptcy Case is $536,559.36. The total amount of general unsecured claims in this Bankruptcy Case is $6,600,932.57. Secured claims are to be paid through the return of the collateral or through repayment of the amount of allowed secured claims over a sixty (60) month period, at a prime rate of interest. Priority tax claims are to be paid consistent with the provisions of the Bankruptcy Code with the option of such claimants to receive an earlier reduced payment in full satisfaction of such claims on the Effective Date of this Plan. The payment of general unsecured claims will be made from a lump sum in the approximate amount of $313,655 to be distributed on a *pro rata* basis, and depending on the vote of such general unsecured creditors, the general unsecured creditors may elect to participate in and potentially receive disbursements from litigation recoveries, and from cash flow of the Debtor in the amount of $250,000 over a period of five (5) years, or $50,000 per year, commencing in fiscal year 2017 and concluding in fiscal year 2021. Distributions to Allowed Unsecured Claims are expected to approximate 10%.

## ARTICLE 1
## DEFINITIONS, CONSTRUCTION, AND INTERPRETATION

### 1.1   Construction and Interpretation

The Plan is a complete, whole, and integrated statement of the binding agreement between the Debtor and its creditors and parties-in-interest upon the matters contained herein. The capitalized terms used herein shall have their respective meanings as set forth in section 1.3 of this Article. Terms not defined shall have their meanings given to them by the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), unless the context requires otherwise. In the event that terms are not defined in the foregoing authorities, the terms shall be given their ordinary dictionary meaning consistent with modern usage. The use of the words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular article, section, subsection, or clause contained herein. Words denoting the singular in number shall include the plural number and vice versa, and words denoting one gender shall include the other gender. The headings and table of contents contained herein are for convenience only and shall not limit or otherwise modify the Plan.

**1.2    Plan Documents**

All exhibits and schedules hereto, whether they are submitted herewith or subsequently filed with United States Bankruptcy Court for the Western District of Oklahoma ("Bankruptcy Court"), are incorporated into the Plan by this reference as though there were typed verbatim herein.

**1.3    Definitions**

1.    *Acceptance* shall mean a Class of Claims has accepted this Plan if this Plan has been accepted by claimants of that Class that hold at least two-thirds in dollar amount and a majority in number of the Allowed Claims that vote either to accept or reject this Plan.

2.    *Administrative Expenses* shall mean an Allowed Claim for the cost or expense of administering the Chapter 9 Case as may be applicable under § 503(b) of the Bankruptcy Code, or the priority afforded in § 507(a)(2) of the Bankruptcy Code. Nothing in this Plan shall be construed as recognition by the Debtor that any such Administrative Expenses incurred in this Chapter 9 case constitutes administrative expenses in a Chapter 9 case..

3.    *Allowed Administrative Expense* shall mean a Claim or expense allowed by the Bankruptcy Court under § 503(b) of the Bankruptcy Code and entitled to priority pursuant to § 507(a)(1) of the Bankruptcy Code to the extent recognized and allowed in this Chapter 9 case.

4.    *Allowed Claim* shall mean as follows: if a Claim has been timely filed before the Claims Bar Date, the allowed amount will be the claimed amount, provided no objection to the Claim is or has been filed within 90 days of the Effective Date or such later date as may be extended by the Court. If no Proof of Claim has been filed, an Allowed Claim is the amount of the Claim listed in the List of Creditors filed by Debtor, or such List of Creditors as amended, provided that such claim is not listed a disputed, contingent or unliquidated, or such scheduled claim is dealt with in this Plan or the claims objection process. If an objection to a Claim is filed, the amount and validity of the Claim will be the amount determined by Final Order of the Bankruptcy Court.

5.    *Allowed Priority Tax Claim* shall mean any Allowed Claim entitled to priority under § 507(a)(8) of the Bankruptcy Code.

6.    *Allowed Secured Claim* shall mean an Allowed Claim arising on or before the Petition Date that is secured by a valid Lien on property of the Debtor that is not void or voidable under any state or federal law or an Allowed Claim for which the holder asserts a setoff under § 553 of the Bankruptcy Code, to the extent of the value (which is either agreed to by the Debtor pursuant to this Plan, or in the absence of an agreement, is determined in accordance with §§ 506(a) or 1111(b) of the Bankruptcy Code), or an Allowed Claim that the Debtor has agreed to treat as an Allowed Secured Claim pursuant to this Plan. That portion of such an Allowed Claim exceeding the value of security held therefore shall be an Allowed Unsecured Claim to the extent a holder of a Secured Claim has preserved such Allowed Unsecured Claim, except as this Plan may provide otherwise.

7.      *Ballot* shall mean each of the Ballot forms distributed with the Disclosure Statement to holders of Impaired Claims entitled to vote in connection with the solicitation of acceptance of this Plan.

8.      *Bankruptcy Code* shall mean the Bankruptcy Reform Act of 1978, as amended and codified in 11 U.S.C. § 101 et seq.

9.      *Bankruptcy Court* shall mean the United States Bankruptcy Court for the Western District of Oklahoma.

10.     *Bankruptcy Rules* shall mean the Federal Rules of Bankruptcy Procedure, as promulgated by the United States Supreme Court pursuant to 28 U.S.C. § 2075.

11.     *Case* shall mean the Debtor's bankruptcy case, Case No. 13-10791, filed pursuant to Chapter 9 of the Bankruptcy Code filed by the Pauls Valley Hospital Authority d/b/a Pauls Valley General Hospital on March 1, 2013, in the Bankruptcy Court.

12.     *Chapter 9 Case* shall mean the Case.

13.     *Claim* shall mean a claim as defined in § 101(5) of the Bankruptcy Code, which includes any right to payment from Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, un-matured, contested, uncontested, legal, equitable, secured or unsecured; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, un-matured, contested, uncontested, secured, or unsecured.

14.     *Claims Bar Date* shall mean the date upon which Claims must be filed, which in this Case was July 1, 2013 (and August 28, 2013 for Claims of a Governmental Unit). Any Claim, except for Administrative Expenses, which is separately provided for in this Plan, that has been filed but not on or before such Claims Bar Date shall be deemed untimely as a Late-Filed Claim.

15.     *Class* shall mean a group or category of Claims that is substantially similar to the other Claims in such Class.

16.     *Confirmation Date* shall mean the date upon which the Court enters an order confirming the Plan in accordance with §§ 1129(a)(2), (3), (6), (8), and (10) and 1129(b)(1), (b)(2)(A), and (b)(2)(B) of the Bankruptcy Code.

17.     *Confirmation Hearing* shall mean the hearing on confirmation of the Plan held by the Bankruptcy Court pursuant to § 1128 of the Bankruptcy Code, scheduled for _____, and which may be continued from time-to-time.

18.     *Confirmation Order* shall mean the order entered by the Bankruptcy Court that confirms the Plan, whether or not such order constitutes a Final Order.

19.     *Consummation* shall mean substantial consummation as defined in §1101(2) of the Bankruptcy Code.

20.     *Contested Claim* shall mean a Claim or Claim for Administrative Expenses that is either: (i) listed in Debtor's List of Creditors as disputed, contingent, or unliquidated regardless of whether a proof of claim has been filed; (ii) Debtor's List of Creditors conflict with a proof of claim that has been filed; (iii) that was not listed in Debtor's List of Creditors; or (iv) there is a pending objection to a Claim or Claim for Administrative Expenses that has not been resolved by agreement or an order of the Bankruptcy Court. In the event, that any part of a Claim constitutes a Contested Claim, such Claim, in its entirety shall be deemed to constitute a Contested Claim for purposes of distribution under the Plan.

21.     *Debtor* shall mean Pauls Valley Hospital Authority d/b/a Pauls Valley General Hospital, in Case No. 13-10791, pending before the Bankruptcy Court.

22.     *Disclosure Statement* shall mean the written Disclosure Statement filed in this Case pursuant to § 1125 of the Bankruptcy Code, that relates to this Plan, as amended, supplemented, or modified, and approved by the Bankruptcy Court, pursuant to § 1125 of the Bankruptcy Code and Bankruptcy Rule 3017.

23.     *Disputed Claim* shall mean as follows: any Claim or portion thereof that is not an Allowed Claim, and includes without limitation Claims (1) listed by the Debtor on its List of Creditors and (a) listed at zero or "unknown" or (b) for which no amount is shown, or (c) listed as "disputed," "contingent," or "unliquidated," or (2) for which a proof of claim has been filed with the Bankruptcy Court asserting a Claim and an objection to such Claim has been filed within 90 days of the Effective Date, until such objection is withdrawn or resolved by a Final Order of the Bankruptcy Court.

24.     *Effective Date* shall mean a business day selected by the Debtor and its counsel that is at least 20 days after the Confirmation Order is entered by the Court and on which all of the conditions precedent contained herein have been satisfied or waived.

25.     *Executory Contract* shall mean any contract including without limitation, any unexpired lease, to which the Debtor is a party and which is capable of being assumed or rejected pursuant to § 365 of the Bankruptcy Code.

26.     *Fee Claim* shall mean a Claim under §§ 503 and 1103 of the Bankruptcy Code for allowance and compensation and reimbursement of expenses in the Chapter 9 Case.

27.     *Filed* shall mean filed in the Bankruptcy Court or, with regard to a proof of claim, deemed filed pursuant to § 1111(a) of the Bankruptcy Code.

28.     *Final Decree* shall mean the order of the Bankruptcy Case closing the Chapter 9 Case.

29.     *Final Order* shall mean an order in which the time to appeal, petition for certiorari, or move for rehearing has expired; provided, however, that no order shall fail to be a

4

Final Order solely because of the possibility that a motion pursuant to Bankruptcy Rule 9024 may be filed with respect to such order.

30. *General Unsecured Claim* shall mean any Allowed Claim against Debtor that is not a Priority Claim, Secured Claim, Administrative Expense, or Subordinated Claim.

31. *Governmental Unit* shall have the meaning ascribed to it by § 101(27) of the Bankruptcy Code.

32. *Impaired* shall mean have the meaning set forth in § 1124 of the Bankruptcy Code.

33. *Initial Distribution Date* shall mean any business day within 30 days after payment of all timely filed Claims for Administrative Expenses.

34. *Late-Filed Claim* shall mean any Claim, other than an Administrative Claim, that has been filed after the Claims Bar Date.

35. *Lien* shall mean a charge against or interest in the property, including security interests and mortgages, to secure payment of a debt or performance of an obligation.

36. *List of Creditors* shall mean the list of creditors that Debtor has filed with the Bankruptcy Court pursuant to Section 924 of the Bankruptcy Code, as may be amended from time to time. For ease of reference, Debtor filed its List of Creditors utilizing official bankruptcy schedules D, E, and F.

37. *Litigation and Disbursement Agent* shall mean James W. Carlton, Jr., who has been selected pursuant to this Plan to manage litigation claims of Debtor which are retained hereunder including without limitation all Recovery Claims and to supervise disbursement of funds pursuant to this Plan.

38. *Petition Date* shall mean March 1, 2013.

39. *Plan* shall mean this document and any exhibits attached hereto, either in its present form or as it may be altered, amended, modified, or supplemented from time-to-time in accordance with the provisions herein, the Bankruptcy Code, and the Bankruptcy Rules.

40. *Prime Rate* shall mean the prime rate of interest on the Effective Date of this Plan.

41. *Priority Tax Claim* shall mean any Claim entitled to priority under § 507(a)(8) of the Bankruptcy Code.

42. *Professional Person* shall mean all legal, accounting, financial advisors, or other persons or firms retained in this Case by the Debtor.

43. *Recovery Claims* shall mean the claims, rights, causes of action, defenses, counterclaims, suits, or proceedings, whether in law or in equity, whether known or unknown,

that the Debtor may hold or assert against any third parties, including without limitation, all claims, rights of action, suits, and proceedings under Chapter 5 of the Bankruptcy Code.

44.    *Recovery Claims Fund* shall mean $100,000 of the funds held for the benefit of Allowed Unsecured Claim holders to be set aside for litigation expenses incurred by the Litigation and Disbursement Agent, in the event that two-thirds (2/3) in number and two-thirds (2/3) in amount of holders of Class 8 Claims elect to participate with Debtor in prosecution of Recovery Claims.

