IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN RE: ) | |
| PAULS VALLEY HOSPITAL AUTHORITY ) | BK 13-10791-SAH |
| d/b/a Pauls Valley General Hospital, ) | Chapter 9 |
| Debtor ) | |
| ) | |

## OBJECTION OF THE UNITED STATES OF AMERICA TO
## DEBTOR'S MODIFIED PLAN OF ADJUSTMENT AND BRIEF IN SUPPORT

The United States, on behalf of the Secretary of the United States Department of Health and Human Services ("HHS"), and its component agency, the Centers for Medicare & Medicaid Services ("CMS"), respectfully object to the Modified Plan of Adjustment ("Plan") (Docket #312) filed by Pauls Valley Hospital Authority d/b/a Pauls Valley General Hospital ("Debtor").

### I.  INTRODUCTION

The Court should not confirm the Plan in its current form because it does not comply with 11 U.S.C. § 943(b) and conflicts with the Medicare Act.  The Debtor asserts that it intends to continue to participate in the Medicare program, but does not intend on assuming the Health Insurance Benefits Agreements ("Provider Agreements") that make the hospital eligible for Medicare payments.  Rather, the Debtor takes the minority position that the Medicare Provider Agreements are not executory contracts.

Furthermore, the Plan seeks to strip CMS of its statutory and common law right to recoupment.  Pursuant to 42 U.S.C. § 1395g(a), CMS is required to make adjustments to Medicare payments based on previously made overpayments or underpayments.  Debtor

1

has agreed to comply with Medicare statutes and regulations; thus, this provision is incorporated into the Medicare Provider Agreements. Three circuit courts have found that CMS may recoup Medicare prepetition overpayments from post-petition Medicare payments.

Apparently, the Debtor challenges the *validity* of CMS's recoupment rights because the Tenth Circuit has found that if the recoupment doctrine applies, then there is no "debt" or "claim," as defined in the Bankruptcy Code, and the discharge injunction is not applicable. A valid recoupment right is a "defense to payment" that is not subject to a discharge injunction.

The Plan should not be confirmed because Debtor has not met it burden to demonstrate that the Plan was "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 943(b)(1). Simply put, the Plan is unfair to CMS because the Debtor seeks to reap all the benefits of the Medicare Provider Agreement without all the attendant burdens; and CMS would still be obligated to pay the Debtor any prepetition underpayments, but would not be able to recoup any later-discovered prepetition overpayments, as provided by the statute. Under the Plan's proposed injunction on recoupment, CMS and the federal Medicare Program are worse off than the status quo.

## II. FACTS

On March 1, 2013 ("Petition Date"), the Debtor filed a voluntary Chapter 9 petition. Pauls Valley General Hospital is an acute care hospital located in Pauls Valley, Oklahoma, and is licensed by the State of Oklahoma.

Part A of Title XVIII of the Social Security Act, commonly known as the Medicare Act, provides insurance for the cost of hospital and related post-hospital expenses. *Heckler v. Ringer*, 466 U.S. 602, 104 S. Ct. 2013, 80 L. Ed. 2d 622 (1984). Participation in the Medicare Program is voluntary. Section 1866 of the Social Security Act, codified at 42 U.S.C § 1395cc, requires the providers to enter into an agreement with CMS in order to be eligible for Medicare payments. This agreement is commonly referred to as the Medicare Provider Agreement.

Effective March 12, 1970, Debtor voluntarily entered into a "Health Insurance Benefits Agreement (Agreement with Provider of Services pursuant to Section 1866 of the Social Security Act)" to provide hospital services and was assigned provider number 37-0156. (CMS Ex. 1). The 1970 agreement stated that it was entered into "for the purpose of establishing eligibility for payment under Title XVIII of the Social Security Act." (CMS Ex. 1).

On September 22, 1993, Debtor entered into a second Medicare Provider Agreement to provide home health services, but this agreement terminated in July 31, 2014. (CMS Ex. 2). On June 7, 1999, Debtor entered into a third Medicare Provider Agreement to provide hospice service and was assigned provider number 37-1572, and continues to operate a home health agency under provider number 37-7249 (CMS Ex. 3).

Debtor's Amended Disclosure Statement describes the parties' positions on the role of the Medicare Provider Agreement:

> The United States of America contends that the Medicare Provider Agreement is an executory contract, which if assumed, must include assumption of all of the burdens and benefits of the contract. Debtor

contends that the Agreement is a statutory entitlement not subject to assumption or rejection.

