**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

```
----------------------------------------------------------------------- x
                                             :
In re:                                       :        Chapter 9
                                             :
PAULS VALLEY HOSPITAL AUTHORITY,             :        Case No. 13-10791
                                             :
        Debtor.                              :        Judge Hall
                                             :
-----------------------------------------------------------------------x
```

**MEMORANDUM IN SUPPORT OF THE PAULS VALLEY HOSPITAL**
**AUTHORITY'S MODIFIED PLAN OF ADJUSTMENT UNDER**
**CHAPTER 9 OF THE BANKRUPTCY CODE**

The Pauls Valley Hospital Authority d/b/a Pauls Valley General Hospital ("Debtor") files this memorandum in support of confirmation of the Modified Plan of Adjustment of the Pauls Valley Hospital Authority d/b/a Pauls Valley General Hospital filed December 11, 2015 (the "Plan"). This memorandum is supported by the declarations of Gary Alford and Gregg Magers filed concurrently herewith; the Plan; the Modified Disclosure Statement submitted by Debtor filed December 11, 2015 (the "Disclosure Statement"); ballots, election forms, and other solicitation materials approved by the Court and served on parties entitled to vote to accept or reject the Plan; the various certificates of service regarding service of solicitation materials filed with the Court; the Report of Ballots filed concurrently with this memorandum; any other oral and documentary evidence that may be presented in support of the Plan; the arguments and representations of counsel at the hearing regarding confirmation of the Plan; and the record in this Chapter 9 case. Capitalized Terms not otherwise defined herein have the meaning ascribed to them in the Plan.

## INTRODUCTION

This Court has scheduled a hearing to take place on January 26, 2016 at 9:30 a.m. to consider confirmation of the Plan. The Debtor submits that the Court should confirm the Plan. The Plan is the result of many months of reorganizing the operations of the Pauls Valley General Hospital as well as constructive, good faith negotiations between the Debtor and the constituencies in this Chapter 9 case.

Following the solicitation of votes on the Plan conducted in accordance with the Bankruptcy Code and court-approved procedures, Classes 1, 3, 4, 5, 7, 8, 9, 10, 11, and 12 are deemed or have voted to accept the Plan. Class 6 has voted to reject the Plan. The Plan provides, among other things, that the Debtor will fund its cash obligations under the Plan with Debtor's cash on hand, revenues collected in the ordinary course of business, and future cash flow. The Plan provides that all Allowed Secured Claims and Allowed Priority Claims will be paid in full (unless Allowed Priority Claimants unanimously elected to accept a lump sum payment of $100,000 on the Effective Date, to be shared *pro rata* in full satisfaction of their claims, which did not occur).

Allowed Unsecured Claims will be paid out of a fund of money of $413,655, on a *pro rata* basis followed by payment of $50,000 per year over the course of 5 years on a *pro rata* basis. General Unsecured Creditors did not elect to participate in litigation recoveries of the Debtor and no recoveries, if any, will be shared between the Debtor and Unsecured Creditors.

As described below, the Plan complies with every one of the requirements enumerated in the Bankruptcy Code for confirmation of a Chapter 9 plan.[1] Among other things, the Plan is fair, reasonable, and economically feasible. Accordingly, the Debtor respectfully requests that the Court enter an order confirming the Plan.

## VOTING RESULTS

On December 10, 2015, the Court entered an order approving the adequacy of the Disclosure Statement and authorized solicitation in support of the Plan (the "Solicitation Order"). As set forth in the Solicitation Order, the Court found that the Disclosure Statement contained "adequate information" within the meaning of §1125 of the Bankruptcy Code and authorized the Debtor to solicit acceptances with respect to the Plan pursuant to the procedures specified in the Bankruptcy Code and Bankruptcy Rules. The Debtor thereafter caused the Plan and related solicitation materials to be served upon the parties in accordance with the Solicitation Order, which was memorialized by the certificate of service filed on December 18, 2015.

