## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

```
------------------------------------------------------------------------ x
                                            :
In re:                                      :         Chapter 9
                                            :
PAULS VALLEY HOSPITAL AUTHORITY,            :         Case No. 13-10791
                                            :
                  Debtor.                   :         Judge Hall
                                            :
------------------------------------------------------------------------x
```

### OMNIBUS RESPONSE TO OBJECTIONS TO THE MODIFIED PLAN
### OF ADJUSTMENT OF THE PAULS VALLEY HOSPITAL AUTHORITY

The Pauls Valley Hospital Authority d/b/a Pauls Valley General Hospital ("Debtor"), by and through its counsel, hereby submits this omnibus response to the objections filed by Midland Professional Services, Inc. ("Midland"), Siemens Financial Services, Inc. ("Siemens"), and the United States on behalf of the Secretary of the United States Department of Health and Human Services, and its component agency, the Centers for Medicare and Medicaid Services ("United States"). As set forth in more detail below, the objection of Midland has been rendered moot by the failure of unsecured creditors to elect the litigation fund option provided for them in the Modified Plan of Adjustment ("Plan"); the objection of Siemens is likewise rendered moot by the inclusion of certain language in the Plan as requested by Siemens; and the objection of the United States, which although not well taken, need not be decided for confirmation of the Plan based upon the Debtor's modification to the Plan.[1]

### OBJECTIONS TO THE PLAN

On January 13 and 14, 2016, the following objections were filed with respect to the Plan:

1.    Limited Objection to Midland Professional Services, Inc., filed January 13, 2015 [Docket No. 319] ("Midland Objection");

---

[1] Capitalized terms not otherwise defined herein have the meaning ascribed to them in the Plan of Adjustment.

2.     Limited Objection of Siemens Financial Services, Inc., to Modified Plan of Adjustment of Pauls Valley Hospital Authority d/b/a Pauls Valley General Hospital filed January 13, 2016 [Docket No. 318] ("Siemens Objection"); and

3.     Objection of the United States of America to Debtor's Modified Plan of Adjustment and Brief in Support filed January 14, 2016 [Docket No. 320] ("United States Objection").

The Debtor will respond to each of these objections in turn below.

## MIDLAND OBJECTION

Midland objected to the Plan solely with respect to the provisions related to the litigation fund option available to unsecured creditors. Under the relevant provisions of the Plan unsecured creditors could have elected to contribute $100,000 for use by the Litigation and Disbursement Agent to prosecute claims against third parties. If such contribution were made unsecured creditors would be entitled to share in recoveries resulting from such litigation.

Under the terms of the Plan, two-thirds in number and two-thirds in amount of holders of Classes 8-11 claims must have voted in favor of contributing such funds for use by the Litigation and Disbursement Agent. As set forth in the Report of Ballots filed concurrently with this omnibus response, there were not sufficient votes in favor of contributing the $100,000 amount; indeed, only one creditor in Class 8 made such election. As a result, the Litigation and Disbursement Agent will not use any of the funds allocated for payment of unsecured claims for the purpose of bringing claims against third parties; nor will creditors in Classes 8-11 (or any other creditors) be entitled to share in recoveries, if any, arising from bringing such claims. Midland's objection has thus been rendered moot, which Midland expressly recognized was possible in its objection to the Plan.

## SIEMENS OBJECTION

Siemens objected to the Plan solely with respect the payment of cure amounts, if any, associated with executory contract that the Debtor intends to assume as part of the Plan. Siemens notes in its objection that the Modified Disclosure Statement in support of the Plan provides for the cure of monetary defaults of assumed contracts but that the Plan is silent on the issue.

As set forth in the second modification to the Plan filed concurrently herewith, the following language has been included as the new last sentence of Section 9.1 of the Plan to address the issue raised by Siemens in its objection:

> Any undisputed cure costs arising from executory contracts that are to be assumed by virtue of this Plan will be paid by the Debtor in accordance § 365 of the Bankruptcy Code. The Bankruptcy Court will retain jurisdiction to determine the validity and amount of such cure costs in the event there is a dispute between the counterparty and the Debtor with respect to such assumed contracts.

Based upon this modification to the Plan the Debtor respectfully suggests that the objection filed by Siemens has been rendered moot.