45.    *Schedules* shall mean the List of Creditors filed with the Bankruptcy Court by the Debtor as such List of Creditors may be amended or supplemented from time-to-time in accordance with Bankruptcy Rule 1009 and the Bankruptcy Code.

46.    *Scheduled Claim* shall refer to a Claim that has been listed by the Debtor on the Schedules, as amended and filed in this Case.

47.    *Secured Claim* shall mean a Claim pursuant to § 506(b) of the Bankruptcy Code against property of the Debtor for which the claimant holds a duly perfected mortgage, lien (statutory or otherwise), security interest, or other encumbrance, as security for the payment of such Claim, to the extent that the value of the property securing the Claim is equal to or exceeds such Claim. That portion of such Claim exceeding the value of the property securing the Claim, to the extent preserved by the holder of a Secured Claim, shall be an Unsecured Claim, as defined below.

48.    *SSM* shall mean SSM of Oklahoma, Inc.

49.    *Statutory Administrative Expenses* shall mean those Claims provided administrative priority by § 503(b)(9) of the Bankruptcy Code.

50.    *Subordinated Claim* shall mean any Allowed Claim that is subordinated by agreement or by order of the Bankruptcy Court.

51.    *UCC* shall mean Unsecured Creditors Committee.

52.    *United States Trustee* shall mean the Office of the United States Trustee for Region 20.

53.    *Unsecured Claim* shall mean all Claims against the Debtor for which the claimant holds no valid lien, mortgage, security interest, or other encumbrance on property of the Debtor as security for the payment thereof, and all Claims against the Debtor for which the claimant holds a valid lien, mortgage, security interest, or other encumbrance on the property of the Debtor as security for the repayment thereof to the extent that such claim exceeds the value of the property, to the extent the Secured Creditor asserted or preserved such Unsecured Claim.

54.    *Unsecured Litigation Claim of Christopher Whybrew* shall mean the claims asserted in the lawsuit filed by Christopher Whybrew against Debtor styled *David Christopher Whybrew v. City of Pauls Valley, et al.*, Case No. CJ-2012-110, filed in the District Court of Garvin County, Oklahoma.

55.    *Unsecured Litigation Claim of Stefanie Fisher* shall mean the claims asserted in the lawsuit filed by Stefanie Fisher against Debtor styled *Stefanie Fisher, as personal representative of the Estate of Jamie Lynn Fisher Russell and Guardian of J.W.F, a minor, v. Pauls Valley General Hospital Authority, et al.*, Case No. CJ-2013-105, filed in the District Court of Garvin County, Oklahoma.

## ARTICLE 2
## CLASSIFICATION OF CLAIMS

### 2.1    Claims Classified

For purposes of voting on the Plan and related confirmation matters, all Claims shall be classified as set forth in this Article. The classification contained herein shall not apply to Administrative Expenses. The Plan shall only provide for distribution to holders of Allowed Claims. Unless expressly indicated herein, nothing in the Plan shall provide for the allowance of any of the Claims dealt with in this Plan.

### 2.2    Classification of Claims

The Bankruptcy Code provides that holders of Claims are to be grouped into classes under a proposed plan and that they are to vote to accept or reject the proposed plan by class. Holders of Claims that have more than one Claim in a single class shall have their Claims aggregated and treated as a single Claim.

Pursuant to § 1123(a)(1) of the Bankruptcy Code, Administrative Expenses shall not be classified for purposes of voting or receiving distributions under the Plan. Rather, all Administrative Expenses will be treated separately as unclassified Claims pursuant to the terms of Article 5 hereof.

Creditors in each Class are listed for informational purposes only. By identifying a particular creditor as a member of a specific Class, Debtor does not consent to the validity, nature, or extent of the Claim listed herein, and reserves all of its rights to object to such Claim or to recharacterize such Claim as appropriate. The Plan classifies and designates the Claims against the Debtor as follows:

Class 1:        Pauls Valley National Bank Secured Claim

This class consists of a secured claim of Pauls Valley National Bank in the amount of $43,844.22, as reflected on proof of claim number 11-1, which represents the balance of a loan made to Debtor for the purchase of certain medical equipment, including a laparoscope.

Class 2:        SSM of Oklahoma, Inc. Secured Claim

This class consists of a secured claim asserted by SSM in the amount of $301,927.00, as reflected on proof of claim number 59, which SSM contends represents a loan made to the Debtor to support operations of the hospital that was being managed by SSM, and secured by all personal and other property owned by Debtor located on, in or used for the operation and

maintenance of the buildings and improvements on the real property where the hospital is located, all accounts and all products and proceeds from said accounts. Notwithstanding the proposed treatment of this class, Debtor will seek to have such claim subordinated to Class 13 or recharacterized as an equity contribution rather than a Secured Claim.

Class 3:        De Lage Landen Financial Services Secured Claim

This class consists of a secured claim asserted by De Lage Landen Financial Services in the amount of $15,072.20, as reflected on proof of claim number 46, for certain medical equipment, including a hematology system.

Class 4:        State Bank of Wynnewood Secured Claim

This class consists of a secured claim asserted by State Bank of Wynnewood in the amount of $47,657.00, as shown on the List of Creditors filed by the Debtor, which represents the balance of an obligation for a portable trailer obtained by the hospital to establish a clinic in the community of Wynnewood.

Class 5:        MB Financial Bank Secured Claim

This class consists of a secured claim asserted by MB Financial Bank in the amount of $124,994.75, as reflected on proof of claim number 61, for the lease of certain medical equipment identified in a Financing Statement, including certain x-ray imaging and viewing equipment.

Class 6:        United States of America Medicare/Medicaid Claim

This class consists of all pre-petition claims of Debtor for compensation by the United States of America which have been paid to Debtor which are subject to possible setoff or recoupment by the United States of America through itself or its agents, whereby it can recover from post-petition reimbursements for medical services covered by Medicare and Medicaid. The amount of those claims, if any, are unknown.

Class 7:        Priority Unsecured Tax Claims

This Class includes Priority Unsecured Tax Claims of Governmental Units. There are three holders of Claims in this Class 7 totaling $536,559.36.The holders of claims in this Class 7 are identified as follows:

| Name of Creditor | Scheduled or Proof of Claim | Amount |
|---|---|---|
| Oklahoma Employment Security Commission | Scheduled and Proof of Claim No. 68 | $43,710.24 |
| Oklahoma Tax Commission Business Tax Division | Scheduled and Proof of Claim No. 6 | $28,823.41 |
| Department of United States Treasury | Scheduled and Proof of Claim No. 33 | $464,025.71 |

Class 8:        General Unsecured Claims

Class 8 Claims consist of all Unsecured Claims in the amount of at least $250, relating generally to trade debt. Holders of Class 8 Claims may elect to have their Claims reduced to $250 and treated as a Class 12 Claim, and upon such election, will forfeit any Claim in excess of $250, provided that such Class 8 election claims will be capped as provided in Class 12. Creditors holding Class 8 Claims are identified in Schedule 2.2.8 attached hereto.

Class 9:        Unsecured Litigation Claim of Stefanie Fisher

Class 9 consists of an Unsecured Litigation Claim of Stefanie Fisher in an amount not to exceed $1,000,000 as reflected in proof of claim number 80-1. This claim is based on a wrongful death lawsuit brought by Stefanie Fisher as personal representative of the estate of Jamie Russell filed in Garvin County, Oklahoma.

Class 10:       Unsecured Litigation Claim of Christopher Whybrew

Class 10 consists of an Unsecured Litigation Claim of Christopher Whybrew in the amount of $350,000 as reflected in proof of claim number 81. This claim is based on a confidential settlement.

Class 11:       Unsecured Rejection Damages Claims

The Debtor anticipates rejecting executory contracts and unexpired leases in the exercise of its business judgment as part of this Plan. A list of all executory contracts can be found at Schedule 9.1 to this Plan. Any party to an executory contract designated as "rejected" in Schedule 9.1 will be treated as a Class 11 Claim.

Class 12:       Convenience Claims

This Class consists of holders of Unsecured Claims in amounts in excess of $250 who have elected to reduce their Claims to the amount of $250 and those creditors holding Claims under $250. Those Creditors holding Claims in amounts in excess of $250 who elect to be treated as Class 12 creditors and to forfeit any claim in excess of $250 and those creditors holding Claims in amounts under $250 will be paid in full unless their Claim is objected to or disallowed. The funds available to this class shall be limited to $38,250 in total distributions, and if the pool of claimants in this convenience class exceeds this amount then such claimants shall be paid on a *pro rata* basis. Creditors holding Claims in amounts that are less than $250 are identified in Schedule 2.2.12 attached hereto. Debtor anticipates that additional claimants will be added to this Class once creditors in Class 8 have elected whether to be treated as a Class 12 creditor.

Class 13:       Subordinated Claims

This Class consists of the Claims subordinated pursuant to 11 U.S.C § 510. This class may consist of the Claims of SSM and any other holder of a proof of claim as to which an objection seeking subordination under this Plan shall be timely filed.

## ARTICLE 3
## IDENTIFICATION OF IMPAIRED CLASSES

### 3.1    Impaired Classes of Claims

The Bankruptcy Code only entitles holders of impaired Claims who receive some consideration under a proposed plan to vote to accept or reject the same. Holders of unimpaired Claims, on the other hand, are conclusively presumed to have accepted a proposed plan and are not entitled to vote. Under the Plan, Classes 1, 2, 3, 4, 5, 6, 8, 11, and 12 are impaired and Classes 7, 9 and 10 are unimpaired.

### 3.2    Impairment Controversies

Any controversy regarding whether a particular Claim or Class is impaired under the Plan shall be decided by the Bankruptcy Court after notice and hearing.

## ARTICLE 4
## TREATMENT OF ALLOWED CLAIMS

### 4.1    Class 1:    Pauls Valley National Bank Secured Claim

Upon confirmation of this Plan, Pauls Valley National Bank will retain its lien against its collateral to the same extent and priority as existed prior to the Petition Date. At the option of Debtor, Debtor will either deliver the property subject to the lien to Pauls Valley National Bank on the Effective Date of this Plan in full satisfaction of this secured claim, or in the alternative, Debtor will make payments to Pauls Valley National Bank consisting of principal plus interest at the Prime Rate on the Effective Date over the term of five (5) years in sixty (60) equal installments due on the 15th day of each month.

### 4.2    Class 2:    SSM of Oklahoma, Inc., Secured Claim

Upon confirmation of this Plan, SSM will retain its lien against its collateral to the same extent and priority as existed prior to the Petition Date. At the option of Debtor, Debtor will either deliver the property subject to the lien to SSM of Oklahoma, Inc. on the Effective Date of this Plan in full satisfaction of this secured claim, or in the alternative, Debtor will make payments to SSM consisting of principal plus interest at the Prime Rate on the Effective Date over the term of five (5) years in sixty (60) equal installments due on the 15th day of each month. Notwithstanding the proposed treatment of this class, Debtor intends to object to SSM's Claim and will seek to have such claim subordinated to Class 13 or to be recharacterized as an equity contribution rather than a debt obligation of the Debtor.

### 4.3    Class 3:    De Lage Landen Financial Services Secured Claim

Upon confirmation of this Plan, De Lage Landen Financial Services will retain its lien against its collateral to the same extent and priority as existed prior to the Petition Date. At the option of Debtor, Debtor will either deliver the property subject to the lien to De Lage Landen Financial Services on the Effective Date of this Plan in full satisfaction of this secured claim, or in the alternative, Debtor will make payments to De Lage Landen Financial Services consisting

of principal plus interest at the Prime Rate on the Effective Date over the term of five (5) years in sixty (60) equal installments due on the 15th day of each month.

### 4.4    Class 4:    State Bank of Wynnewood Secured Claim

Upon confirmation of this Plan, State Bank of Wynnewood will retain its lien against its collateral to the same extent and priority as existed prior to the Petition Date. At the option of Debtor, Debtor will either deliver the property subject to the lien to State Bank of Wynnewood on the Effective Date of this Plan in full satisfaction of this secured claim, or in the alternative, Debtor will make payments to State Bank of Wynnewood consisting of principal plus interest at the Prime Rate on the Effective Date over the term of five (5) years in sixty (60) equal installments due on the 15th day of each month.