Amended Disclosure Statement (Docket #313, at 26-27).

In addition to the executory contract issue, Debtor's Plan seeks to discharge and enjoin the United States' statutory, contractual, and common law right of recoupment for prepetition overpayments. (Docket #310, at 5; Docket #312 at 11, 16, 19).

### III.  OBJECTIONS

CMS objects to the Debtor's failure to assume its two Medicare Provider Agreements and its attempt to limit CMS's recoupment rights. CMS specifically objects to the following sections of the Plan: 4.6 United States of America Medicare/Medicaid Claim; 9.1 Assumption and Rejection of Executory Contracts; 11.2 Discharge of Claims; 11.3 Discharge of Debtor; and 11.6 Injunctions.

### IV. STATUTORY AND REGULATORY BACKGROUND

The Medicare program was established by Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 to 1395kkk (Medicare statute), to pay the cost of hospital and other services for Medicare's aged and disabled beneficiaries. In particular, Medicare Part A authorizes the Secretary to reimburse hospital and hospice for services provided to beneficiaries.

#### A.     Requirements to Become a Medicare Provider

Debtor is a "provider" of hospital and hospice services under the Medicare program. To be eligible to receive Medicare reimbursement for services to Medicare beneficiaries, a provider must have in effect an agreement with the Secretary. 42 U.S.C. §

4

1395cc(a)(1). The prospective provider must enter into an agreement called a Health Insurance Benefit Agreement (Medicare Provider Agreement). 42 U.S.C. § 1395cc. Through incorporation by reference, the Medicare Provider Agreement requires providers to comply with the ever-changing Medicare statutes and regulations that include program integrity, reimbursement, health, and safety requirements.

### B.     Payment and Reconciliation of Medicare Payments

The Secretary contracts with Medicare Administrative Contractors ("MAC's") to administer payment to providers for Medicare covered services. 42 U.S.C. § 1395kk-1; 42 C.F.R. §§ 421.400–421.404. MAC's administer payment to providers for Medicare covered services. MAC's make payments to providers in accordance with the Medicare statute and regulations; perform the day-to-day administration of Medicare, and audit and reimbursement activities. 42 U.S.C. § 1395h. Debtor's MAC for hospital services is Novitas Solutions, Inc., and its contractor for hospice services is Palmetto GBA.

From time to time during a provider's fiscal year, a provider submits claims for payment to its MAC. The MAC makes two types of payments to a hospital. The first is a pre-determined prospective payment rate, which covers most services, 42 U.S.C. § 1395yy; 42 C.F.R. §§ 413.330–413.350. The MAC also makes estimated interim payments for bad debts and other Medicare Part A costs not covered by the prospective payment system. 42 U.S.C. § 1395(g)(a); 42 C.F.R. § 413.350(c).

Within five months after the end of each fiscal year, the provider must submit financial information in the form of a cost report verifying the actual amount of reimbursements owed to it for the past fiscal year. 42 C.F.R. §§ 413.350(c), 413.20; *see*

5

42 U.S.C. §§ 1395g and 1395hh (giving the Secretary authority to require submission of cost reports).  Once the cost report has been submitted, the MAC audits the cost report for that year and determines the provider's actual, rather than estimated, reimbursement amount for the year. 42 U.S.C. §§ 1395g; 1395yy; 42 C.F.R. §§ 413.335.

The MAC then issues a "Notice of Amount of Medicare Program Reimbursement" (NPR), which determines whether the provider was overpaid or underpaid for that fiscal year. 42 C.F.R. §§ 413.60, 405.1803.

### C. Medicare Appeals and Reopening

The NPR determination is final unless it is revised by the intermediary or appealed to the Provider Reimbursement Review Board. 42 U.S.C. § 1395oo(a); 42 C.F.R. § 405.1807.  After that decision is reviewed by the Secretary, the provider may seek review in federal district court. 42 U.S.C. § 1395oo.

The regulations also permit reopening in order to make limited corrections on otherwise final cost report determinations within three years of the finalization of the specific cost report determination included in the NPR. 42 C.F.R. § 405.1885.