The deadline fixed for receipt of Ballots accepting or rejecting the Plan by the Solicitation Order was January 14, 2016. Classes 7, 9, and 10 are unimpaired and are therefore deemed to accept the Plan. *See* 11 U.S.C. § 1126(f). As indicated in the Report of Ballots, Classes 3, 4, and 5 were entitled to vote, but did not cast a ballot. Because Classes 3, 4, and 5 failed to vote on the Plan (or timely object) they are deemed to have accepted the Plan as a matter of law. *See In re Ruti-Sweetwater, Inc.*, 836 F.2d 1263, 1266-68 (10th Cir. 1988). Classes 1, 8, 11, and 12 voted in favor of the Plan and Class 6 voted against the Plan. In other words, all classes but Class 6, which is the class of the United States of America voted in favor of the Plan.

---

[1] Bankruptcy Code § 901(a) provides that the following Chapter 11 provisions apply with respect to confirmation of a Chapter 9 plan: §§ 1129(a)(2), 1129(a)(3), 1129(a)(6), 1129(a)(8), 1129(a)(10), 1129(b)(1), 1129(b)(2)(A), 1129(b)(2)(B). *See* 11 U.S.C. § 901(a). In addition, Bankruptcy Code § 943(b) provides additional, overlapping requirements for confirmation of a Chapter 9 plan. *See, generally* 11 U.S.C. § 943(b)(1) through (7).

## PLAN CONFIRMATION

### A.  The Plan Should be Confirmed Because it Complies With All Requirements of Bankruptcy Code Section 1129(a).

Bankruptcy Code § 1129(a), as selectively incorporated into Chapter 9 cases pursuant to 11 U.S.C. § 901(a), states that the Court shall confirm a plan where each of the statute's sixteen subsections are satisfied. *See* 11 U.S.C. § 1129(a). Bankruptcy Code § 943(b) likewise directs that the Court shall confirm a plan where each of its seven subsections are satisfied. *See* 11 U.S.C. § 943. (The applicable provisions of § 943 are discussed in section "B" of this memorandum, below). As described below, the Plan satisfies every one of the applicable requirements and should therefore be confirmed.[2]

### 1.   The Plan Complies with Applicable Chapter 11 Provisions for Chapter 9 Cases.

Bankruptcy Code § 943(b)(1) provides that a plan must comply with the provisions of title 11 that are made applicable pursuant to 11 U.S.C. § 901. *See* 11 U.S.C. § 943(b)(1). This requirement is similar to Bankruptcy Code § 1129(a)(1), which requires that a plan "compl[y] with the applicable provisions of this title." 11 U.S.C. § 1129(a)(1). The legislative history of this provision indicates that it embodies and incorporates the requirements of §§1122 and 1123, which govern the classification of claims and interests and the requisite mandatory contents of a plan. *See* H.R. Rep. No. 595, 95th Cong., 1st Sess. 412 1977. Bankruptcy Code § 943(b)(1) likewise requires compliance with §§1122 and 1123. As demonstrated below, the Plan complies with both §§1122 and 1123, and with all other applicable provisions of the Bankruptcy Code.

---

[2] Sections 1129(a)(1), 1129(a)(4), 1129(a)(5), 1129(a)(7), 1129(a)(9), 1129(a)(11), 1129(a)(12), 1129(a)(13), 1129(a)(14), 1129(a)(15), and 1129(a)(16) are not applicable to Chapter 9 plans pursuant to Bankruptcy Code § 901(a). Although § 1129(a)(1) is not applicable, Bankruptcy Code § 943(b)(1) requires that each of the provisions incorporated into § 901(a) must be met, including §§ 1122 and 1123.

### a.  The Plan Satisfies the Requirements of § 1122.

Section 1122 provides that "a plan may place a claim or interest in a particular class only if such claim or interest is substantially similar to other claims or interests of such class." 11 U.S.C. § 1122(a). By its plain language, § 1122 prohibits only the classification of dissimilar claims into the same class. *See* 7 Collier on Bankruptcy, ¶ 1122.03[1][a] (16th ed. Rev. 2010). As such, courts have broad discretion to determine the propriety of classification schemes in light of the facts of each case. *See Steelcase, Inc. v. Johnston (In re Johnston)*, 21 F.3d 323, 327 (9th Cir. 1994) ("bankruptcy court judges must have discretionary power in classifying claims under §1122(a)"). Additionally, § 1122(b) expressly permits the separate classification of certain claims for purposes of administrative convenience. *See* 11 U.S.C. § 1122(b).