## UNITED STATES OBJECTION

The sole remaining objection to the Plan is that of the United States. The United States objects to the Plan because the Plan proposes to prohibit the United States from recovering pre-petition overpayments for services rendered through reduction of post-petition reimbursement of Medicare and Medicaid services. The United States asserts that the Debtor "relies on orphaned case law and has failed to meet its burden to demonstrate that the Plan's treatment of [the United States] was proposed in good faith and in accordance with law." United States Objection at 8.

It bears noting that this "orphaned case law" is likely *In re Healthback, L.L.C.*, 226 B.R. 464 (Bankr. W.D. Okla. 1998) (Bohannon, J.), which squarely holds that the United States may <u>not</u> recover pre-petition overpayments through the reduction of post-petition reimbursements

related to Medicare and Medicaid services rendered by a service provider like the Debtor. In so ruling Judge Bohannon carefully reviewed the process by which the United States reimburses for such services and applied these factual findings to applicable binding precedent of the Tenth Circuit concerning the distinction between recoupment and setoff. Judge Bohannon found that recovery of overpayments through reduction of future reimbursements for Medicare and Medicaid services constituted setoff and not recoupment as argued by the United States.

The United States failed to cite or even mention the *Healthback* case in its objection, which is remarkable given that the same Assistant United States Attorney who filed the objection in this case represented the United States in that case as well. The United States relies instead on non-binding authority from other courts. The *Healthback* case, however, remains good law and it is reasonable for the Debtor to rely upon it as precedent in formulating its Plan and the proposed treatment of the United States with respect to its pre-petition claims against the Debtor. The Debtor's reliance on this Court's precedent destroys the United States' assertion that the Debtor did not propose the plan in good faith.

The more troubling omission by the United States is the failure to identify any harm by the Plan's proposed treatment of its pre-petition claims; indeed, nowhere in the objection does the United States quantify its pre-petition claims that could be barred from recovery through future Medicare and Medicaid reimbursements paid to the Debtor. Based upon information available to the Debtor and as set forth below, there is little possibility that there will ever be any pre-petition amounts subject to recovery from future reimbursements absent extraordinary circumstances. Indeed, the Debtor, through its agent, contacted Novitas, the third-party administrator responsible for such matters on January 20, 2016, and Novitas advised that there are no outstanding pre-petition obligations owed by the Debtor to the United States, and that the

4

only outstanding obligation is the post-petition loan request related to the amount determined to be owed by the Debtor pursuant to the 2015 annual cost report.

As noted in the United States' objection, the Debtor is required to submit annual cost reports, which are audited by the United States, for a final accounting of what is owed as between the parties based upon a number of complex factors concerning services provided by the Debtor and reimbursements made by the United States for each annual period. The last step is this review is the issuance of the Notice of Amount of Program Reimbursement ("NPR"). Once the NPR is issued both the provider and United States have the ability to reopen a cost report to determine amounts owed and make other adjustments. As a practical matter, only the provider seeks to reopen the cost reports during this three year period; the United States' volume of work dictates that it only reopen cost reports upon extraordinary circumstance such a fraud or when an issue arises that effects a large number of similarly-situated providers.

The relevant cost report history of the Debtor is as follows:

| Cost Year | Status | Amount Owed |
|-----------|--------|-------------|
| FY 2010 | NPR issued August 28, 2013 | $135,279 owed to the Debtor |
| FY 2011 | NPR issued August 23, 2013 | Unknown |
| FY 2012 | NPR issued June 30, 2015 | $35,405 owed to the United States |
| FY 2013 | NPR issued January 14, 2016 | $19,714 owed to the Debtor |
| FY 2014 | Amended Cost Report filed January 9, 2015 | $121,105 owed to the United States |
| FY 2015 | Initial Cost Report filed November 30, 2015; Amended Cost Report Required to be filed | $112,641 owed to the United States |

The fiscal year begins in July and concludes in June the following year. As such, the relevant pre-petition period is fully encompassed within the FY 2012 cost report year because the Debtor filed this Chapter 9 case on March 1, 2013. The cost report for FY 2012 shows that the Debtor

owed the United States $35,405. The Debtor has diligently sought to determine the status of this amount and whether and to what extent it has been paid by the Debtor. There are approximately four months of FY 2012 that fall after the petition date and the Debtor is prepared to allocate the $35,405 amount, if any remains, as incurred post-petition and therefore not subject any prohibition of recovery from post-petition funds by the United States.[2] Thus, the only potential pre-petition claims subject to dispute by the Debtor are those that would arise from reopening a pre-petition annual cost report. As noted above, however, it is highly unlikely that the United States will take such action absent extraordinary circumstances.