### 4.5    Class 5:    MB Financial Bank Secured Claim

Upon confirmation of this Plan, MB Financial Bank will retain its lien against its collateral to the same extent and priority as existed prior to the Petition Date. At the option of Debtor, Debtor will either deliver the property subject to the lien to MB Financial Bank on the Effective Date of this Plan in full satisfaction of this secured claim, or in the alternative, Debtor will make payments to MB Financial Bank consisting of principal plus interest at the Prime Rate on the Effective Date over the term of five (5) years in sixty (60) equal installments due on the 15th day of each month.

### 4.6    Class 6:    United States of America Medicare/Medicaid Claim

The amount of this claim is unknown and contingent on all future audits and evaluations of Debtor's pre-petition reimbursements from Medicare and Medicaid. This Plain provides for injunctive relief prohibiting any creditor, including the United States of America and its agents, from offsetting or recouping post-petition amounts owed to Debtor against pre-petition obligations owed to the creditor. As a result of these injunctions, the United States of America shall only have an unsecured claim for any pre-petition amounts and will be paid in the same manner as Class 8 General Unsecured Claims to the extent such Unsecured Claims are deemed allowed by the Bankruptcy Court.

### 4.7    Class 7:    Priority Unsecured Tax Claims

Allowed Class 7 Priority Unsecured Tax Claims entitled to priority pursuant to § 507(a)(8) of the Bankruptcy Code will be paid in accordance with § 1129(a)(9)(C) of the Bankruptcy Code the allowed amount entitled to priority over five (5) years in equal quarterly installments, beginning in the first full quarter after the Effective Date, consistent with the IRS's schedule of quarterly tax payments. Alternatively, at the election of the holders of claims in this Class and which such election is unanimous, the payment of $100,000 shall be paid on the Effective Date and shared *pro rata* among the claimants in full satisfaction of the Claims of these claimants in this Class 7. While this Class is unimpaired and will not vote on the plan, Claimants included in this Class 7 will receive a ballot for election of claim treatment provided herein.

**4.8     Class 8:         General Unsecured Claims**

After confirmation of this Plan and within thirty (30) days of the Effective Date, Debtor will deposit with the Litigation and Disbursement Agent the amount of $313,655 to be held for the benefit of Allowed Unsecured Claim holders. In the event that Class 7 creditors do not elect payment of $100,000 on a *pro rata* basis, those funds will be added to the amount held for the benefit of Allowed Unsecured Claims. After resolution of all objections to Claims, the Litigation and Disbursement Agent shall distribute the funds to all holders of Allowed General Unsecured Claims (including those in Classes 9-11) on a *pro rata* basis. Additionally, Holders of Allowed General Unsecured Claims will receive an additional $50,000 in distributions per year for a five year period from Debtor's operations commencing in fiscal year 2017 and concluding in fiscal year 2021, for an additional aggregate payment of $250,000, to be shared on a pro rata basis. Debtor will pay periodic amounts totaling $50,000 during each of the five fiscal years identified to the Litigation and Disbursement Agent, who will then distribute such funds to holders of Allowed General Unsecured Claims in Class 8.

Class 8 creditors holding claims in excess of $250 may elect to reduce their allowed claim to $250 as a Class 12 Claim, and shall thereby forfeit any claim in excess thereof.

In addition and to the extent that two-thirds (2/3) in number and two-thirds (2/3) in amount of holders of Class 8 Claims (excluding those Class 8 creditors electing Class 12 treatment) elect to participate with Debtor in prosecution of Recovery Claims (excluding any holders of Class 8 Claims who may be defendants in such Recovery Claims), $100,000 of the funds held for the benefit of Allowed Unsecured Claim holders identified above shall be set aside for litigation expenses incurred by the Litigation and Disbursement Agent, including attorneys' fees and expenses (i.e Recovery Claims Fund). For purposes of voting to participate in Recovery Claims only, a failure of a Class 8 creditor to submit a ballot shall be counted as a vote against participation in prosecuting Recovery Claims. In the event such election is made, each holder of Allowed General Unsecured Claims in this class and in Classes 9-11 shall receive 40% of any successful collection of Recovery Claims net of expenses and attorneys' fees on a *pro rata* basis, with the Debtor receiving the remainder of such recovery. Each holder of an Allowed General Unsecured Claim shall also receive the remainder, if any, of the Recovery Claims Fund, which shall be distributed on a *pro rata* basis upon the conclusion of the litigation of the Recovery Claims or after the decision to settle, compromise, terminate, or forego litigation of the Recovery Claims.

**4.9     Class 9:         Unsecured Litigation Claim of Stefanie Fisher**

Upon confirmation of this Plan, this Class 9 claim will be treated consistent with the Agreed Order Granting Relief from Automatic Stay entered by this Court on February 21, 2014. To the extent that this Class is allowed and entitled to distribution, it will share in distributions on a *pro rata* basis along with claimants holding Claims in Classes 8-11. It is anticipated that no distributions will be made to this Claimant based upon the terms of the settlement and Agreed Order.

**4.10   Class 10:      Unsecured Litigation Claim of Christopher Whybrew**

Upon confirmation of this Plan, this Class 10 Claim will be treated consistent with the confidential settlement agreement between Christopher Whybrew and Debtor. To the extent that this Class is allowed and entitled to distribution, it will share in distributions on a *pro rata* basis along with claimants holding Claims in Classes 8-11.

**4.11   Class 11:      Unsecured Rejection Damages Claims**

Upon confirmation of this Plan, all Class 11 Claims will be treated in the same manner as Class 8 Claims and will share in distributions on a *pro rata* basis along with claimants holding Claims in Classes 8-10.

**4.12   Class 12:      Convenience Claims**

All creditors holding unsecured claims in amounts less than $250 and those creditors electing to be classified as Class 12 Claim holders shall be paid up to $250 within a reasonable time after the Effective Date of the Plan. Such payment shall be in full satisfaction of the Claim of each Class 12 creditor. The fund available shall not exceed $38,250, and in the event such amount is exceeded, Class 12 creditors will receive a *pro rata* distribution from the $38,250 aggregated amount.

**4.13   Class 13:      Subordinated Claims**

Class 13 Claims will receive no distribution until all other classes have been paid in full pursuant to this Plan.

**ARTICLE 5**
**PROVISION FOR TREATMENT OF UNCLASSIFIED CLAIMS**

**5.1   Treatment of Administrative Expenses**

All Administrative Expenses incurred by the Debtor shall be treated as follows:

1.      *Time for filing Claims for Administrative Expenses.* The holder of a Claim for Administrative Expenses must file with the Bankruptcy Court and serve on the Debtor and their counsel notice of such Claim within 30 days following the confirmation date ("Confirmation Date") of the Plan. Such notice must include, at minimum, the following information: (i) the name of the holder of the Claim for Administrative Expenses; (ii) the amount of the Claim for Administrative Expenses; and (iii) the basis of the Claim for Administrative Expenses with sufficient detail to permit an evaluation. Failure to file and serve this notice timely and properly shall result in the denial of a holder's Claim for Administrative Expenses, which shall be treated as forever barred and discharged.

2.      *Holders of Statutory Administrative Expenses.* Owens & Minor and Johnson & Johnson have filed proofs of claims claiming Statutory Administrative Expenses as follows:

13

| Name of Creditor | Amount Claimed as Administrative Expense | Basis Asserted Supporting Administrative Expense |
|---|---|---|
| Owens & Minor | $13,861.22 | 11 U.S.C. § 503(b)(9); See Court Order entered 6/17/13 |
| Johnson & Johnson | $1,075.88 | 11 U.S.C. § 503(b)(9) |

Debtor reserves the right to object to the classification of the Johnson & Johnson Claim as an Administrative Expense. In the event it is determined that the Johnson & Johnson Claim is not an Administrative Expense, it will be treated as General Unsecured Claims and will be paid in the same manner as other Class 8 Claims.

3.      *Allowance of Claims for Administrative Expenses*. Claims for Administrative Expenses, which have been properly filed and served pursuant to the provisions contained herein, shall be considered allowed only to the extent approved by order of the Bankruptcy Court. It is the Debtor's position that there are no Administrative Claims allowable in a Chapter 9 case and all such Claims will be objected to by Debtor.

4.      *Payment of Claims for Administrative Expense*. Unless otherwise ordered by the Bankruptcy Court, holders of Allowed Administrative Expenses shall receive a distribution of either (i) the amount of such Administrative Expenses in a single payment on the Effective Date, or as soon as practicable thereafter, or (ii) such other treatment as may be agreed upon in writing by the Debtor and the holder of such Administrative Expenses.

5.      *Payment of the Fee Claim of the Unsecured Creditors Committee*. On February 4, 2104, the Debtor and the Unsecured Creditors Committee entered into a settlement to resolve the dispute concerning whether the Debtor must pay the attorneys' fees and expenses incurred by the UCC in this Case. The Debtor will comply with the settlement terms as part of this Plan.

# ARTICLE 6
# IMPLEMENTATION OF THE PLAN

## 6.1    Vesting of Debtor's Property; Effectuation of Plan

All assets or property, rights, privileges, and claims, tangible or intangible, of whatever nature, except only for such assets as have been expressly abandoned, released, or rejected by the Debtor or specifically distributed in this Plan prior to or on the Effective Date, or as otherwise provided in this Plan, or by order of the Bankruptcy Court, shall vest in the Debtor, subject only to the rights and obligations established in this Plan.

## 6.2    Retention of Claims

This Plan will retain, transfer, and vest in the Debtor all Recovery Claims arising under contract and law, which exist in favor of the Debtor. These claims include preference claims arising under § 547 of the Bankruptcy Code, or recovery claims arising under §§ 544, 548, 549, 550 of the Bankruptcy Code. The Litigation and Disbursement Agent shall, in his sole judgment, determine which, if any, of such retained claims the Debtor will pursue, or not pursue. There is, and can be, no assurance of any recovery of these retained claims with respect to funding of this Plan.

**6.3      Designation of Litigation and Disbursement Agent**

James W. Carlton, Jr., (or such other qualified professional or entity as selected by the Debtor, if James W. Carlton, Jr., cannot serve in such capacity) will be retained to act as Litigation and Disbursement Agent who will be responsible for administration and prosecution of Recovery Claims and making payments and distributions as provided by this Plan. The Litigation and Disbursement Agent will also be responsible for administering any available assets for the benefit of holders of Allowed Claims. The Litigation and Disbursement Agent may hire professionals, including attorneys, to assist with the duties of acting as Litigation and Disbursement Agent. The Litigation and Disbursement Agent shall use his business judgment and ordinary care in undertaking his duties pursuant to this Plan. Nothing in this Plan does or is intended to create a trust relationship between Debtor and the Litigation and Disbursement Agent or impose fiduciary duties upon the Litigation and Disbursement Agent. In addition to his standard compensation, the Litigation and Disbursement Agent will be entitled to compensation of 2% of distributions to holders of Allowed Claims. Payment of distributions to holders of Allowed Claims will be net of such compensation and any expenses incurred by the Litigation and Disbursement Agent in the course of acting as Litigation and Disbursement Agent. After all the Recovery Claims have concluded or are abandoned and distribution of all cash has been made consistent with this Plan, neither the Debtor nor the Litigation and Disbursement Agent shall have any further obligations under this Plan to holders of Allowed Claims or otherwise.

To the extent it may be required, the Debtor and the Litigation and Disbursement Agent, are jointly deemed the Debtor's representative pursuant to § 1123(b)(3)(B) for purposes of retaining, enforcing, settling, compromising, releasing, or collecting any of the Debtor's Recovery Claims, causes of action, or interests. In the event that any claims are asserted against the Litigation and Disbursement Agent based upon actions taken in this official capacity, Debtor will indemnify, hold harmless, and defend the Litigation and Disbursement Agent against such claims.