## V. ARGUMENT

### A. Chapter 9 Plans Must be Proposed in Good Faith

The Court should not confirm the Plan because it fails to comply with the requirements of Bankruptcy and Medicare law.  Debtor bears the burden of satisfying the confirmation requirements of § 943(b) by a preponderance of the evidence. *In re Hardeman Cty. Hosp. Dist.*, 540 B.R. 229, 234 (Bankr. N.D. Tex. 2015).  The requirement that a Chapter 9 plan be "proposed in good faith and not by any means

6

forbidden by law" is derived from 11 U.S.C. § 1129(a)(3), which is expressly incorporated in Chapter 9 by 11 U.S.C. § 901(a). Compliance with § 901 is a requirement for confirmation pursuant to § 943(b)(1).

In *In re Mount Carbon Metro. Dist.,* 242 B.R. 18 (Bankr. D. Colo. 1999), the court surveyed the case law and found several interpretations of what it means to propose a plan in good faith. Ultimately, the *Mount Carbon* court concluded that in determining a good faith issue, the court should examine:

> (1) whether a plan comports with the provisions and purpose of the Code and the chapter under which it is proposed, (2) whether a plan is feasible, (3) whether a plan is proposed with honesty and sincerity, and (4) whether a plan's terms or the process used to seek its confirmation was fundamentally fair.

*Id.* at 40–41; *In re City of Detroit*, No. 13-53846, 2014 WL 8396419 (Bankr. E.D. Mich. Aug. 28, 2014); *In re Pierce Cnty. Housing Auth.,* 414 B.R. 702, 720 (Bankr. W.D. Wash. 2009).

In this case, Debtor has not assumed or rejected the Medicare Provider Agreements and proposes the following Plan Language:

> **4.6 Class 6: United States of America Medicare/Medicaid[1] Claim**
> The amount of this claim is unknown and contingent on all future audits and evaluations of Debtor's pre-petition reimbursements from Medicare and Medicaid. This Plan provides for injunctive relief prohibiting any creditor, including the United States of America and its agents, from offsetting or recouping post-petition amounts owed to Debtor against pre-petition obligations owed to the creditor. As a result of these injunctions, the United States of America shall only have an unsecured claim for any pre-petition amounts and will be paid in the same manner as Class 8

---

[1] The classification is defective because the State of Oklahoma, not the United States, administers the Medicaid Program in Oklahoma.

7

> General Unsecured Claims to the extent such Unsecured Claims are deemed allowed by the Bankruptcy Court.

Plan, at 11. In stark contrast, the hospital district in a recent Chapter 9 case expressly assumed its Medicare provider agreements and proposed the following Plan language:

> **2.08 Medicare and Medicaid Claims and Related Processes.** During the pendency of the Case, the Debtor has continued its relationship with its Medicare administrative Contractor (Novitas Solutions, Inc.), the paying agency responsible for administration of the Medicare program in which the Debtor is enrolled and in which it participates. The Debtor has also continued its relationship with the Texas Medicaid and Healthcare Partnership, the paying agency responsible for administration of the Medicaid program in which the Debtor is enrolled and in which it participates. Recognizing the rights of recoupment available to such parties and other governmental healthcare payors, the Debtor has continued to submit its cost reports and to undergo reconciliation thereof with such agencies in the normal course. For the sake of clarity: this Plan is intended to continue the Debtor's relationships with such agencies, and nothing in the Plan shall be construed to alter or affect such relationships or any Claim arising from such relationships, past, present, or future.

*In re Hardeman Cty. Hosp. Dist.*, 540 B.R. 229, 234, Docket #283 at 13 (Bankr. N.D. Tex. 2015). HHS and CMS did not file any pleadings in that *Hardeman* case, yet received fair treatment. In this case, Debtor relies on orphaned case law and fails to meet its burden to demonstrate the Plan's treatment of the government payors was proposed in good faith and in accordance with law.

> **B.  Medicare Provider Agreements are Treated as Executory Contracts in Bankruptcy.**

Debtor contends that the Agreement is a statutory entitlement not subject to assumption or rejection. Amended Disclosure Statement (Docket #313, at 26-27). However, it is well-established that the Medicare Provider Agreements are treated as

8

executory contracts in bankruptcy. *See, e.g.*, *In re Univ. Med. Ctr.*, 973 F.2d 1065, 1075 n.13 (3rd Cir. 1992) ("A Medicare provider agreement easily fits within th[e] definition [of executory contract]").[2]  Generally, courts arrive at this conclusion because Medicare Provider Agreements require performance and create obligations on both sides. Because the Medicare Provider Agreements incorporate the Medicare statute by implication, the health care entity is obligated to provide services to Medicare patients and the government is obligated to reimburse the health care entity for covered expenditures. *In re Monsour Med. Ctr.*, 11 B.R. 1014 (W.D. Pa. 1981).  Given that a Chapter 9 proceeding should treat creditors fairly and in accordance with law; the Court should not strain to adopt an extreme minority position that damages the Medicare program.