Here, Article II of the Plan places claims in 13 different classes. Each claim placed in a particular class is substantially similar to the other claims in that class, and thus the Plan satisfies §1122. Moreover, although not required by statute, each claim that is placed in a particular class is substantially dissimilar from those claims that have been placed in other classes.

### b.  The Plan Satisfies the Mandatory Requirements of § 1123(a) of the Bankruptcy Code.

Section 1123(a) of the Bankruptcy Code sets forth eight mandatory requirements for the contents of a Chapter 11 plan, of which only the first five are applicable in Chapter 9 cases. *See* 11 U.S.C. § 901(a). Additionally, § 1123(b) sets forth various provisions that may, but need not, be included within a Chapter 11 plan. *See id.* As shown below, the Plan complies with all of these requirements.

### (1) Section 1123(a)(1): The Plan Designates Classes of Claims and Interests.

Section 1123(a)(1) of the Bankruptcy Code requires that a plan designate classes of claims and interests other than claims of a kind specified in Bankruptcy Code § 507(a)(2) (administrative expense claims), § 507(a)(3) (claims arising during the "gap" period in an involuntary bankruptcy case), and in § 507(a)(8) (priority tax claims). *See* 11 U.S.C. § 1123(a)(1). Article II of the Plan complies with this requirement by expressly classifying all claims, other than Administrative Claims.

### (2) Section 1123(a)(2): The Plan Identifies Unimpaired Classes of Claims and Interest.

Section 1123(a)(2) of the Bankruptcy Code requires that a plan "specify any class of claims or interests that is not impaired under the plan." 11 U.S.C. § 1123(a)(2). Article II and III of the Plan satisfy this requirement by specifying that Classes 7, 9 and 10 are unimpaired.

### (3) Bankruptcy Code Section 1123(a)(3): The Plan Specifies the Treatment of Impaired Classes.

Section 1123(a)(3) of the Bankruptcy Code requires that a plan "specify the treatment of any class of claims or interests that is impaired under the plan." 11 U.S.C. § 1123(a)(3). Article II and III of the Plan satisfy this requirement by specifying that Classes 1, 2, 3, 4, 5, 6, 8, 11, and 12 are impaired, and by specifying the treatment of the claims and interests in each of those Classes.

### (4) Bankruptcy Code Section 1123(a)(4): The Plan Provides for the Same Treatment of Claims within Each Class.

Section 1123(a)(4) of the Bankruptcy Code requires that a plan provide the same treatment for each claim or interest in a particular class. 11 U.S.C. § 1123(a)(4). Article II and III off the Plan satisfy this requirement by providing the same treatment to each claim that is classified in each particular class established under the Plan.

6

**(5) Bankruptcy Code Section 1123(a)(5): The Plan Provides for Adequate Means of Implementation.**

Section 1123(a)(5) of the Bankruptcy Code requires that a plan "provide adequate means for the plan's implementation," and sets forth examples of typical means for implementing a plan. *See* 11 U.S.C. § 1123(a)(5). The Plan satisfies this requirement by setting forth specific means for its implementation. Among other things, the Plan provides for the source of funds to implement the Plan (at Article IV); the assumption or rejection of executory contracts and unexpired leases (at Article IX); the manner of making cash distributions under the Plan (at Article VII); the preservation and re-vesting of rights of action (at Article VI); the establishment of procedures for handling any unresolved objections to Claims (at Article VIII); the establishment of procedures for pursuing litigation claims (at Article VI); and the re-vesting of assets (at Article XI).