It thus appears that the United States has chosen to object to the Plan for the primary reason of overturning what it regards as unfavorable precedent of this Court rather than to protect large amounts of known pre-petition overpayments still owed by the Debtor. This is unfortunate given that creditors with a concrete stake in the Debtor's bankruptcy proceeding have overwhelmingly voted in favor of the Plan as shown in the report of ballots filed concurrently herewith. To further its agenda, the United States would have this Court deny confirmation of the Plan, likely causing the Debtor to fail. This is a draconian position for the United States in light of the fact the Plan does not injure the United States in any material or concrete way.

As the United States recognizes in its objection, the law is not settled concerning the nature of the relationship between the United States and Medicare and Medicaid providers like the Debtor and whether the United States' rights of recovery from future reimbursements is in the nature of recoupment or setoff. The Debtor asserts that the "minority" position on these issues is the better reasoned, and is in fact the law of this Court.

---

[2] As noted above in more detail, Novitas, the third-party administrator responsible for such matters, has advised that there are no outstanding pre-petition obligations owed by the Debtor to the United States.

Indeed, a quick review of a provider agreement between the Debtor and United States (*see*, *e.g.*, Exhibit "A" to the United States Objection, which is attached for ease of reference) makes clear that it has little to do with the rights and obligations of the parties. That agreement provides that (1) the Debtor will look to the United States for payment and not the individuals receiving services and (2) the Debtor will return moneys incorrectly collected from such individuals receiving services. In other words, the provider agreement merely requires the Debtor to look to the United States for payment of services covered by Medicare and Medicaid and not to the patients receiving such services. The rights and obligations concerning payment for such services is completely controlled by applicable statute and regulations.

It is for this reason that those minority of cases have found that the bulk of the relationship is statutory and not contractual and that provider agreements are not executory contracts but rather statutory entitlements:

> For the provider numbers to be subject to 11 U.S.C. § 365, they must be "executory contracts." In the instant cases, however, the provider numbers are statutory entitlements, not contracts. *See Mem. Hosp. v. Heckler*, 706 F.2d 1130, 1136-37 (11th Cir. 1983); *Hollander v. Brezenoff*, 787 F.2d 834, 838-39 (2d Cir. 1986); *In re Kings Terrace Nursing Home and Health Related Facility*, 184 B.R. 200, 1995 WL 65531 (Bankr. S.D.N.Y.), *aff'd*, 184 B.R. 200 (S.D.N.Y. 1995); *Germantown Hosp. & Med. Center v. Heckler*, 590 F. Supp. 24 (E.D. Pa. 1983), *aff'd*, *Germantown Hosp. & Med. Center v. Schweiker*, 738 F.2d 631 (3d Cir. 1984). The rights and duties of a health care provider and HHS are set forth not in provider numbers but rather in the Medicare Statutes and Regulations. For example, HHS is not obligated to reimburse the Debtors for services provided under the "provider agreements." *Mem. Hospital*, 706 F.2d at 1136. Moreover, HHS' entitlement to recoup overpayments is similarly statutory and does not arise under these arrangements. *Mem. Hospital*, 706 F.2d at 1136; *Kings Terrace*, 184 B.R. 200, 1995 WL 65531, p. 8.

> Because the right to reimbursement and the right of recoupment are statutory entitlements and not contractual rights, a health care provider must bring an administrative appeal to contest HHS' assessments. Health care providers cannot, for instance, commence civil litigation for a breach of contract under the provider numbers. *Mem. Hospital*, 706 F.2d at 1130; *Hollander v. Brezenoff*, 787 F.2d 834

(2nd Cir. 1986). For these reasons, the provider number are not executory contracts and thus, 11 U.S.C. § 365 does not apply.