## ARTICLE 7
## PROVISIONS GOVERNING DISTRIBUTIONS

**7.1      Distributions to Holders of Allowed Claims**

On the Initial Distribution Date, or as soon as practicable thereafter, the Debtor shall make distributions to holders of Allowed Claims in the ordinary course of business pursuant to the provisions of the Plan. For purposes of calculating distributions, all Contested Claims will be treated as though they are allowed in the amounts asserted or as estimated by the Bankruptcy Court pursuant to § 502(c) of the Bankruptcy Code.

**7.2      Cash Payment**

All distributions shall be made in the form of cash payments in United States Dollars and be drawn on a domestic bank or by wire transfer from a domestic bank.

**7.3    Delivery of Distributions; Undeliverable Distributions**

Pursuant to Bankruptcy Rule 9010, distributions to holders of Allowed Claims shall be made at the address of each such holder as set forth on their proof of claim or the last known address of such holder if no proof of claim was filed. If any holder's distribution is returned as undeliverable, no further distributions to such holder shall be made unless and until the Debtor is notified of such holder's current address, at which time all missed distributions shall be made to such holder without interest. Undeliverable distributions shall be returned to the Debtor until such distributions are claimed. All requests for undeliverable distributions shall be made on or before the later of (i) the first anniversary of the Effective Date or (ii) within 60 days after the distribution was attempted by the Debtor. After such date, all unclaimed distributions shall revert to the Debtor, and the Allowed Claim of any holder with respect to such distributions shall be treated as forever barred and discharged.

**7.4    Timeliness of Payments.**

Any payments or distributions to be made pursuant to the Plan shall be deemed to have been timely made if made within fourteen (14) days after the dates specified in the Plan. Whenever any distribution to be made under the Plan shall be due on a day that is a Saturday, Sunday, or legal holiday, such distribution instead shall be made, without interest, on the immediately succeeding day that is not a Saturday, Sunday, or legal holiday, but shall be deemed to have been made on the due date.

**7.5    No Postpetition Accrual.**

Unless otherwise specifically provided in this Plan or allowed by order of the Bankruptcy Court, the Debtor will not be required to pay to any holder of a Claim any interest, penalty or late charge accruing with respect to such Claim after the Petition Date.

**7.6    Time Bar to Cash Payments**

Cash payments drawn on a checking account of a domestic bank shall be null and void if not negotiated within 60 days after the date of the issuance thereof. Requests for re-issuance of any check shall be made to the Debtor by the holder of the Allowed Claim with respect to which such check was originally issued. A request for the re-issuance of a null and void check shall be made on or before the later of (i) the first anniversary of the Effective Date or (ii) within 60 days after the date of issuance of such check. After such date, the Allowed Claim of any holder with respect to such null and void checks shall be treated as forever barred and discharged.

**7.7    No Distributions Pending Allowance**

The Debtor shall not make any distribution to the holder of a Contested Claim unless and until it is determined to be allowed by order of the Bankruptcy Court.

**7.8    De Minimis Distributions**

The Debtor shall not be required to make any distribution of less than $25 to any holder of an Allowed Claim unless such distribution is the final distribution for such Claim.

## 7.9     Setoff and Recoupment

In the event that the Debtor has a claim against the holder of an Allowed Claim, the Debtor may setoff against the Allowed Claim, subject to § 553 of the Bankruptcy Code. Neither the failure to setoff nor the allowance of a Claim under the Plan shall constitute a waiver or release by Debtor of any claim that Debtor has against the holder of an Allowed Claim. No holder of an Allowed Claim, however, shall be able to setoff, suspend, freeze, or recoup any amount from funds and other payments that such holder may owe to Debtor. **THE CONFIRMATION ORDER SHALL CONSTITUTE AN INJUNCTION PREVENTING SUCH SETOFF, SUSPENSION, FREEZE, OR RECOUPMENT.**

## 7.10     Treatment of Late-Filed Claims

No Late-Filed Claim shall be entitled to any distributions under this Plan, except as outlined below. This Plan shall constitute an objection by the Debtor to all Late-Filed Claims, including without limitation, late-filed Secured Claims, Administrative Expenses (other than Administrative Claims incurred pursuant to §§ 327 and 330 of the Bankruptcy Code), Unsecured Priority Tax Claims, and Unsecured Claims pursuant to § 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3007. Upon Confirmation of this Plan, Debtor will publish such Confirmation Order and this section of the Plan in The Oklahoman, Garvin County News Star, and Pauls Valley Daily Democrat for three consecutive weeks. Creditors without previous actual notice of this Bankruptcy Case and who become aware of the Case solely based on this publication and who are not scheduled or listed on Debtor's List of Creditors may file a proof of claim within 90 days of the last date of publication. Debtor reserves the right to object to such claims filed by unknown creditors. The Confirmation Order shall be deemed to be an order authorizing the disallowance of all Late-Filed Claims in full, which shall forever be discharged barred and discharged.

## ARTICLE 8
## RESOLVING CONTESTED CLAIMS UNDER THE PLAN

## 8.1     Objection Deadline

The Debtor shall file with the Bankruptcy Court all objections to Claims within 90 days of the Effective Date of the Plan, unless extended by order of the Bankruptcy Court.

## 8.2     Prosecution of Objections to Claims

Except as otherwise ordered by the Bankruptcy Court, the filing, litigation, settlement, or withdrawal of all objections to Contested Claims after the Effective Date of the Plan may be performed by the Debtor and the Litigation and Disbursement Agent. The Debtor and/or the Litigation and Disbursement Agent shall utilize ordinary care in making judgments as to such objections and settlements or resolutions thereof, and except for action constituting willful misconduct, shall have no exposure, liability, or responsibility for such decisions. The compromise or settlement of any objections to Contested Claims after the Effective Date of the Plan may be approved by the Bankruptcy Court pursuant to Bankruptcy Rule 9019.

**8.3    Voting Rights of Holders of Contested Claims**

Pursuant to Bankruptcy Rule 3018(a), the holder of a Contested Claim will not be counted for the purpose of voting on the Plan to the extent it is disputed, unless after notice and hearing, the Bankruptcy Court enters an order temporarily allowing the Contested Claim for voting purposes. The denial of voting rights herein shall not prejudice the holders of Contested Claims seeking to have their Contested Claims allowed for purposes of distribution under the Plan.

## ARTICLE 9
## PROVISIONS GOVERNING EXECUTORY CONTRACTS

**9.1    Assumption and Rejection of Executory Contracts**

The Plan and provisions hereof shall constitute a motion by Debtor to assume and reject all known Executory Contracts, including, but not limited to, unexpired leases, to which the Debtor is a party and which have not on or before the Confirmation Date been (i) previously rejected or assumed by order of the Bankruptcy Court or (ii) included in a pending motion to assume or reject made by Debtor. Nothing herein, however, shall be deemed to extend any deadline previously set by the Bankruptcy Court for filing a Claim against Debtor and any Claims for rejection damages.

Consistent with the Bankruptcy Court's April 4, 2013 Order setting a claims bar date, proofs of claim arising from the rejection of executory contracts or unexpired leases must be filed with the Bankruptcy Court and served on the Debtor no later than thirty (30) days after the date on which the notice of entry of the order approving the rejection is mailed. Any Claim for which a proof of claim is not filed and served within such time will be forever barred and shall not be enforceable against the Debtor. Failure to file such a Claim shall result in the denial of a holder's Claim for rejection damages, which shall be treated as forever barred and discharged.

A list of all executory contracts and whether they will be assumed or rejected is located in Schedule 9.1 attached to this Plan.

**9.2    Assumption of Sovereign Leasing, LLC Executory Contract**

In June, 2014, Debtor and Sovereign Leasing, LLC a/k/a Santander entered into a Lease Modification and Extension Agreement which constitutes an assumption of the Sovereign Leasing, LLC lease. This contract pertains to two (2) McQuay Chillers that are leased by the Debtor. Such assumption is hereby recognized by the Debtor and this Plan constitutes a motion by Debtor to specifically assume the executory contract between it and Sovereign Leasing, LLC. Said contract will be assumed and payment will be made in accordance with the terms of the Lease Modification and Extension Agreement.

## ARTICLE 10
## CONDITIONS PRECEDENT TO EFFECTIVE DATE OF THE PLAN

**10.1    Conditions Precedent to Effective Date of the Plan**

The Plan shall not become effective unless and until the Effective Date of the Plan occurs. The Effective Date of the Plan is subject to the following conditions precedent: (i) the Confirmation Order shall become a final order ("Final Order"); (ii) all documents useful and necessary to effectuating the Plan are executed and delivered to the parties hereto and all conditions to the effectiveness of such documents have been met; and (iii) the Debtor and its counsel have received all authorizations, consents, approvals, rulings, opinions, and documents that are necessary to implement the Plan.

## 10.2    Waiver of Conditions

The conditions precedent to the Effective Date of the Plan may be waived, in whole or in part, by the Debtor and its counsel, at any time, without notice, and without an order from the Bankruptcy Court or any other affirmative action other than proceeding to consummate the Plan. The failure of the Debtor and its counsel to exercise any of foregoing rights shall not be deemed a waiver of any other rights and each right shall be deemed an ongoing right that may be asserted at any time.

## ARTICLE 11
## EFFECT OF CONFIRMATION ON THE PLAN

## 11.1    Title to and Vesting of Assets.

Although no Estate is established in a Chapter 9 proceeding, for the avoidance of doubt, on the Effective Date, as set forth in sections 1141(b) and (c) of the Bankruptcy Code, all property of the Debtor shall remain in and vest in the Pauls Valley Hospital Authority d/b/a Pauls Valley General Hospital, free and clear of all Claims, Liens, encumbrances, and other interests, except as provided herein, and the Confirmation Order shall be a judicial determination of discharge of the liabilities of the Debtor except as provided in the Plan. From and after the Effective Date, Pauls Valley Hospital Authority d/b/a Pauls Valley General Hospital, may operate and may use, acquire, and dispose of property free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if there were no pending cases under any chapter or provision of the Bankruptcy Code, except as provided herein.

## 11.2    Discharge of Claims

Except as otherwise provided in the Plan or in the Confirmation Order, the rights afforded in the Plan and the payments and distributions to be made hereunder shall be in exchange for and in complete satisfaction and discharge of all existing debts and Claims of any kind, nature, or description whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtor or any of their assets or properties to the fullest extent as set forth in § 1141 of the Bankruptcy Code. Except as provided in the Plan, on the Effective Date, all existing Claims against the Debtor shall be, and shall be deemed to be satisfied and discharged, and all holders of Claims shall be precluded and enjoined from asserting against the Pauls Valley Hospital Authority d/b/a Pauls Valley General Hospital, or any of its respective assets or properties, any other or further Claim based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a proof of Claim.

19

### 11.3    Discharge of Debtor

Upon the Effective Date and in consideration of the payments, agreements, and provisions made hereunder, except as otherwise expressly provided herein, the Debtor shall be discharged of all Claims, rights, and liabilities that arose prior to the Effective Date, to the fullest extent as set forth in section 1141 of the Bankruptcy Code. Upon the Effective Date, all Persons and Entities shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from asserting against the Debtor, or their respective successors or assigns, including, without limitation, Pauls Valley Hospital Authority d/b/a Pauls Valley General Hospital, or its respective assets, properties, or interests in property, any discharged Claim against the Debtor, any other or further Claims, based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Confirmation Date, whether or not the facts or legal bases therefore were known or existed prior to the Confirmation Date regardless of whether a proof of claim was filed, whether the holder thereof voted to accept or reject the Plan, or whether the Claim is an Allowed Claim.

### 11.4    Preservation and Prosecution of Causes of Action

In accordance with section 1123(b) of the Bankruptcy Code, the Debtor shall retain and may enforce all rights to commence and pursue, as appropriate, any and all causes of action, and the Debtor's rights to commence, prosecute, or settle such causes of action, including without limitation Recovery Claims, shall be preserved notwithstanding the occurrence of the Effective Date. The Debtor may pursue the causes of action, as appropriate, in accordance with the best interests of the Debtor. No entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any cause of action against them as any indication that the Debtor will not pursue any rights to prosecute any and all causes of action against any entity, except as otherwise expressly provided herein. Unless any causes of action against an entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or an order of the Bankruptcy Court, the Debtor expressly reserve all causes of action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such causes of action upon, after, or as a consequence of the Confirmation Order. The Debtor reserves and shall retain the causes of action notwithstanding the rejection of any executory contract or unexpired lease during the Chapter 9 Case or pursuant to the Plan. The Debtor shall have the exclusive right, authority and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any retained causes of action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

### 11.5    Term of Existing Injunctions or Stays

Unless otherwise provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court, all injunctions or stays arising under or entered during the Chapter 9 Case pursuant to sections 922 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date or the date indicated in such applicable order.