If Debtor wishes to continue to participate in Medicare, it must assume its Medicare Provider Agreements and cure outstanding defaults. 11 U.S.C. § 365. Furthermore, the Debtor must accept the burdens, as well as taking the benefits, of any executory contracts it assumes. *University Medical Center v. Sullivan*, 973 F.2d 1065, 1075 (3d Cir. 1992); *In re B & L Oil Co.,* 782 F.2d 155, 159 (10th Cir. 1986) (noting that oil and gas contract payments were similar to Medicare payment arrangements); *Trigg v.*

---

[2] *In re Vitalsigns Homecare*, *Inc.*, 396 B.R. 232, 240 (Bankr. D. Mass. 2008) ("It appears that the provider agreement, the statute, and the regulations form an arrangement that imposes both benefits and burdens on the provider. It cannot accept the benefits without the attendant burdens."); *In re Consumer Health Services of America*, 171 B.R. 917, 920 (Bankr. D.D.C.. 1994), *rev'd* on other grounds, 108 F.3d 390 (D.C. Cir. 1997); *In re Heffernan Mem'l Hosp. Dist.*, 192 B.R. 228, 231 (Bankr. S.D. Cal. 1996) ("[A] Provider Agreement is a contract providing for advance payments based on estimates and expressly permitting the withholding of overpayments from future advances."); *In re Tidewater Memorial Hospital, Inc*., 106 B.R. 876, 880 (Bankr. E.D. Va. 1989); *In re Advanced Prof'l Home Health Care Inc.,* 94 B.R. 95, 97 (E.D. Mich. 1988); *In re Mem'l Hosp*., 82 B.R. 478, 480 (W.D. Wis. 1988), *but see*, *In re B.D.K. Health Management, Inc.*, 1998 WL 34188241 (Bankr. M.D. Fla. Nov.16, 1998).

*United States (In re Trigg)*, 630 F.2d 1370, 1375 (10th Cir. 1980)*; In re Godwin Bevers Co., Inc.*, 575 F.2d 805, 807 (10th Cir. 1978);

In *University Medical Center*, the Third Circuit explicitly held that, once a Medicare provider in bankruptcy assumes its Medicare Provider Agreement "[t]here is no question that HHS could withhold…post-petition reimbursement in order to recover prepetition overpayments." *Id.* Therefore, to the extent that the Plan seeks to treat the Debtor's Medicare Agreements as something other executory contracts that must be assumed, confirmation must be denied. If a provider in bankruptcy does not wish to be subject to Medicare's system of adjustments, it can cease providing Medicare services and reject the agreements. *In re TLC Hospitals, Inc.,* 224 F.3d 1008, 1014 (9th Cir. 2000).

### C. CMS has the Statutory and Common Law Right to Recoup Medicare Overpayments

"Recoupment is 'narrowly construed' in bankruptcy cases because it violates the basic bankruptcy principle of equal distribution to creditors." *Conoco, Inc. v. Styler (In re Peterson Distributing, Inc.)*, 82 F.3d 956, 959 (10th Cir.1996). "In the bankruptcy context, recoupment has often been applied where the relevant claims arise out of a single contract 'that provide[s] for advance payments based on estimates of what ultimately would be owed, subject to later correction.'" *Id*. at 1080 (quoting *In re B & L Oil Co.,* 782 F.2d 155, 157 (10th Cir.1986)) (alteration original). The reasoning behind allowing recoupment in the bankruptcy context is "that a debtor who assumes the favorable aspects of the contract (post-petition performance) also must take the unfavorable aspects of the

same contract (obligation to repay pre-petition overpayments)." *In re B & L Oil,* 782 F.2d at 157.

With regard to overpayments that Debtor owes to Medicare, most courts recognize that CMS has the right to recoup overpayments from future Medicare payments pursuant to statutory and common law. Congress vested the Secretary with the statutory authority to make adjustments to current payments to a Medicare provider to account for prior overpayments, and mandated that the Secretary recoup overpayments. The Medicare Act provides:

> The Secretary shall periodically determine the amount which should be paid under this part to each provider of services with respect to the services furnished by it, and the provider of services shall be paid, at such time or times as the Secretary believes appropriate (but not less than monthly) and prior to audit or settlement by the General Accounting Office, . . . the amounts so determined, with necessary adjustments on account of previously made overpayments or underpayments; . . .