**c. The Plan Includes Appropriate Permissive Provisions under Bankruptcy Code § 1123(b).**

Section 1123(b) provides that a Chapter 11 plan may include, among other things, "any other appropriate provision not inconsistent with the applicable provisions of this title." 11 U.S.C. § 1123(b)(6). This is a broad grant of authority. As stated by the United States Supreme Court: "[t]he Code . . . grants the bankruptcy courts residual authority to approve reorganization plans including any appropriate provisions not inconsistent with the applicable provisions of this title." *United States v. Energy Resources Co., Inc.*, 495 U.S. 545, 549 (1990) (internal quotations omitted). The Plan contains a number of permissive provisions, all of which are intended to facilitate a prompt resolution of this case, and are appropriate under the circumstances, including but not limited to many of the elections available to creditors.

7

### 2. Section 1129(a)(2): The Debtor Has Complied with All Applicable Provisions of the Bankruptcy Code.

Section 1129(a)(2) of the Bankruptcy Code, as incorporated into a Chapter 9 case, requires that the proponent of a plan "compl[y] with the applicable provisions of this title." 11 U.S.C. § 1129(a)(2). The principal purpose of this subsection is to ensure that a proponent complies with the Bankruptcy Code's requirements regarding the solicitation and acceptances of a plan. *See In re Texaco Inc.*, 84 B.R. 893, 906-07 (Bankr. S.D.N.Y. 1988). By the Solicitation Order, the Court found that the Disclosure Statement contained "adequate information" within the meaning of § 1125(b), and the Court thus authorized the Debtor to disseminate the Plan, the Disclosure Statement, and other solicitation materials to parties-in-interest and to solicit votes pursuant to certain specified procedures. As set forth in the previously-filed certificate of service on December 18, 2015, the Debtor has complied with the procedures set forth in the Solicitation Order and with all applicable provisions of the Bankruptcy Code and Bankruptcy Rules. The Plan thus complies with the requirements of § 1129(a)(2).

### 3. Section 1129(a)(3): The Debtor Has Proposed the Plan in Good Faith.

Section 1129(a)(3) of the Bankruptcy Code, as incorporated into a Chapter 9 case, requires that a plan be "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 129(a)(3). Bankruptcy Rule 3020(b)(2) specifies that "[i]f no objection is timely filed, the court may determine that the plan has been proposed in good faith and not by any means forbidden by law without receiving evidence on such issues." Fed. R. Bankr. P. 3020(b)(2). In accordance with Bankruptcy Rule 3020(b)(2), barring any objection to the Plan on the grounds of a lack of good faith, the Court should find that § 1129(a)(3) is satisfied without further inquiry.

Even absent Bankruptcy Rule 3020(b)(2)'s presumption of good faith, the Debtor's good faith is more than evident. The primary purpose of Chapter 9 is to allow municipalities and arms

8

of the state the broadest possible authority to restructure their financial affairs. Accordingly, a plan proposed under Chapter 9, like a plan proposed under Chapter 11, satisfies § 1129(a)(3) when it "is proposed with the legitimate and honest purpose to reorganize and has a reasonable hope of success." *Brite v. Sun Country Development, Inc. (In re Sun Country Development, Inc.),* 764 F.2d 406, 408 (5th Cir. 1985). The Debtor filed this Chapter 9 case as a result of decreased revenue during the nationwide recession and the headwinds created by changes in the federal healthcare laws. The timing of the filing in March 2013 was precipitated by threatened self-help measures to be taken by its software and hardware provider, which if successful would have effectively shut down the hospital. As set forth in Gary Alfred's declaration, the Debtor used this Chapter 9 case as an opportunity to examine its operations, determine whether to join forces with a larger, already existing medical system, or remain a stand-alone going concern. After deciding that the best course of action was to remain a stand-alone going concern, Debtor was afforded the breathing space it needed, by virtue of this Chapter 9 case, to reorganize its affairs, update its equipment, and make other changes necessary to ensure the future viability of the hospital.

As the record in this case shows, the Debtor will, through confirmation of the Plan, substantially achieve all of these goals. At all times the Debtor's goal has been to bring about an expeditious resolution of this case that will be beneficial for all constituencies. The Plan accomplishes this goal by providing for payment in full over time of secured claims, payment in full over time of priority tax claims (the option to take a lump sum payment of $100,000 on the Effective Date, to be shared *pro rata* in full satisfaction of their claims was not made by this these claimants), and payment to general unsecured creditors of approximately 10-20% of the amount of their claim. The Debtor worked very hard to ensure a meaningful recovery to general unsecured creditors and refused to propose a plan before attaining operations on a positive cash

flow basis in order to determine how payments over time could be made to such general unsecured creditors.