*In re BDK Health Mgmt., Inc.*, 1998 Bankr. LEXIS 2031, *16-17 (Bankr. M.D. Fla. Nov. 16, 1998) (select citations omitted).

Even if such provider agreements were executory contracts, it is doubtful that the United States could insist on enforcement of its statutory rights of setoff (as held by Judge Bohannon in the *Healthback* case) as it relates to recovering pre-petition overpayments through reduction in post-petition reimbursements because such a position runs headlong into 11 U.S.C. § 553 of the Bankruptcy Code. This provision generally prevents a creditor from collecting a pre-petition debt by withholding payment of a post-petition debt owed to the debtor. *See, e.g.*, *In re Passafiume*, 242 B.R. 630, 633 (Bankr. W.D. Ky. 1999) ("Claims that arise post-petition lack the requisite mutuality [under 11 U.S.C. § 553] even if they arise with regard to work performed pre-petition.").

As one court has noted, while it is a true that once a debtor assumes a contract, the debtor assumes "its benefits along with its burdens" but "the *cum onere* principle does not provide that once assumed every single provision of an agreement is enforceable by and against the debtor; indeed, the Code itself alters certain rights of the parties." *In re McLean Indus.*, 132 B.R. 247, 265 Bankr. S.D.N.Y. 1991); *see also In re David Orgell, Inc.*, 117 B.R. 574, 576 (Bankr. C.D. Calif. 1990) ("It is well settled that if a debtor elects to assume an executory contract or unexpired lease, it must assume the entire contract or lease *cum onere*, except insofar as the rights of the parties are altered by the Bankruptcy Code.").

Section 553 of the Bankruptcy Code is one such provision that alters the parties' rights and prevents a creditor from preferring himself over others. "Thus, setoff is appropriate in bankruptcy only when a creditor both enjoys an independent right of setoff under applicable non-

8

bankruptcy law, and meets the further Code-imposed requirements and limitations set forth in §

553." *In re SemCrude, L.P.*, 399 B.R. 388, 393 (Bankr. D. Del. 2009). Although the United

States has, at most, a right of setoff under federal law as held by Judge Bohannon in the

*Healthback* case, it cannot exercise that right in a manner inconsistent with the Bankruptcy Code

regardless of whether the Debtor is required to assume the provider agreements at issue in this

case.

      The provisions of Plan, as they relate to the setoff rights of the United States, are

narrowly drawn, and are consistent with the provisions of the Bankruptcy Code, including 11

U.S.C. § 553, and the precedent of this Court. The Plan merely provides that the United States

cannot recover pre-petition overpayments from post-petition reimbursements without presenting

the matter to this Court if the Debtor objects to such recovery. The Plan further provides that any

pre-petition overpayments shall be treated as unsecured claims (notwithstanding the fact that the

United States failed to file a proof of claim in the case) subject to distributions to unsecured

creditors.

      These provisions in the Plan related to the United States' pre-petition claims have been

proposed in good faith and are consistent with this Court's precedent. These provisions also

respect the policy of the statutes and rules governing Medicare and Medicaid reimbursements. As

one court has observed, "venerable authority teaches that the social policy of non-bankruptcy

law, whether of federal or state origin, is satisfied by recognition of a claim in the bankruptcy

process." *In re Westmoreland Coal Co.*, 213 B.R. 1, 6 (Bankr. D. Colo. 1997). The policy of the

United States with respect to recovery of Medicare and Medicaid overpayments is fully served

by a claim for the amount of such obligations being asserted against the Debtor. Moreover, the

policy of the Bankruptcy Code is also fully served by such provisions. The Supreme Court "on

numerous occasions has stated that "[o]ne of the primary purposes of the bankruptcy act" is to give debtors "a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-petition debt." *Perez v. Campbell*, 402 U.S. 637, 648 (1971) (quoting *Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934)).