### 11.6   Injunctions

**EXCEPT AS PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, ON AND AFTER THE EFFECTIVE DATE, ALL PERSONS OR ENTITIES WHO HAVE HELD, CURRENTLY HOLD, OR MAY HOLD A DEBT OR CLAIM, WHICH AROSE BEFORE THE EFFECTIVE DATE OF THE PLAN, ARE PERMANENTLY ENJOINED FROM TAKING ANY OF THE FOLLOWING ACTIONS ON ACCOUNT OF ANY SUCH DEBT OR CLAIM: (I) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING AGAINST THE DEBTOR OR AGAINST THE DEBTOR'S PROPERTY; (II) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING IN ANY MANNER ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST THE DEBTOR OR AGAINST THE DEBTOR'S PROPERTY; (III) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE AGAINST THE DEBTOR OR AGAINST THE DEBTOR'S PROPERTY; (IV) ASSERTING ANY SETOFF, RIGHT OF SUBROGATION, OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE TO THE DEBTOR; AND (V) COMMENCING OR CONTINUING ANY ACTION, IN ANY MANNER, IN ANY PLACE THAT DOES NOT COMPLY WITH OR IS INCONSISTENT WITH THE PROVISIONS OF THE PLAN OR THE CONFIRMATION ORDER. THE CONFIRMATION ORDER SHALL CONSTITUTE SUCH AN INJUNCTION. ANY PERSON OR ENTITY INJURED BY ANY WILLFUL VIOLATION OF SUCH INJUNCTION SHALL RECOVER ACTUAL DAMAGES, INCLUDING ATTORNEYS' FEES AND COSTS, AND, IN APPROPRIATE CIRCUMSTANCES, MAY RECOVER PUNITIVE DAMAGES FROM THE WILLFUL VIOLATOR.**

### 11.7   Exculpation and Release

The Debtor shall not have or incur any liability to any holder of a Claim for any act, event, or omission in connection with, or arising out of, the Chapter 9 Case, the confirmation of the Plan, the consummation of the Plan or the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence. This exculpation and release shall be effective on the Effective Date of the Plan, without further need of documentation. As used in this section, claims shall include disputes, Claims, debts and liabilities, causes of action, counterclaims, demands, controversies, costs, sums of money, accounts, reckonings, bonds, bills, damages, obligations, liabilities, objections, executions of any nature, type, or description, avoidance actions, negligence, gross negligence, usury, fraud, deceit, misrepresentation, conspiracy, unconscionability, duress, economic duress, defamation, control, interference with contractual and business relationships, conflicts of interest, misuse of insider information, concealment, disclosure, secrecy, misuse of collateral, wrongful release of collateral, failure to inspect, environmental liability, violations of statutes and regulations of governmental entities, instrumentalities and agencies (both civil and criminal), racketeering activities, securities and antitrust laws violations, tying arrangements, deceptive trade practices, breach or abuse of fiduciary duty, breach of an alleged special relationship, course of conduct or dealing, obligation of fair dealing, obligation of good faith, and obligation of good faith and fair dealing, whether at law or in equity, in contract or in tort, or otherwise, known or unknown, suspected or unsuspected.

**11.8    Dismissal of Pending Litigation**

On the Effective Date of the Plan, all lawsuits, litigation, administrative actions, or other proceedings, judicial or administrative, in connection with the assertion of a Claim against the Debtor shall be dismissed as to Debtor, except Claims and/or objections thereto pending in the Bankruptcy Court. Such dismissal shall be with prejudice to the assertion of such Claim in any manner other than as prescribed by the Plan. **ALL PARTIES TO ANY SUCH ACTION SHALL BE ENJOINED BY THE BANKRUPTCY COURT IN THE CONFIRMATION ORDER FROM TAKING ANY ACTION TO IMPEDE THE IMMEDIATE AND UNCONDITIONAL DISMISSAL OF SUCH ACTIONS.** All other lawsuits, litigation, administrative actions, or other proceedings, judicial or administrative, in connection with the assertion of a Claim by Debtor shall remain in place only with respect to the Claim asserted by Debtor, and shall remain the Debtor's property that the Debtor may prosecute, settle, compromise, or dismiss pursuant to the provisions herein.

## ARTICLE 12
## RETENTION OF JURISDICTION

**12.1    Scope of Jurisdiction**

The Bankruptcy Court, pursuant to 28 U.S.C. § 1334 shall retain and have jurisdiction over all matters arising in, arising under, and related to the Chapter 9 Case and the Plan pursuant to and for the purposes of § 1142(b) of the Bankruptcy Code for the following:

1.    To hear and determine pending applications for the assumption or rejection of Executory Contracts and the allowance of Claims resulting therefrom;

2.    To hear and determine any and all adversary proceedings, applications, and contested matters, including any remands from appeals;

3.    To ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

4.    To hear and determine any timely objections to or applications concerning Claims or the allowance, classification, priority, estimation, or payment of any Claim;

5.    To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, reversed, or vacated;

6.    To enter and implement such orders as may be necessary or appropriate to execute, interpret, implement, consummate, or enforce the Plan and the transactions contemplated thereunder;

7.    To consider any modification to the Plan pursuant to § 1127 of the Bankruptcy Code, to cure a defect or omission or to reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

8.    To hear and determine all Fee Claims and their concomitant fee applications;

9.    To hear and determine disputes arising in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan;

10.    To enter and implement orders or take such other actions as may be necessary or appropriate to restrain interference by any party with the consummation or implementation of the Plan, including, without limitation, to issue, administer, and enforce injunctions provided for in the Plan and Confirmation Order;

11.    To authorize distributions to the holders of Claims, and to adjudicate any disputes regarding such distributions;

12.    To enter such orders, including injunctions, as are necessary to enforce the title, rights, and powers of the Debtor;

13.    To recover all assets of Debtor, wherever located;

14.    To hear and determine litigation designed to marshal the assets of Debtor;

15.    To correct any defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan, and to approve any amendments to the Plan upon the motion of the Debtor;

16.    To hear and determine any other matter not inconsistent with the Bankruptcy Code that may arise in connection with or related to the Plan; and

17.    To enter a Final Decree closing the Chapter 9 Case.

## 12.2    Failure of Bankruptcy Court to Exercise Jurisdiction

If the Bankruptcy Court abstains from exercising, or declines to exercise jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 9 Case, such abstention shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by other courts with respect to such matters.

## ARTICLE 13
## MISCELLANEOUS PROVISIONS

## 13.1    Insurance and Annuities

Confirmation of the Plan shall have no effect on insurance policies and annuities of Debtor in which the Debtor is or was an insured party. The Debtor shall remain the insured party under such polices, unless such policies are otherwise assigned. **THE CONFIRMATION ORDER SHALL CONSTITUTE AN INJUNCTION PREVENTING AN INSURANCE COMPANY FROM DENYING, ALTERING, OR DELAYING COVERAGE ON ANY BASIS REGARDING OR RELATED TO THE CHAPTER 9 CASE, THE PLAN, OR ANY PROVISION CONTAINED THEREIN.**

## 13.2    Binding Effect of Plan

The Plan shall be binding upon and inure to the benefit of Debtor, and the holders of Claims, and their successors and assigns; provided, however, that if the Plan is not confirmed, the Plan shall be deemed null and void and nothing contained herein shall be deemed to: (i) constitute a waiver or release of any Claims by Debtor or any other person; (ii) prejudice in any manner the rights of Debtor or any other party-in-interest; or (iii) constitute an admission by Debtor or any other party-in-interest.

## 13.3    Governing Law

Unless a rule of law or procedure is supplied by federal law, including, but not limited to, the Bankruptcy Code and the Bankruptcy Rules, the laws of the state of Oklahoma shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan or the Chapter 9 Case.

## 13.4    Modification of the Plan

Modification of the Plan may be proposed in writing by the Debtor and its counsel at any time prior to the Confirmation Date of the Plan, provided that the Plan, as modified, meets the requirements of §§ 1122 and 1123(a)(1-5), (b), and (d) of the Bankruptcy Code and that the Debtor and its counsel have complied with § 1125 of the Bankruptcy Code. The Plan may be modified at any time after the Confirmation Date and before substantial consummation by the Debtor and its counsel, provided that: (i) the Plan, as modified, meets the requirements of §§ 1122 and 1123(a)(1-5), (b), and (d) of the Bankruptcy Code; (ii) the Bankruptcy Court, after notice and hearing, confirms the Plan as modified under § 1129 of the Bankruptcy Code; and (iii) the circumstances warrant such modification. A holder of a Claim that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified, unless, within the time fixed by the Bankruptcy Court, such holder changes his or her previous acceptance or rejection.

## 13.5    Defaults of Holders of Claims

Any act or omission by a holder of a Claim that contravenes the provisions provided for herein shall be deemed an event of default. Upon an event of default, Debtor may seek to hold the defaulting party in contempt of the Confirmation Order or to compel performance in accordance therewith. If such holder of a Claim is found to be in default under the Plan, such party shall pay the reasonable attorneys' fees and costs of Debtor in pursing such matter. Moreover, upon finding of such default, the Bankruptcy Court may designate a party to appear, sign, and accept the documents required under the Plan on behalf of the defaulting party in accordance with Bankruptcy Rule 7070 or make such other order as may be equitable and which does not materially alter the terms of the Plan, as confirmed.

## 13.6    Severability

In the event that a provision herein is found unenforceable by the Bankruptcy Court, the Debtor and its counsel may modify the Plan to remedy the problem or conflict. Such a determination of unenforceability shall not limit or effect the enforceability of any other

provisions contained herein or require the re-solicitation of any acceptance or rejection of the Plan.

## 13.7   Closing the Case

Upon closing of all transactions anticipated on the Effective Date of the Plan, the Plan shall be deemed substantially consummated. Upon motion made only by the Debtor, a Final Decree shall be entered by the Bankruptcy Court. The Court may close the Chapter 9 Case, but retain jurisdiction to decide: (i) any pending adversary proceedings; (ii) applications and contested matters, including remands from appeals; (iii) any pending objections to Contested Claims or the allowance thereof, including disputes with respect to the classification, priority, estimation, or payment of such Claim; and (iv) any and all pending applications required for Fee Claims.