42 U.S.C. § 1395g(a); *see also*, 42 U.S.C. §1395cc(j)(6)(A); 42 U.S.C. § 1395gg; 42 C.F.R. Part 405, Subpart C.

CMS has the right to adjust current payments to account for prior overpayments that exist regardless of appeals, litigation, or bankruptcy. *See, e.g.*, *Holyoke Nursing Home, Inc. v. Health Care Financing Administration (In re Holyoke Nursing Home, Inc.)*, 372 F.3d 1, 4 (1st Cir. 2004) (agreeing with other courts that the Medicare Act clearly evidences Congress's intent that a provider's stream of services be considered one transaction for purposes of any claim the government would have against the provider); *United States v. Consumer Health Services of America, Inc.,* 108 F.3d 390 (D.C. Cir. 1997) (same); *Sims v. United States Department of Health and Human Services (In re*

11

*TLC Hospitals, Inc.),* 224 F.3d 1008, 1011 (9th Cir. 2000) (Recoupment "does not owe its legitimacy to anything in the Bankruptcy Code.")[3]

Any attempt to limit or eliminate Medicare's right of recoupment under 42 U.S.C. § 1395g(a) would violate the Medicare Act. See *In re Vitalsigns Homecare, Inc.*, 396 B.R. 232, 239-41 (D. Mass 2008); *Advanced Professional Health Care, Inc. v. Bowen (In re Advanced Professional Home Health Care, Inc.)*, 94 B.R. 95, 97 (E.D. Mich. 1988) (There is "nothing in the Bankruptcy Act directly or by implication which overrides that statutory scheme.").

The Government also has an equitable right of recoupment that "allows a defendant to reduce the amount of a plaintiff's claim by asserting a claim against the plaintiff which arose out of the same transaction to arrive at a just and proper liability on the plaintiff's claim." *Holford v. Powers (In re Holford),* 896 F.2d 176, 178 (5th Cir. 1990) (emphasis in original)(citation omitted); see *In re Yonkers Hamilton Sanitarium, Inc.*, 22 B.R. at 433; *see also, Consumer Health Services of America, Inc.*, 108 F.3d at 391 (under the equitable doctrine of recoupment, the claims must arise from the same transaction or occurrence that gave rise to the claim); *Fischbach*, 2013 WL 1194850 at *6 ("recoupment is an equitable doctrine"). Funds subject to recoupment are not the debtor's

---

[3] See also, *AHN Homecare, LLC v. Home Health Reimbursement and Health Care Financing Administration (In re AHN Homecare, LLC)*, 222 B.R. 804, 811 (N.D. Tex. 1998)("the right to recoupment exists in bankruptcy" and "the exercise of the right of recoupment does not violate the automatic stay."); *Visiting Nurse Association of Tampa Bay*, 121 B.R. at 118-19 (the right to recoupment arises within the statutory scheme established by the Medicare program); *Fischbach v. Centers for Medicare and Medicaid Services (In re Fischbach)*, 2013 WL 1194850, at *5 (D.S.C. Mar. 22, 2013) ("This court agrees with the majority view . . . that recoupment of pre-petition Medicare overpayments by withholding post-petition Medicare reimbursements does not violate the discharge injunction.").

property. *Malinkowki*, 156 F.3d at 133; *Ferguson v. Lion Holdings, Inc.*, 312 F. Supp. 2d 484, 502 (S.D.N.Y. 2004).

### D.  CMS's Recoupment Rights are not Subject to the Discharge Injunction

If the recoupment doctrine applies, then there is no "debt" or "claim," as defined in the Bankruptcy Code, and a party may exercise recoupment without violating the automatic stay or the discharge injunction. *In re Beaumont,* 586 F.3d 776, 781 (10th Cir. 2009).  In the *Beaumont* case, the Tenth Circuit permitted the Veterans' Administration to recoup prepetition disability benefits from a veteran even though the veteran had gone through bankruptcy.  The Tenth Circuit opinion is consistent with the majority view.  In a recent case, the bankruptcy court found that CMS's right of recoupment was not subject to the discharge injunction. *See In re Fischbach,* 464 B.R. 258 (Bankr. D.S.C. 2012) (citiation omitted); *Mercy Hospital of Watertown v. New York State Department of Social Services,* 171 B.R. 490, 495 (N.D.N.Y. 1994) (The right to recoupment is not a claim, and is not dischargeable under the Bankruptcy Code.).  Therefore, CMS objects to Sections 4.6, 11.2, 11.3, and 11.6 of the Plan because they seek to discharge and enjoin CMS's recoupment rights.