### 4. Section 1129(a)(6): The Plan Does Not Affect Any Change in Publicly Regulated Rates.

Section 1129(a)(6) of the Bankruptcy Code, as incorporated into a Chapter 9 case, requires that any regulatory commission with jurisdiction over the rates of a debtor approve any changes in rate regulations provided in a plan. *See* 11 U.S.C. § 1129(a)(6). The Debtor unaware of any such regulation and the Plan does not propose any rate changes. Section 1129(a)(6) therefore is not applicable, and consent from a regulatory agency is not required.

### 5. Section 1129(a)(8): Acceptance by Impaired Classes Entitled to Vote.

Section 1129(a)(8) of the Bankruptcy Code, as incorporated into a Chapter 9 case, requires that each class of claims and interests established under a plan either accept the plan or not be impaired under the plan. *See* 11 U.S.C. § 1129(a)(8). A class of claims accepts a plan if holders of at least two-thirds in dollar amount and more than one-half in number of claims in the class vote to accept the plan, counting only those claims whose holders actually vote. *See* 11 U.S.C. §§ 1126(c) and (d). A class of claims or interests that is not impaired is deemed to have accepted the plan. *See id.* at §§1126(f) and 1129(a)(8). A class of claims or interests that does not receive or retain any property under the plan is deemed to reject. *See id.* at § 1126(g).

Classes 1, 3, 4, 5, 6, 8, 11, and 12 are impaired under the Plan and are therefore entitled to vote to accept or reject the Plan. As set forth in the Report of Ballots submitted to the Court and as described above, Classes 1, 3, 4, 5, 7, 8, 9, 10, 11, and 12 voted to accept the Plan. Class 6 voted to reject the Plan. Additionally, Classes 3, 4, and 5 were entitled to vote, but did not cast a

ballot and are deemed to have accepted the Plan as a matter of law. Classes 7, 9, and 10 are unimpaired, and are therefore deemed to accept the Plan.[3]

### 6. Section 1129(a)(10): At Least One Impaired Class of Claims Has Voted to Accept the Plan, After Excluding Votes by Insiders.

Section 1129(a)(10) requires that at least one class of claims that is impaired under the plan has voted to accept the plan, determined without including any acceptance of the plan by any insider. *See* 11 U.S.C. § 1129(a)(10). After excluding the votes of insiders, Classes 1, 3, 4, 5, 7, 8, 9, 10, 11, and 12 have each voted to accept the Plan and Classes 3, 4, and 5 have each voted to accept the Plan through their failure to cast a ballot or timely object to the Plan. The Plan therefore satisfies this requirement.

### B. The Plan should be Confirmed Because it Complies With All Requirements of Bankruptcy Code Section 943(b).

In addition to the requirements set forth above, a plan proposed under Chapter 9 must meet additional, overlapping requirements provided in Bankruptcy Code § 943(b). As described below, the requirements set forth in § 943(b) have been met and the Plan should be confirmed.

### 1. Section 943(b)(1) and (2): The Plan Complies with the Provisions of § 901 and the Other Provisions of Chapter 9.

As set forth in more detail above, the Plan complies with the Chapter 11 provisions incorporated into Chapter 9 cases, including without limitation, § 1122 (classification of claims), § 1123 (contents of plan), § 1125 (requirements for disclosure statement), § 1126 (voting rights), § 1128 (requirement of confirmation hearing), and § 1129 (requirements for confirmation of a plan). Moreover, the Plan complies with the applicable provisions of Chapter 9, including

---

[3] Class 2, which previously represented a secured claim of SSM was intentionally omitted from the Plan based upon a settlement between Debtor and SSM whereby SSM agreed to waive its claims against Debtor. Therefore there is no Class 2 for purposes of voting for or against the Plan.

without limitation, § 923 (notice of commencement of Chapter 9 case), § 924 (providing a list of creditors), and § 941 (filing of a plan). Thus, §§ 943(b)(1) and (2) have been met.