With discretion being the better part of valor this Court need not reach any of these issues because the Debtor has elected to modify the Plan to reflect the contingent nature of the claims and rights of the parties and to defer final resolution if, and when, the issue ever presents itself, which the Debtor predicts is very unlikely. Section 4.6 of the Plan is modified through substitution with the following paragraph:

> The United States may assert pre-petition claims arising from future audits and evaluations that the United States may seek to recover from future reimbursements owed to the Debtor. The Debtor, based upon precedent of this Court, asserts that such pre-petition claims may not be paid from post-petition funds due to the Debtor as such recovery would constitute an impermissible setoff. In the event the United States seeks to recover such pre-petition claims from future reimbursements owed to the Debtor and the Debtor contests the United States efforts, this Court retains jurisdiction to determine the dispute between the parties. In the event the Court finds in favor of the Debtor, the United States shall have an unsecured claim or claims for any pre-petition amounts determined to be owed by the Debtor; provided however, that the Debtor need not reserve for such unsecured claims of the United States.[3]

This modification to the Plan is fair and equitable and avoids the cost of determination of a speculative injury suffered by either party, while preserving the Debtor's ability to seek the full benefit of the protection of bankruptcy in the invent the United States unexpectedly seeks to collect large amounts of pre-petition overpayments based upon some future determination through reopening of a pre-petition annual cost report. It is respectfully submitted that the modification to the Plan, as it relates to the United States, renders its objection moot, as the Plan

---

[3] There are additional modifications to the Plan to clarify that the injunctions applicable to the United States concerning recovery of amounts to satisfy any pre-petition claims are controlled by these modified provisions of Section 4.6.

does not prejudice its rights in any manner but in facts preserves its rights subject to future challenge by the Debtor.

WHEREFORE, the Debtor requests that the Court overrule the three objections to the Plan filed by Midland, Siemens, and the Unites States for the reasons set forth above, and provide for any other relief that the Court deems reasonable and appropriate under the facts and circumstances of this Chapter 9 case.

MCDONALD, MCCANN,
    METCALF & CARWILE, LLP

*/s/ Chad J. Kutmas*

By:    _____
Chad J. Kutmas, OBA No. 19505
15 E. Fifth Street, Suite 1400
Tulsa, OK 74103
(918) 430-3700
(918) 430-3770 (Fax)
ckutmas@mmmsk.com

*Attorneys for Pauls Valley Hospital Authority*

# EXHIBIT "A"



**HEALTH INSURANCE BENEFITS AGREEMENT**
(Agreement with Provider of Services Pursuant to
Section 1866 of the Social Security Act)

*DEC 30 1969*

**In the event of a transfer of ownership of the provider of services under conditions specified in Social Security Regulations, THIS AGREEMENT SHALL NOT REMAIN EFFECTIVE as between the Secretary of Health, Education, and Welfare and the transferee.**

For the purpose of establishing eligibility for payment under Title XVIII of the Social Security Act, Pauls Valley General Hospital, Pauls Valley, Oklahoma , hereinafter referred to as the provider of services, hereby agrees:

(A) not to charge, except to the extent permitted by section 1866(a)(2) of such Act and regulations issued thereunder, any individual or any other person for items and services with respect to which the provider of services is precluded by reason of section 1866(a)(1) from charging such individual or such other person;

(B) to return any moneys incorrectly collected from such individual or such person, or to make such other disposition as may be specified in regulations.

This agreement, upon submission by the provider of services of acceptable assurance of compliance with the requirements of Title VI of the Civil Rights Act of 1964, and upon acceptance for filing, by the Secretary of Health, Education, and Welfare, shall be binding on such provider of services and the Secretary. The agreement may be terminated by either party in accordance with the provisions of section 1866(b)(1) and (2) of the Social Security Act and regulations thereunder. In the event of such termination, the obligations of the Secretary to make payment to the provider of services pursuant to this agreement shall be abrogated to the extent specified in section 1866(b)(3), (4) and (5) of such Act and regulations thereunder.

This agreement shall become effective when accepted for filing by the Secretary or his delegate.

The above agreement becomes
invalid in the event of a
change of ownership. Any such
change must be reported to the
State Health Department.

| For Provider of Services by: | Accepted for Secretary of Health, Education, and Welfare by: |
|---|---|
| _____<br>Name | _____<br>Name |
| BOARD CHAIRMAN<br>Title | Regional Representative<br>Title |
| DEC 20, 1969<br>Date | March 12, 1970<br>Date |

FORM SSA-1561 (3-66)