Dated this ____th day of _____, 2015:

*/s/ Chad J. Kutmas*

_____
Chad J. Kutmas, OBA No. 19505
MCDONALD, MCCANN, METCALF & CARWILE, LLP
15 E. Fifth Street, Suite 1400
Tulsa, Oklahoma 74103
(918) 430-3700
(918) 430-3770 (Fax)

*Counsel for the Debtor*

**Schedule 2.2.8**
**Holders of General Unsecured Claims**

| Name of Creditor | Scheduled or Proof of Claim | Amount |
|---|---|---|
| Abbott Nutrition | Scheduled and Proof of Claim No. 16 | $541.88 |
| Ability Network Inc. | Scheduled | $1,440.00 |
| Ada Open MRI | Scheduled | $635.73 |
| Administrative Consultant Svcs | Scheduled | $42,467.18 |
| Admotions Direct | Scheduled | $6,345.38 |
| Aesculap Inc. | Scheduled | $404.04 |
| Airscan Tech | Scheduled | $815.00 |
| Alea Technology Group Inc. | Scheduled | $18,400.00 |
| Alere North America, Inc. | Scheduled | $4,138.75 |
| Ambassador Company | Scheduled | $500.00 |
| Amerisourcebergen Drug Corp. | Scheduled | $2,930.42 |
| Amundsen Food Equipment | Scheduled | $522.70 |
| Applied Medical | Scheduled | $557.00 |
| Arbuckle Memorial Hospital | Scheduled | $1,632.52 |
| Arjo Inc. | Scheduled | $3,835.92 |
| Arjohuntleigh | Proof of Claim No. 76 | $5,282.70 |
| Arnold Outdoor Inc. | Scheduled | $1,400.00 |
| Aspectic Enclosures | Scheduled | $416.95 |
| AT&T | Scheduled | $2,510.60 |
| Automatic Fire Control Inc. | Scheduled | $850.00 |
| Bard | Scheduled | $743.82 |
| Baxter Healthcare Corp | Scheduled and Proof of Claim No. 23 | $10,272.57 |
| Beckman Coulter, Inc. | Scheduled and Proof of Claim No. 34 | $2,395.47 |
| Bells International | Scheduled | $2,279.90 |
| Bill Melton Dental Lab | Scheduled | $325.00 |
| Bio-Rad Laboratories, Inc. | Proof of Claim No. 79 | $1,076.78 |
| BKD LLP | Scheduled | $21,997.48 |
| Blackburn Home Center | Scheduled | $1,868.03 |
| Boaz & Associates | Scheduled | $1,437.70 |
| Borden Meadow Gold Dairies | Scheduled | $2,732.89 |
| Bracco | Scheduled | $675.00 |
| Breath of Life | Scheduled | $750.00 |
| Business Imaging Systems Inc. | Scheduled | $6,288.40 |
| Callibra Inc. | Scheduled | $1,250.00 |
| Capital City Processors LLC | Scheduled | $375.00 |
| Cardinal Health 200, LLC | Scheduled | $26,385.69 |
| Cardinal Health 411, LLC | Scheduled | $9,263.40 |
| Cardinal Health 108, LLC | Scheduled and Proof of Claim No. 48 | $1,401.30 |
| Career Builder LLC | Scheduled | $5,000.00 |
| Careerstaff Unlimited - Oklahoma | Scheduled | $4,356.05 |
| Carefusion | Scheduled | $4,019.11 |
| Carestream Health, Inc. | Scheduled and Proof of Claim No. 38 | $3,997.00 |
| Carefusion V Mueller | Scheduled | $789.83 |
| CDW Government | Scheduled | $9,029.70 |

DISCLAIMER: Creditors listed herein are listed for informational purposes only. By identifying a particular creditor as holders of General Unsecured Claims, Debtor does not consent to the validity, nature or extent of the Claim listed herein and reserves all of its rights to object to such Claim or to recharacterize such Claim as appropriate.

| | | |
|---|---|---|
| Centurion Medical Products | Scheduled | $5,306.50 |
| Chickasaw Personal Communications | Scheduled | $471.00 |
| Chickasaw Telecom Inc. | Scheduled and Proof of Claim No. 49 | $40,876.82 |
| Church of Christ | Scheduled | $3,000.00 |
| Cimarron Ins Exchange, RRG | Scheduled and Proof of Claim No. 66 | $189,862.00 |
| Cintas Document Management | Scheduled | $1,032.60 |
| City of Pauls Valley – EMS | Scheduled | $6,500.00 |
| City of Pauls Valley Water Department | Scheduled | $4,610.48 |
| Clear Advantage Collar, Inc. | Scheduled | $1,345.00 |
| Clifford Power Systems | Scheduled | $1,241.00 |
| Clinical Software Solutions | Scheduled | $3,799.69 |
| CLT Refrigeration Inc. | Scheduled | $463.88 |
| CMS Communications, Inc. | Scheduled | $2,922.56 |
| Colelge/American Pathologists | Scheduled | $462.00 |
| Collegiate Medical LLC | Scheduled | $1,028.00 |
| Comfort Inn & Suites | Scheduled | $455.00 |
| Compsource Oklahoma | Scheduled and Proof of Claim No. 62 | $38,654.00 |
| Computer Solutions | Scheduled | $1,600.00 |
| Connect Health Professionals | Scheduled and Proof of Claim No. 65 | $143,765.54 |
| Conner & Winters | Scheduled | $14,805.50 |
| Constellation Energy | Scheduled | $7,588.44 |
| Cook, Tonya D | Scheduled | $3,724.00 |
| Cook, Tonya D | Scheduled | $2,289.41 |
| D Med Corporation | Scheduled | $2,487.08 |
| Datex-Ohmeda | Scheduled | $4,688.40 |
| DBL | Scheduled | $570.68 |
| Denton, Erle Q | Scheduled | $2,303.25 |
| Diagnostic Lab of OK | Scheduled | $15,059.87 |
| Dill Oil Company | Scheduled | $457.18 |
| Dimensional Concepts | Scheduled | $2,000.00 |
| Diversified Biologicals LLC | Proof of Claim No. 51 | $570.68 |
| Draeger Safety Diagnostics | Scheduled | $353.50 |
| Dysphagia Services, Inc. | Scheduled | $1,387.27 |
| Electronic Dictation of Tulsa | Scheduled | $1,167.00 |
| Elmore City EMS | Scheduled | $443.01 |
| EM-Care Physician Services | Scheduled | $56,250.00 |
| EMPI | Scheduled | $474.03 |
| Encompass Group LLC | Scheduled | $1,476.48 |
| Epimed International | Scheduled | $2,729.57 |
| Expeditive | Scheduled | $11,183.92 |
| Federal Corporations | Scheduled | $271.50 |
| Fisher Healthcare | Scheduled | $6,176.07 |
| Fisher Scientific Co. | Proof of Claim No. 19 | $8,936.20 |
| Fuelman | Scheduled | $500.00 |
| Garvin County News Star | Scheduled | $2,020.00 |
| Garvin, Agee, Carlton & Mashburn | Scheduled and Proof of Claim No. 3 | $31,951.78 |
| Garvin, Agee, Carlton & Mashburn | Scheduled and Proof of Claim No. 40 | $1,000.74 |
| Garvin, Agee, Carlton & Mashburn | Scheduled and Proof of Claim No. 41 | $2,790.95 |

DISCLAIMER: Creditors listed herein are listed for informational purposes only. By identifying a particular creditor as holders of General Unsecured Claims, Debtor does not consent to the validity, nature or extent of the Claim listed herein and reserves all of its rights to object to such Claim or to recharacterize such Claim as appropriate.

| | | |
|---|---|---|
| Garvin, Agee, Carlton & Mashburn | Scheduled and Proof of Claim No. 56 | $2,166.77 |
| GE Healthcare – Mdx | Scheduled and Proof of Claim No. 45 | $4,067.55 |
| GE Healthcare Medical Systems – Datex Ohmeda | Scheduled and Proof of Claim No. 44 | $2,585.88 |
| Guderian Foods Company | Scheduled | $4,307.45 |
| Hambrick – Ferguson Inc. | Scheduled and Proof of Claim No. 7 | $1,281.06 |
| Harrison-Orr Air Conditioning | Scheduled | $930.00 |
| HDG | Scheduled | $294.99 |
| Healthcare Management Solution | Scheduled and Proof of Claim No. 64 | $13,039.43 |
| Healthcare Professional Equipment Services | Proof of Claim No. 70 | $4,800.00 |
| Healthland | Scheduled | $20,432.11 |
| Healthtech Solutions GRP LLC | Scheduled | $3,966.66 |
| Henderson Coffee | Scheduled | $1,910.20 |
| Henry Schein Inc. | Scheduled | $17,277.33 |
| Hibu Inc., f/k/a Yellowbook Inc. | Proof of Claim No. 50 | $1,032.79 |
| Hill-Rom | Scheduled | $893.66 |
| Hogue, Danna | Proof of Claim No. 14 | $5,000.00 |
| Hologic | Scheduled | $832.50 |
| Hospira Worldwide Inc. | Scheduled | $1,160.95 |
| Hurdle and Associates Inc. | Scheduled | $1,750.00 |
| Immucor, Inc./Immucor Gamma | Scheduled and Proof of Claim No. 2 | $3,274.92 |
| Immucor, Inc./Immucor Gamma | Scheduled and Proof of Claim No. 4 | $2,642.34 |
| Information Solutions | Scheduled | $2,214.50 |
| ING Life Insurance and Annuity Company | Scheduled | $3,858.03 |
| Ingenix | Scheduled | $1,299.99 |
| Integra Life Sciences Corp. | Scheduled | $760.18 |
| Integris Medical Supply | Scheduled | $4,250.00 |
| Intelemed | Scheduled | $13,602.27 |
| Internal Revenue Service | Scheduled and Proof of Claim No. 33 | $205,509.33 |
| ITC | Scheduled | $419.80 |
| J-4 Contracting & Dunn Plumbing | Scheduled | $510.00 |
| Jack Justice | Proof of Claim No. 72 | $41,589.01 |
| Jack's Rx | Scheduled ad Proof of Claim No. 74 | $40,596.45 |
| Jackson Boiler and Tank Co. | Scheduled | $4,016.72 |
| Jackson Nurse Professionals LLC | Scheduled | $5,590.00 |
| James Supplies | Scheduled and Proof of Claim No. 17 | $5,986.59 |
| Java Time | Scheduled | $570.65 |
| Johnson & Johnson Health Care Systems | Scheduled and Proof of Claim No. 54 | $36,092.30 |
| Johnston & Bryant | Scheduled and Proof of Claim No. 53 | $27,800.66 |
| Johnstone Supply | Scheduled | $1,241.32 |
| KCI USA, Inc. | Scheduled and Proof of Claim No. 5 | $3,057.83 |
| Keller, Angela A | Scheduled | $6,035.20 |
| Kenneth Michael & Associates LLC | Scheduled | $8,000.00 |
| KFXT Solid Gospel | Scheduled | $3,720.00 |
| Kinetic Therapy Service | Scheduled | $1,970.00 |
| KICO KIX-106 | Scheduled | $12,157.50 |
| K-Med | Scheduled | $956.02 |
| Kone Inc. | Scheduled | $2,978.30 |

DISCLAIMER: Creditors listed herein are listed for informational purposes only. By identifying a particular creditor as holders of General Unsecured Claims, Debtor does not consent to the validity, nature or extent of the Claim listed herein and reserves all of its rights to object to such Claim or to recharacterize such Claim as appropriate.

| | | |
|---|---|---|
| Kronos | Scheduled | $4,613.14 |
| K-Town Consulting | Scheduled | $7,290.00 |
| Laerdal Medical Corp | Scheduled | $909.74 |
| Leading Age Oklahoma | Scheduled | $1,044.63 |
| Locke Supply Co | Scheduled | $390.07 |
| Logical Building Solutions Inc. | Scheduled | $1,173.58 |
| Luckinbill, Inc. | Scheduled and Proof of Claim No. 18 | $1,443.69 |
| Maine Standards Company | Scheduled | $304.05 |
| Mark 5 Care Group | Scheduled | $34,538.31 |
| Masimo Americas Inc. | Scheduled | $287.33 |
| McKesson Health Solutions | Scheduled | $4,403.63 |
| McKesson – McKesson Technologies, Inc. | Scheduled and Proof of Claim No. 67 | $566,712.87 |
| McKesson Medical Surgical Inc. | Scheduled | $1,320.30 |
| McNeil & Company Inc. | Scheduled | $765.61 |
| Medical Solutions | Scheduled | $50,008.28 |
| Medi-Sol, LLC | Scheduled | $6,244.37 |
| MedManagement LLC | Scheduled and Proof of Claim No. 22 | $6,820.00 |
| Medmarc Company | Scheduled | $331.24 |
| Medrad Inc. | Scheduled | $688.91 |
| Medrad Inc. c/o Bayer Corporation | Proof of Claim No. 13 | $1,379.55 |
| Medtox Laboratories | Scheduled | $870.35 |
| Medtronic USA Inc. | Scheduled | $252.00 |
| Mercy Health Cntr/Transcript'n | Scheduled | $23,215.95 |
| Mercy Memorial Health Cntr PTS | Scheduled | $3,136.23 |
| Merritt Hawkins & Associates | Scheduled | $7,888.65 |
| Met-Tel | Scheduled | $415.63 |
| Mettler Electronics Corp | Scheduled | $2,019.58 |
| Midland Group | Scheduled | $73,739.88 |
| Midland Professional Services, Inc. | Proof of Claim No. 28 | $54,764.47 |
| Millipore Corporation | Scheduled | $3,026.12 |
| Mitchell, Charles | Scheduled | $76,577.11 |
| Mobile Media Inc. | Scheduled | $1,004.00 |
| Moore, John Steve – DBA: John Steven Moore, DO | Scheduled | $27,263.00 |
| Morris Systems Incorporated | Scheduled | $1,288.00 |
| MSC Industrial Suppu Co Inc. | Scheduled | $466.78 |
| MXR Oklahoma City | Scheduled | $582.51 |
| Natus Medical Inc. | Scheduled | $2,972.14 |
| Netscript (NETSC) | Scheduled | $15,473.04 |
| Norman Physician Hosp Org LLC | Scheduled | $25,853.58 |
| Nuance Communications, Inc. as successor in Interest to Quadramed | Scheduled and Proof of Claim No. 62 | $14,198.06 |
| Nursefinders | Scheduled | $18,079.06 |
| Nurses PRN Staffing Inc. | Scheduled | $343.84 |
| Odyssey Health Care | Scheduled and Proof of Claim No. 24 | $8,693.50 |
| Officemax Contract Inc. | Scheduled | $2,379.86 |
| OFMQ Inc. | Scheduled | $1,250.00 |
| OG&E | Scheduled | $12,008.10 |