### CONCLUSION

For all of the foregoing reasons, CMS respectfully requests that the Court deny confirmation of the Plan unless and until the Debtors assumes the Medicare Agreements in accordance with the requirements of Medicare and bankruptcy law.

Respectfully submitted,

SANFORD C. COATS
United States Attorney

s/ Kay Sewell
KAY SEWELL, OBA NO. 10778
Assistant U.S. Attorney,
210 Park Ave., Suite 400
Oklahoma City, OK 73102
(405) 553-8807
(405) 553-8885
kay.sewell@usdoj.gov

s/ *R. Samuel Boughner*
R. SAMUEL BOUGHNER, ARDC#6315222
Assistant U.S. Attorney
210 W. Park Avenue, Suite 400
Oklahoma City, OK 73102
(405) 553-8829 (office)
(405) 553-8885 (fax)
Robert.Boughner@usdoj.gov

Of Counsel:

WILLIAM B. SCHULTZ
General Counsel
DELORES "DEE" THOMPSON
Chief Counsel, Region VI
DANIEL WOLFE
Assistant Regional Counsel
Office of the General Counsel
U.S. Department of Health
and Human Services

## CERTIFICATE OF SERVICE

X   I hereby certify that on January 14, 2016, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the electronic records currently on file, the Clerk of Court will transmit a notice of Electronic Filing to the ECF registrants in this case, including:

Chad J Kutmas,
Attorney for Debtor

Mark B. Toffoli,
Attorney for Unsecured Creditors Committee

William H. Hoch
Attorney for Chickasaw Holding Company, LLC
& Chickasaw Telecom, Inc.

Judy Hamilton Morse
Attorney for Cimarron Insurance Exchange, RRG

Regan Strickland Beatty
Attorney for Cimarron Insurance Exchange, RRG

Gary D. Hammond
Attorney for Connect Health Professionals, LLC

Eric S Goldstein
Attorney for First Financial Corporate Leasing, LLC

Larry Glenn Ball
Attorney for First United Bank and Trust Company

Keith Readnour
Attorney for First United Bank and Trust Company

Gary D. Hammond
Attorney for Heathcare Management Solutions, Inc.

Kevin Blaney
Attorney for International Bank of Commerce

Mark B. Toffoli
Attorney for McKesson Technologies, Inc.

Doneen Douglas Jones
Attorney for Midland Professional Services, Inc.

Robert C Newark, III
Attorney for Oklahoma Employment Security Commission

Jerome S. Sepkowitz
Attorney for Oklahoma Health Care Association

Judy Hamilton Morse
Attorney for Physicians Liability Insurance Company

Steven W. Bugg
Attorney for  Attorney for SSM Health Care of Oklahoma, Inc.

Arlene N Gelman
Attorney for Siemens Financial Services, Inc.

John B. Heatly
Attorney for Siemens Financial Services, Inc.

Kevin M. Coffey
Attorney for Stefanie Fisher

Mark E. Hammons
Attorney for David Christopher Whybrew

Mark D.G. Sanders
Attorney for David Christopher Whybrew

Steven C. Kendall
Attorney for Garvin, Agee, Carlton & Mashburn, P.C.

Doneen Douglas Jones
Attorney for Midland Professional Services Inc

16

Hirchler Fleischer
Attorney for Owens & Minor Distribution, Inc.

Timothy Kline
Attorney for Owens & Minor Distribution, Inc.

Robert S Westermann
Attorney for Owens & Minor Distribution, Inc.

Sheila deLa Cruz
Attorney for Owens & Minor Distribution, Inc.

U.S. Trustee's Office

Notice by first class mail has been sent to the following recipients:

Pauls Valley Hospital Authority,
d/b/a Pauls Valley General Hospital
100 Valley Dr.
Pauls Valley, OK  73075

*s/ R. Samuel Boughner*
R. Samuel Boughner, ARDC#6315222
Assistant U.S. Attorney
210 W. Park Avenue, Suite 400
Oklahoma City, OK  73102
(405) 553-8829 (office)
(405) 553-8885 (fax)
E-mail: Robert.Boughner@usdoj.gov