### 2.   Section 943(b)(3): The Plan Discloses the Amounts Paid or to be Paid to Debtor's Professionals.

Section 943(b)(3) of the Bankruptcy Code requires that a Chapter 9 plan provide the fees paid and to be paid by a Chapter 9 debtor's professionals. *See* 11 U.S.C. § 943(b)(3). The Plan, through the Disclosure Statement (at Article VI), complies with this requirement. The Disclosure Statement shows that the Debtor's bankruptcy professionals have been paid on average $20,864.41 per month for a total of $688,525.50 at the time the Disclosure Statement, as modified, was filed with the Court. These professional fees, which span over the course of nearly three years, are reasonable. This case has been challenging and, at times, contentious because of the unique facts and problems presented. Despite these challenges and problems, the Debtor's professionals have successfully navigated the Debtor through its Chapter 9 case. The amount of fees paid to Debtor's professionals is substantially less than Chapter 11 cases currently before the Court that have been pending for substantially less time that the Debtor's Chapter 9 case.

### 3.   Section 943(b)(4): The Debtor is Not Prohibited from Taking Any Action Under the Plan.

Section 943(b)(4) of the Bankruptcy Code provides that a plan must be confirmed so long as the debtor is not prohibited by law from taking any action proposed under the plan. *See* 11 U.S.C. § 943(b)(4). The Debtor is not aware of any laws that would prohibit it from taking any action under the Plan. Section 943(b)(4) therefore is not applicable.

### 4.   Section 943(b)(5): The Plan Complies with the Required Treatment of Administrative Claims.

Section 943(b)(5) generally requires that administrative claims entitled to priority under § 507(a)(2) are paid in full on the effective date of the plan unless other terms are agreed to with

the claimant. *See* 11 U.S.C. § 943(b)(5). The Debtor submits that the only administrative claims in this case arise pursuant § 503(b)(9), of which there are two such claims asserted in this case. This requirement is similar, if not identical, to the requirement imposed by § 1129(a)(9). That provision requires in relevant part that unless the holder of such claim agrees to a different treatment of its claim:

> (A) The holder of a claim entitled to priority under § 507(a)(2) or (3) must receive cash equal to the allowed amount of its claim on the effective date of the plan;

11 U.S.C. § 1129(a)(9). The Plan satisfies the requirements of §§ 943(b)(5) and 1129(a)(9) as it relates to the two claims noted above. As required by Bankruptcy Code §§1129(a)(9)(A) and (B), Article V of the Plan provides that unless agreed otherwise, Allowed Administrative Claims will be paid in accordance with the terms and conditions of the particular transaction that gave rise to the Claim. To the extent other administrative claims are allowed by this Court, they will be similarly provided for as set forth in the Plan.

### 5. Section 943(b)(6): Approvals Necessary to Carry Out the Provisions of the Plan.

Section 943(b)(6) provides that a Chapter 9 plan shall be confirmed if all approvals necessary to carry out the provisions of the plan "have been obtained, or such provision is expressly conditioned upon such approval." 11 U.S.C. § 943(b)(6). The Debtor is not aware of any approvals that are required to effectuate the terms of the Plan, other than possible formal approval of the Plan by the Debtor, which was approved at the regularly scheduled meeting of the Authority on October 27, 2015. The Debtor has complied and will continue to comply with all rules and regulations governing its operations. As such, § 943(b)(6) is not applicable and regulatory or electoral approval is not necessary to effectuate any terms of the Plan.

### 6. Section 943(b)(7): The Plan is Feasible.

Section 943(b)(7) generally requires that the plan is in the best interest of creditors and feasible. *See* 11 U.S.C. § 943(b)(5). This requirement is similar, if not identical, to the requirement imposed by § 1129(a)(11). Section 1129(a)(11) of the Bankruptcy Code requires that the Court find that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11).