DISCLAIMER: Creditors listed herein are listed for informational purposes only. By identifying a particular creditor as holders of General Unsecured Claims, Debtor does not consent to the validity, nature or extent of the Claim listed herein and reserves all of its rights to object to such Claim or to recharacterize such Claim as appropriate.

| | | |
|---|---|---|
| OHCA Premium Account | Scheduled and Proof of Claim No. 1 | $139,526.13 |
| OHH Physicians LLC | Scheduled | $4,194.00 |
| OK State/Educa GRP Ins Board | Scheduled | $56,361.32 |
| Okla State Dept of Health | Scheduled | $2,173.06 |
| Oklahoma Blood Institute | Scheduled | $42,068.50 |
| Oklahoma Heart Hospital | Scheduled | $363.10 |
| Oklahoma Hospital Association | Scheduled and Proof of Claim No. 25 | $20,182.75 |
| Oklahoma Tax Commission Business Tax Division | Scheduled and Proof of Claim No. 6 | $2,500.00 |
| Osage Industries Inc. | Scheduled | $360.14 |
| Owens & Minor Distribution, Inc. | Scheduled and Proof of Claim Nos. 30 and 32 | $16,263.45 |
| Panther Athletic Club | Scheduled | $250.00 |
| Parks, James A | Scheduled | $336.70 |
| Partssource | Scheduled | $1,389.83 |
| Patterson Medical | Scheduled | $320.38 |
| Paul H. Brooks Publishing Company | Scheduled | $313.50 |
| Pauls Valley Democrat | Scheduled | $553.54 |
| Pauls Valley Hosp Auxiliary | Scheduled | $1,535.85 |
| Pepsi Beverages Company | Scheduled | $584.70 |
| Performance Pharmacy Systems | Scheduled | $1,259.81 |
| Philadelphia Insurance Cos. | Scheduled | $3,501.00 |
| Philips Healthcare | Scheduled and Proof of Claim No. 71 | $7,700.75 |
| Philips Medical Systems Philips Healthcare | Scheduled | $1,140.75 |
| Physicians and Surgeons | Scheduled | $14,910.56 |
| Physio-Control, Inc. | Scheduled | $1,517.96 |
| Pitney Bowes Postage by Phone | Scheduled and Proof of Claim No. 69 | $3,924.63 |
| Pope, Charla J. | Scheduled | $260.40 |
| Premium Financing Specialists | Scheduled | $18,260.75 |
| Primary Pharmaceuticals | Scheduled | $743.08 |
| Printer Works | Scheduled | $297.00 |
| PSA Consulting Engineers, Inc. | Scheduled and Proof of Claim No. 37 | $4,117.65 |
| PV Chamber of Commerce | Scheduled | $1,250.00 |
| PV General Hospital Foundation | Scheduled | $365,290.00 |
| Rays | Scheduled | $5,180.00 |
| Reavis DME | Scheduled and Proof of Claim No. 75 | $109,124.03 |
| Reavis Super Drug | Scheduled and Proof of Claim No. 73 | $246,023.06 |
| Rely on Rehab PC | Scheduled | $1,266.52 |
| RF Technologies, Inc. | Scheduled | $1,319.31 |
| Richard Wolf Medical Instruments | Scheduled | $2,216.60 |
| RNA Medical | Scheduled | $338.00 |
| RSVP Answering Services | Scheduled | $546.00 |
| Sara Lee Bakery | Scheduled | $460.59 |
| Savage Sports Boosters | Scheduled | $445.00 |
| Scott, Dawn L | Scheduled | $250.00 |
| Shire Regenerative Medicine | Scheduled | $12,240.00 |
| Siemens Financial Services | Scheduled and Proof of Claim No. 57 | $392,323.79 |
| Siemens Healthcare Diagnostics | Scheduled | $5,122.15 |

DISCLAIMER: Creditors listed herein are listed for informational purposes only. By identifying a particular creditor as holders of General Unsecured Claims, Debtor does not consent to the validity, nature or extent of the Claim listed herein and reserves all of its rights to object to such Claim or to recharacterize such Claim as appropriate.

| | | |
|---|---|---|
| Siemens Medical Solutions USA, Inc. | Proof of Claim No. 78 | $88,350.88 |
| Sightpath Medical | Scheduled | $21,158.00 |
| Sizewise Rentals | Scheduled and Proof of Claim No. 58 | $324.00 |
| Skytron | Scheduled | $429.60 |
| Sooner Mobile Xray | Scheduled | $285.77 |
| Southern Oklahoma Pathology | Scheduled | $18,000.00 |
| Southwest Xray Company | Scheduled | $1,750.54 |
| Southwestern Directory Company | Scheduled | $763.00 |
| SSM of Oklahoma, Inc. | Proof of Claim No. 60 | $947,125.94 |
| St. John Record Programs | Scheduled | $358.64 |
| St. Anthony Marketing | Scheduled | $796.50 |
| Standard Register Company | Scheduled and Proof of Claim No. 43 | $4,124.02 |
| Staples, Inc. | Proof of Claim No. 39 | $9,125.88 |
| Steris Corporation | Scheduled | $2,279.89 |
| Stryker Endoscopy | Scheduled and Proof of Claim No. 8 | $11,175.78 |
| Stryker Medical, Div of Stryker Corp./Stryker Sales Corp | Scheduled and Proof of Claim No. 27 | $349.67 |
| Suddenlink | Scheduled | $642.47 |
| Suture Express | Scheduled | $527.27 |
| Swift View Inc. | Scheduled | $2,394.00 |
| Team Medical | Scheduled | $629.97 |
| Theracom LLC | Scheduled | $6,812.35 |
| Third Helix Technology | Scheduled | $4,893.00 |
| Thompson, Bobby G | Scheduled | $10,678.50 |
| Torres-Long, Paula | Scheduled | $449.55 |
| Torres-Long, Paula | Scheduled | $480.85 |
| Total Electric of OK, Inc. | Scheduled | $783.75 |
| Total Medical Personnel Stafng | Scheduled | $138,945.38 |
| Unique Pharmaceutical | Scheduled | $281.79 |
| US Food Service | Scheduled | $8,908.92 |
| Vidacare Corporation | Scheduled | $351.04 |
| Videoworkers LLC | Scheduled | $500.00 |
| Vital Systems of Oklahoma, Inc. | Scheduled | $3,900.00 |
| W W Grainger, Inc. | Scheduled and Proof of Claim No. 20 | $1,478.93 |
| Water Quality Control Inc. | Scheduled | $389.00 |
| Wes Enterprises LP | Scheduled | $2,924.80 |
| Wesco Distribution, Inc. | Scheduled | $399.04 |
| WI State Lab of Hygiene | Scheduled | $7,534.00 |
| Wilks Publications Inc. | Scheduled | $273.00 |
| Wynnewood City Utilities Authr | Scheduled | $709.26 |
| Wynnewood Gazette | Scheduled | $591.25 |

DISCLAIMER: Creditors listed herein are listed for informational purposes only. By identifying a particular creditor as holders of General Unsecured Claims, Debtor does not consent to the validity, nature or extent of the Claim listed herein and reserves all of its rights to object to such Claim or to recharacterize such Claim as appropriate.

## Schedule 2.2.12
## Holders of Convenience Claims

| | | |
|---|---|---|
| Abla, Charlene | Scheduled | $41.30 |
| Ada Coca Cola Dr. Pepper | Scheduled | $68.80 |
| AHA Services Inc. | Scheduled | $101.90 |
| Alcon Laboratories, Inc. | Scheduled and Proof of Claim No. 35 | $139.00 |
| Allergan USA, Inc. | Scheduled | $212.00 |
| Alpha Source Inc. | Scheduled | $15.70 |
| American Hospital Association | Scheduled | $101.95 |
| Ameridose | Scheduled | $59.80 |
| Amerifactors | Scheduled | $206.62 |
| Appl, Kathryn L. | Scheduled | $100.00 |
| Ballard, Jo A | Scheduled | $72.95 |
| Bard Peripheral | Scheduled | $209.00 |
| Barker, Calae | Scheduled | $150.00 |
| Baxa Corporation | Scheduled | $34.10 |
| Bayless Drug | Scheduled | $92.71 |
| Bazor, Raymond W. | Scheduled | $109.60 |
| Bazor, Raymond W. | Scheduled | $109.60 |
| Bechtel, Lahoma | Scheduled | $155.00 |
| Bechtel, Lahoma | Scheduled | $163.55 |
| Beson, Brent, MD | Scheduled | $64.78 |
| Bevers, Loretta | Scheduled | $172.00 |
| Birch Communications | Scheduled | $64.80 |
| Bond the Florist | Scheduled | $164.60 |
| Booker, Johnnie | Scheduled | $14.00 |
| Booker, Johnnie | Scheduled | $14.00 |
| Boone & Boone Sales Co, Inc. | Scheduled | $132.76 |
| Bostick, Sallie F. | Scheduled | $25.00 |
| Boyce Bynum Path Lab PC | Scheduled | $26.72 |
| Briggs Corporation | Scheduled | $156.40 |
| Cable Printing/Lindsay News | Scheduled | $9.60 |
| Cade, Jean M | Scheduled | $20.00 |
| Cade, Jean M | Scheduled | $20.00 |
| Cheatham, Tammy L | Scheduled | $17.69 |
| Cheatham, Tammy L | Scheduled | $17.69 |
| Coastline Pharmaceuticals LLC | Scheduled | $132.00 |
| Coding Institute Subscriber Services | Scheduled | $249.00 |
| Cole Technology Group | Scheduled | $17.21 |
| College of American Pathologists | Proof of Claim No. 77 | $154.00 |
| Collings, Janie | Scheduled | $21.75 |
| Collins, Delilah | Scheduled | $19.00 |
| Cone Instruments LLC | Scheduled | $139.94 |
| Cornforth, Joyce | Scheduled | $15.00 |
| Crawford, Marnie | Scheduled | $18.85 |
| Czarnecki, Hannah | Scheduled | $100.00 |
| Davis News | Scheduled | $186.00 |

DISCLAIMER: Creditors listed herein are listed for informational purposes only. By identifying a particular creditor as holders of Convenience Claims, Debtor does not consent to the validity, nature or extent of the Claim listed herein and reserves all of its rights to object to such Claim or to recharacterize such Claim as appropriate.