Section 1129(a)(11) does not require an absolute assurance of financial success by the debtor. Rather, the feasibility standard requires only "a 'reasonable' prospect for financial stability and success." *In re Sound Radio, Inc.*, 103 B.R. 521, 524 (D.N.J. 1989), *aff'd*, 908 F.2d 964 (3d Cir. 1990); *accord Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 843 F.2d 636, 649 (2d Cir. 1988) ("[T]he feasibility standard is whether the plan offers a reasonable assurance of success. Success need not be guaranteed."); *In re Orlando Investors, L.P.*, 103 B.R. 593, 600 (Bankr. E.D. Pa. 1989) ("The purpose behind the statutory requirement of feasibility is to prevent confirmation of visionary schemes which promise creditors and equity security holders more under a proposed plan than the debtor can possibly attain after confirmation.") (internal quotations omitted).

Subject to the risks described in the Disclosure Statement at Article XIII, the Debtor has established compelling evidence of feasibility (in this instance, having sufficient cash to pay creditors as proposed). As set forth in both Gary Alfred and Gregg Magers declarations in support of confirmation of the Plan, the Debtor's cash on hand and future revenue will provide sufficient funds for implementation of the Plan. Thus, the Plan is not a "visionary scheme," but

14

rather represents a good faith and reasonable resolution to this case that will pay secured, priority unsecured and administrative claims against the Debtor, and provide a moderate recovery for unsecured creditors. During bankruptcy, the Debtor has completed updating and refurbishing of its medical equipment and has state of the art equipment in many, if not most, areas of the hospital, and has made substantial capital improvements to the hospital. While capital expenditures always arise for hospitals, Debtor has already acquired most of the equipment it will need to operate on a going forward basis. Accordingly, the evidence supports a finding that the Plan is feasible and is not likely to be followed by the liquidation or need for further financial reorganization of the Debtor.

### C. The Provisions of § 1129(b) of the Bankruptcy Code Are Met by the Plan.

Section 1129(b)(1) provides:

Notwithstanding section 510(a) of this title, if all of the applicable requirements of [1129(a)] other than [1129(a)(8)] are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted the plan.

11 U.S.C. § 1129(b)(1). To the extent that not all creditors vote to approve the Plan or are deemed to approve the Plan, § 1129(b) may be applicable to the Debtor's Plan. Indeed, Class 6 voted to reject the plan. Class 6 represents the claims of the United Sates Government. The Plan, however, meets the requirements for cram-down and should be approved over Class 6's rejection of the Plan.

### 1. The Plan Does Not Unfairly Discriminate.

The principle of unfair discrimination is not defined under the Bankruptcy Code. *In re Lernout Hauspie Speech Products, N.V.*, 301 B.R. 651, 661 (Bankr. D. Del. 2003). In attempting

to determine whether a proposed plan unfairly discriminates, courts have looked to the following factors:

> a plan is unfairly discriminatory…when there is: (1) a dissenting class; (2) another class of the same priority; and (3) a difference in the plan's treatment of the two classes that results in either (a) a materially lower percentage recovery for the dissenting class (measured in terms of the net present value of all payments), or (b) regardless of percentage recovery, an allocation under the plan of materially greater risk to the dissenting class in connection with its proposed distribution.

*Id*. (quoting *In re Dow Corning Corp.*, 244 B.R. 696, 702 (Bankr. E.D. Mich. 1999)); *see also In re Exide Techs., Inc.*, 303 B.R. 48, 79-80 (Bankr. D. Del. 2003).

The Plan does not unfairly discriminate against creditors with the same priority and position in this Chapter 9 case. Classes 1-5 consist of secured creditors holding security interests in property of the Debtor, all whom are treated similarly under the Plan and share the risk associated with the Plan proportionally. Class 6 consists of a possible pre-petition claim of the United States of America that, if asserted, will be treated in the same manner as Class 8 general unsecured claims. Class 7 consists of priority unsecured claims, and all such creditors within such class are treated the same as well. Class 8 consists of general unsecured claims, and all such creditors within such class are treated the same as well. Class 9 consists of the litigation claim of Stefanie Fisher, which is a unique claim with a negotiated settlement. This claim will be treated consistently with the settlement agreement. Class 10 consists of the litigation claim of Christopher Whybrew, which is also a unique claim with a negotiated settlement agreement. This claim will be treated consistently with the settlement agreement. Class 11 consists of unsecured rejection damages claims and all such creditors within such class are treated the same. Although Classes 8, 9, 10, and 11 are classified separately from each other, they are treated similarly under the Plan and each share the risks associated with the Plan in similar proportion. Class 12 consists of convenience claims which consist of allowed claims of less than $250 and any Class 8 general

16

unsecured claimants who elected to be treated as a Class 12 convenience claimant. All such creditors within Class 12 are treated the same. Accordingly, the Plan meets the unfair discrimination test imposed by Section 1129(b)(1).