1

| | | |
|---|---|---|
| Davis, Benjamin | Scheduled | $87.77 |
| Department of Labor | Scheduled | $75.00 |
| DF Exhaust & Brakes | Scheduled | $101.35 |
| Diaz, Gilbert | Scheduled | $20.00 |
| Diaz, Gilbert | Scheduled | $20.00 |
| Dickinson, Mildred L | Scheduled | $26.70 |
| Dickinson, Mildred L | Scheduled | $26.70 |
| Diversified Biologicals LLC | Scheduled and Proof of Claim No. 52 | $140.22 |
| Du, Leann Q | Scheduled | $19.00 |
| Edco Group, Inc. | Scheduled | $114.98 |
| Elsevier | Scheduled | $87.26 |
| EMS Surgical | Scheduled | $89.82 |
| Eureka Water Company | Scheduled | $73.86 |
| Evans Enterprises Inc. | Scheduled | $225.00 |
| Family Traditions | Scheduled | $171.58 |
| Federal Express Corporation | Scheduled | $234.50 |
| Fincher, Alva | Scheduled | $35.24 |
| Fire Protection | Scheduled | $66.00 |
| Firmin Business Forms Inc. | Scheduled | $218.42 |
| Fullerton, James R. | Scheduled | $50.00 |
| Geddes Electric LLC | Scheduled | $60.00 |
| Genn, Peggy A | Scheduled | $26.97 |
| Genn, Peggy A | Scheduled | $26.97 |
| Gray, Richard | Scheduled | $204.77 |
| Gray, Richard | Scheduled | $204.77 |
| Gyrus ACMI LP | Scheduled | $120.35 |
| Haddock, Zelma M | Scheduled | $65.00 |
| Harry Thompson Inc. | Scheduled | $72.53 |
| Health Care Services Corp | Scheduled | $91.18 |
| Healthchoice | Scheduled | $50.98 |
| Henderson, Denise M. | Scheduled | $56.00 |
| Herrin, Virginia | Scheduled | $20.00 |
| Herrin, Virginia | Scheduled | $20.00 |
| Hobart Service | Scheduled | $113.00 |
| Hyden, Kathleen K | Scheduled | $30.41 |
| ID-Ville | Scheduled | $87.50 |
| Ince, Pauline A | Scheduled | $112.12 |
| Insurance One | Scheduled | $30.00 |
| International Institute Language Services | Scheduled | $59.40 |
| Ivans Inc. | Scheduled | $62.00 |
| King, Dee L | Scheduled | $40.00 |
| King, Dee L | Scheduled | $40.00 |
| Krueger Inc. | Scheduled | $220.17 |
| Legacy Drug Inc. | Scheduled | $7.99 |
| Lifecare Health Services LLC | Scheduled | $246.05 |
| Lindsay Municipal Hospital | Scheduled | $142.80 |
| Logan, Avis Y | Scheduled | $119.24 |
| Logan, Avis Y | Scheduled | $20.00 |

DISCLAIMER: Creditors listed herein are listed for informational purposes only. By identifying a particular creditor as holders of Convenience Claims, Debtor does not consent to the validity, nature or extent of the Claim listed herein and reserves all of its rights to object to such Claim or to recharacterize such Claim as appropriate.

2

| | | |
|---|---|---|
| Mac Systems Inc. | Scheduled | $108.00 |
| McCurley, Cody M | Scheduled | $60.00 |
| McElvany, Hazel M | Scheduled | $18.34 |
| McElvany, Hazel M | Scheduled | $18.34 |
| McLin, Rick | Scheduled | $150.00 |
| Medical Arts Press | Scheduled | $123.96 |
| Medline Industries, ICN. | Scheduled | $110.34 |
| Med-Pass Inc. | Scheduled | $132.92 |
| Mitchell, Johnana | Scheduled | $21.53 |
| Mullins, Jack H. | Scheduled | $18.44 |
| Norman Regional Hospital Auth | Scheduled | $168.52 |
| Occupationals Performance Corp. | Scheduled | $192.50 |
| OHCA | Scheduled | $36.74 |
| Oherft | Scheduled and Proof of Claim No. 26 | $225.00 |
| Oklahoman | Scheduled | $52.57 |
| Optimal Pharmaceuticals Inc. | Scheduled | $120.95 |
| O'Reilly Auto Parts | Scheduled | $183.96 |
| Orthopedic & Sports Medicine | Scheduled | $165.00 |
| Pauls Valley Ace Hardware | Scheduled | $79.99 |
| Pauls Valley Rotary Club | Scheduled | $155.50 |
| Perry, Ronnie C | Scheduled | $20.00 |
| Perry, Ronnie C | Scheduled | $20.00 |
| Perry, Ronnie C | Scheduled | $15.01 |
| Pitney Bowes Inc. (Supplies) | Scheduled | $158.08 |
| Pope, Mary J. | Scheduled | $24.97 |
| Posey Company | Scheduled | $173.90 |
| Poyner, Roger A | Scheduled | $25.00 |
| Poyner, Roger A | Scheduled | $25.00 |
| Purcell Municipal Hospital | Scheduled | $27.62 |
| Purcell Register | Scheduled | $28.00 |
| PVGH Laboratory Services | Scheduled | $89.90 |
| Radiology Services of Ardmore | Scheduled | $95.00 |
| Reavis | Scheduled | $30.06 |
| Reavis | Scheduled | $25.74 |
| Reynolds, Wynona V. | Scheduled | $72.96 |
| Robinson, Margaret A | Scheduled | $60.00 |
| Sanchez, Domitila P | Scheduled | $35.00 |
| SA-SO | Scheduled | $134.12 |
| Security Check | Scheduled | $78.00 |
| Sherwin-Williams Company | Scheduled | $195.51 |
| Shred It | Scheduled | $142.65 |
| Sigma International | Scheduled | $211.16 |
| Southeastern Emergency Equip | Scheduled | $33.95 |
| St. Anthony Pharmacy | Scheduled | $106.00 |
| Standridge Tire Center | Scheduled | $34.00 |
| Stanfill, John | Scheduled | $81.81 |
| Staples Print Solutions | Scheduled | $90.29 |
| Stretchwell, Inc. | Scheduled | $32.80 |

DISCLAIMER: Creditors listed herein are listed for informational purposes only. By identifying a particular creditor as holders of Convenience Claims, Debtor does not consent to the validity, nature or extent of the Claim listed herein and reserves all of its rights to object to such Claim or to recharacterize such Claim as appropriate.

| | | |
|---|---|---|
| Suggs, Jerry R | Scheduled | $20.00 |
| Superior Fire Protection, Inc. | Scheduled | $175.00 |
| Swat Committee | Scheduled | $71.00 |
| Tacy Medical | Scheduled | $101.29 |
| Talkington, Melinda K | Scheduled | $60.00 |
| Taylor Technologies Inc. | Scheduled | $97.96 |
| Teleflex Medical | Scheduled | $144.64 |
| Temple, Seth D. | Scheduled | $22.93 |
| Torres-Long, Paula | Scheduled | $38.37 |
| Torres-Long, Paula | Scheduled | $52.33 |
| Turner, Mary L. | Scheduled | $20.00 |
| Turner, Mary L. | Scheduled | $20.00 |
| Universal Business Sys/Forms | Scheduled | $211.10 |
| Vitalgraph Inc. | Scheduled | $71.00 |
| Washita Emergency Physicians | Scheduled | $246.37 |
| Watson, Viola M. | Scheduled | $18.88 |
| Watson, Viola M. | Scheduled | 18.90 |
| Wimberly, Sonya D. | Scheduled | $123.50 |
| Wolters Kluwer Health Inc. | Scheduled | $97.91 |
| Wyatt, Kathy B | Scheduled | $25.00 |
| Wyatt, Kathy B | Scheduled | $25.00 |
| Wynnewood Chamber of Commerce | Scheduled | $120.00 |
| Zachry, Dorthy J. | Scheduled | $160.00 |

DISCLAIMER: Creditors listed herein are listed for informational purposes only. By identifying a particular creditor as holders of Convenience Claims, Debtor does not consent to the validity, nature or extent of the Claim listed herein and reserves all of its rights to object to such Claim or to recharacterize such Claim as appropriate.

## Schedule 9.1
## Assumption or Rejection of Executory Contracts

| Name of Contracting Party | Nature of Contract | Assumed | Rejected |
|---|---|:---:|:---:|
| Ability Network, Inc. | Business Office Medicare Services | X | |
| Advanced Professional Software, Inc. (APS) | Business Office Support Services | | X |
| Carestream Health, Inc. (Pyxis) | Software Agreement | X | |
| Charles Mitchell, D.O., P.C. | Billing Agreement – Clinics | | X |
| City of Pauls Valley, OK | EMS Dispatch Services | | X |
| EmCare Physician Services, Inc. | Emergency Department | X | |
| Healthcare Professional Equipment Services LP | Pump Rental – Patient Care | | X |
| IVANS, Inc. | Communications – Home Health | | X |
| Jack Justice | Rental – Building Valley Clinic | X | |
| Kinnser Software, Inc. | Software Agreement – Home Health | | X |
| Lifecare Health Services, LLC | Answering Service – Clinics | | X |
| Mark 5 Care Group, PLLC | Physician Services | | X |
| Norman Physician Hospital Organization, LLC | IT Services - Clinics | | X |
| R.S.V.P. Services, Inc. | Answering Service – Hospice | X | |
| Shred-it | Services – Shred Paper | X | |
| Siemens Healthcare Diagnostics, Inc. | Reagents – Lab | X | |
| Stericycle, Inc. | Services – Waste | X | |
| Anna Tooman | Contract Labor – Physical Therapy | X | |
| John Steven Moore | EKG Reads | X | |
| Paine Business Machines | Maintenance Copiers | | X |
| Tract Manager | Contract Software | | X |
| Callibra, Inc. d/b/a Discharge 1-2-3 | Software Agreement | | X |
| McKesson | Software | | X |
| Regional Adjustment Bureau, Inc. | Billing – Early Out Private Pay | | X |
| RelayHealth, a Division of McKesson Technologies, Inc. | Billing Claims | | X |
| Connect Health ProFessionals | Contract Labor – Physical Therapy | | X |
| Dysphagia Services, Inc. | Swallow Studies | | X |
| Midland Professional Services, Inc. | Billing Services – Old AR | | X |
| Phillips Medical Systems, N.A. | Ultrasound Service Agreement | | X |
| Quadramed Quantim Corporation – Encoder | Software Agreement HIM | | X |
| Sightpath Medical, Inc. | Mobile Cataract and Specialty Services | | X |
| SSM Health Care of Oklahoma, Inc. | Reference Lab | | X |
| SSM Health Care of Oklahoma, Inc. o/o St. Anthony Hospital | Mobile Ultrasound | | X |
| SSM Health Care of Oklahoma, Inc. o/o St. Anthony Hospital | Remote Pharmacy | | X |
| SSM Health Care of Oklahoma, Inc. o/o St. Anthony Hospital | Wound Care Services | | X |
| SSM Health Care of Oklahoma, Inc. o/o St. Anthony Hospital | Holter Monitor | | X |
| SSM Health Care of Oklahoma, Inc. o/o St. Anthony Hospital | Management Agreement | | X |

| | | | |
|---|---|---|---|
| SSM Health Care of Oklahoma, Inc. o/o St. Anthony Hospital | Sleep Studies | | X |
| SSM Health Care of Oklahoma, Inc. o/o St. Anthony Hospital | Interqual | | X |
| SSM Health Care of Oklahoma, Inc. o/o St. Anthony Hospital | Pain Management | | X |
| SSM Health Care of Oklahoma, Inc. o/o St. Anthony Hospital | Monthly Pass through Expenses, Including Payroll | | X |
| Stratford Pest Control | Services | | X |
| John Teel | Contract Labor – Pharmacist | | X |
| Sovereign Bank | Chillers on Building | X | |
| Pitney Bowes Global Financial | Postage Machine | X | |
| LFC Capital | PACS System – Radiology | | X |
| Siemens Financial | Lab Equipment | X | |
| Siemens Financial | MRI | | X |
| GreatAmerica Leasing | Copy Machines | | X |
| First Financial | McKesson | | X |
| Pauls Valley Hospital Foundation | Building Rental – Willows | X | |
| David Mallow | Land Lease – Wynnewood Clinic | | X |
| City of Pauls Valley | Land Lease—Hospital | X | |

DISCLAIMER: Creditors listed herein are listed for informational purposes only. By identifying a particular creditor as holders of Convenience Claims, Debtor does not consent to the validity, nature or extent of the Claim listed herein and reserves all of its rights to object to such Claim or to recharacterize such Claim as appropriate.

2