The only Class to vote against the Plan is Class 6, which comprises solely of unsecured claims of the United States Government. The Plan proposes to treat these claims of the United States Government identically to other unsecured creditors notwithstanding the fact that the United States Government failed to timely file a proof of claim asserting such unsecured claims against the debtor. It is in fact the United States Government, through its rejection of the Plan and objection thereto, that seeks to force priority of payment on account of its unsecured claims to the detriment of other unsecured creditors.

### 2. The Plan is Fair and Equitable.

The fair and equitable rule is a term of art that embodies, among other principles, the absolute priority rule. "The absolute priority rule requires that certain classes of claimants be paid in full before any member of a subordinate class is paid…. The rule reflects the different degree to which each class assumes the risk of the debtor's insolvency." *In re Geneva Steel Co.*, 281 F.3d 1178, 1180, n.4 (10th Cir. 2002). "In other words, creditors may insist on priority of payment." *Wilkow v. Forbes, Inc.*, 241 F.3d 552, 554 (7th Cir. 2001) (Easterbrook, J.). The Plan follows the priorities set forth in § 507(a), and, as such, meets the fair and equitable requirement imposed by § 1129(b)(1).

### 3. The Plan Provides for Creditors' Claims Consistent with § 1129(b)(2).

### a. Fair and Equitable Treatment of Secured Claims.

Section 1129(b)(2) provides minimum requirements for the treatment of secured claims. Section 1129(b) provides:

(2)      For the purpose of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements:

      (A)      With respect to a class of secured claims, the plan provides-

      (i)(I)   that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims;

      (II)      that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;

      (ii)      for the sale, subject to § 363(k) of this title, of any property that is subject to liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale and the treatment of such liens on the proceeds under clause (i) or (iii) of this subparagraph, or

      (iii)      for the realization by such holders of the indubitable equivalent of such claims.

11 U.S.C. § 1129(b)(2)(A)(i), (ii), and (iii). In the Plan, secured creditors whose claims are allowed will retain their liens and receive cash payments totaling the value of their secured claim in equal monthly payments over the course of five years.

### b.  Fair and Equitable Treatment of Unsecured Claims.

Section 1129(b) provides minimum requirements for the treatment of unsecured claims. Under this provision, unsecured claims must (1) provide that each holder of an unsecured claim retain on account of such claim, property of a value, as of the effective date, equal to the allowed amount of such claim and (2) that no holder of any claim or interest junior to such claim receive or retain any property. *See* 11 U.S.C. § 1129(b)(2)(B). The Plan provides that holders of Allowed Unsecured Claims will be paid on a *pro rata* basis from a fund of $413,655 and then $50,000 per year over the next five years. Since there are no equity holders in a Chapter 9 case, no claims junior to Allowed Unsecured Claims exist and therefore no such payment will be made unless

18

Allowed Unsecured Claims are paid in full. Thus, the Plan meets the requirements of cram-down and should be approved even if there are objections by a creditor or party-in-interest.

## IV. CONCLUSION

For all of the foregoing reasons, the Debtor respectfully submits that the Plan meets the requirements imposed by §§ 943(b) and 1129(a) and (b), and requests that the Court enter an order confirming the Plan.

MCDONALD, MCCANN,
  METCALF & CARWILE, LLP

*/s/ Chad J. Kutmas*

By:
_____

Chad J. Kutmas, OBA No. 19505
15 E. Fifth Street, Suite 1400
Tulsa, OK 74103
(918) 430-3700
(918) 430-3770 (Fax)
ckutmas@mmmsk.com

*Attorneys for Pauls Valley Hospital Authority*